# United States District Court
## EASTERN DISTRICT OF NEW YORK

RAFFIQUE N. KHAN,

*Plaintiff*

*–v–*

NEW YORK CITY;

ERIC L. ADAMS, Mayor, New York City, in his official
capacity;

NEW YORK CITY POLICE DEPARTMENT (NYPD)

EDWARD A. CABAN, Police Commissioner, in his official
capacity;

MICHAEL GERBER, Deputy Commissioner of Legal Matters
(DCLM), in his official capacity;

Inspector ROHAN GRIFFITH, Commanding Officer, 75th
Precinct, in his official capacity

NYPD Officer MATTHEW S. BESSEN, Shield № 14934; and
NYPD Officers John and Jane Doe №s 1–10, who were
directly involved in the arrest and imprisonment of
Raffique N. Khan;

NYPD Officer JOSEPH ASTARITA; and NYPD employees
John and Jane Doe №s 1–10, of "DG_LIC-Incidents,"
"DG_LIC-Hearings-Appeals involved in refusing to return
the firearms unlawfully seized from Raffique N. Khan,

*Defendants*

# COMPLAINT

Cory H. Morris, Esq. (CM 5225)
THE LAW OFFICES OF CORY H. MORRIS
*Attorneys for Plaintiff*
863 Islip Avenue
Central Islip, NY 11722
Phone: (631) 450–2515
Email: info@coryhmorris.com

Victor John Yannacone, jr, Esq., (VY 6405)
*of counsel*
Email: vyannacone@yannalaw.com

# TABLE OF CONTENTS

Complaint ................................................................................................. 1

Jurisdiction ............................................................................................. 1

Venue ....................................................................................................... 1

The Plaintiff ............................................................................................ 2

    PLAINTIFF'S FIREARM PERMITS ................................................................. 2

Defendants ............................................................................................... 4

Facts Common to all causes of Action ................................................... 7

    THE ARREST OF RAFFIQUE N. KHAN ......................................................... 7

    PROCESSING AND IMPRISONMENT OF RAFFIQUE N. KHAN ........................ 9

    PROSECUTION OF RAFFIQUE N. KHAN ..................................................... 10

    SEIZURE OF FIREARMS FROM RAFFIQUE N. KHAN ................................... 11

    EFFORTS BY RAFFIQUE N. KHAN TO RECOVER HIS PROPERTY ................ 11

    THE QUEST BY RAFFIQUE N. KHAN TO RECOVER HIS FIREARMS ............. 12

    THE EMAIL EXCHANGES (EXHIBIT 12.) ................................................... 13

Federal Causes of Action ...................................................................... 14

First Cause of Action: 42 U.S.C. § 1981
    Prosecution due to race/color/national origin ................................... 15

Second Cause of Action: 42 U.S.C. § 1983
    Denial of Second Amendment Rights ............................................... 16

    SEIZURE OF FIREARMS ............................................................................ 16

    REFUSAL TO RETURN SEIZED FIREARMS ................................................ 17

Third Cause of Action: 42 U.S.C. § 1983
    *Monell* considerations; Municipal Liability ...................................... 19

Fourth Cause of Action: 42 U.S.C. § 1983
    False Arrest and False Imprisonment ............................................... 21

Fifth Cause of Action: 42 U.S.C. § 1983 and
   New York Law — Abuse of Process ................................................22

Sixth Cause of Action:  42 U.S.C. §§ 1985, 1986 — Conspiracy............23

Seventh Cause of Action:  Malicious Prosecution...................................25

Eighth Cause of Action: Appointment of a Monitor .............................27

Prayer for Relief .............................................................................29

Exhibits attached and submitted herewith ...........................................32

   EXHIBIT 1, DD-214 .......................................................................32

   EXHIBIT 2. Bronze Star citation ..................................................32

   EXHIBIT 3. Purple Heart citation ................................................32

   EXHIBIT 4. Veterinary Service News, May 2013 .................................32

   EXHIBIT 5(a). Restricted Handgun License ........................................32

   EXHIBIT 5(b). Concealed Carry Handgun License..............................32

   EXHIBIT 5©. Handgun Purchase Authorization .................................32

   EXHIBIT 6. Handgun invoice ........................................................32

   EXHIBIT 7. Certificate.................................................................32

   EXHIBIT 8. USOPM Form 50............................................................32

   EXHIBIT 9. Criminal Complaint ...................................................32

   EXHIBIT 10. Safe Keeping invoice .................................................32

   EXHIBIT 11. Cory H. Morris letter .......................................................32

   EXHIBIT 12. Email exchange...........................................................32

## COMPLAINT

Plaintiff Raffique N. Khan, ("Plaintiff") by and through his attorneys, The Law Offices of Cory H. Morris, bring this action to redress the violation of Plaintiff's rights under the both the New York Constitution and Laws of the United States and complain of the Defendants ("Defendants") as follows:

## JURISDICTION

1. This is an action pursuant to 42 U.S.C. Section 1983 and 42 U.S.C § 1988 to redress the deprivation under color of statute, ordinance, regulation, custom or usage of rights, privileges and immunities secured to plaintiff by the New York State Constitution and the Second, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

2. Jurisdiction is conferred on the Court by 28 U.S.C. §1343(3) which confers original jurisdiction on Federal District Courts in suits to redress the deprivation of rights, privileges and immunities as stated in Paragraph two (2) thereof.

3. The plaintiff demands a trial by jury.

## VENUE

4. Plaintiff is a resident of Queens County in New York City.

5. Defendants are residents of or have their principal place of business in New York City.

6. Plaintiff obtained citizenship through military service, is not originally from this country, and has a darker skin tone that Caucasian/white persons.

1

# THE PLAINTIFF

7.   At all the times relevant to this Complaint and at the present time, Plaintiff Raffique N. Khan was and he still is a citizen of the United States of America:

> That Plaintiff Raffique N. Khan retired from the United States Army with the rank of Staff Sergeant ("SSGT")on July 24, 2015 (**Exhibit 1**, DD-214) by reason of service connected disability as a result of wounds incurred during an insurgent attack on FOB Salerno, in Afghanistan, on June 1, 2012, "After a Suicide Vehicle Borne Improvised Explosive Device destroyed the DFAC where he and his team were eating, SGT Khan extracted trapped personnel from the wreckage and initiated first aid on the wounded. He engaged advancing insurgents with M16 fire, and continued to provide security at an impromptu casualty collection point until the attack was defeated and the casualties evacuated. For his heroic actions, SGT Khan was awarded the Bronze Star Medal for Valor (**EXHIBIT 2**. Bronze Star citation) and the Combat Action Badge, and also received the Purple Heart (**EXHIBIT 3**. Purple Heart citation) for his injuries. (**EXHIBIT 4**, Veterinary Service News, May 2013)

## PLAINTIFF'S FIREARM PERMITS

8.   On April 11, 2023, New York City, through the 113 Precinct of the New York City Police Department ("NYPD") issued Lic: PR2023001500, a "Restricted Handgun License" for "Residential Premises" to Plaintiff Raffique N. Khan. (**EXHIBIT 5(a)**. Residential Premises Handgun License)

9.   At all the times relevant to this Complaint and at the present time, handgun license PR2023001500 is in full force and effect.

10. On September 1, 2023, New York City, through the 113 Precinct of the NYPD issued Lic: CB2023005726, a "Concealed Carry Handgun License" to Plaintiff Raffique N. Khan. (**EXHIBIT 5(b)**. Concealed Carry Handgun License)

11. At all the times relevant to this Complaint and at the present time, handgun license CB2023005726 is in full force and effect.

12. On September 13, 2023, the License Division of the NYPD issued a "Handgun Purchase Authorization" bearing Serial No. 308191 allowing Plaintiff Raffique N. Khan to purchase one handgun for permitted concealed carry and residential premises. (**EXHIBIT 5(C)**. Handgun Purchase Authorization)

13. Pursuant to that Handgun Purchase Authorization, Plaintiff Raffique N. Khan did purchase from Woodhaven Rifle & Pistol, an S&W "Equalizer" handgun, SKU# PJH 2036 which was similar to the handgun he used in combat during his service in the United States Army. (**EXHIBIT 6**. Handgun invoice)

14. During April, 2023, Plaintiff Raffique N. Khan completed a "Concealed Carry Firearm 18 Hour Training Course for which he was issued a Certificate by Woodhaven Rifle & Pistol Range, Inc. (**EXHIBIT 7**. Certificate)

15. Plaintiff Raffique N. Khan is presently employed by the United States Department of the Interior National Park Service at the Gateway National Recreation Area in Staten Island as an Environmental Protection Specialist (**EXHIBIT 8**. USOPM Form 50) and has carried his handgun pursuant to the permits issued to him since the date it was purchased.

## DEFENDANTS

16. At all the times relevant to this Complaint and at the present time, Defendant **NEW YORK CITY** was and is the policy-making and governing body and authority over Defendant NYPD.

17.  At all the times relevant to this Complaint and at the present time, Defendant **Eric L. Adams,** is the elected Mayor of New York City (hereinafter "Adams" or "Mayor Adams"), and is the chief policy maker for the executive branch of New York City government, including the NYPD and, as such, is responsible for the practices and policies of the NYPD.

18. Defendant Eric L. Adams is a state actor.

19. Defendant New York City Mayor, Eric L. Adams, is sued in his official capacity only.

20. At all the times relevant to this Complaint and at the present time,  Defendant **EDWARD A. CABAN** is  the New York City Police  Commissioner and as such is a policy maker and responsible for NYPD practices and policies.

21. Defendant Edward A. Caban is a state actor.

22. Defendant Police Commissioner Edward A. Caban is being sued in his official capacity only.

23. At all the times relevant to this Complaint and at the present time,  **MICHAEL GERBER** is the New York City Deputy Commissioner of Legal Matters (DCLM), and, as such, among other responsibilities is in charge of handgun licensing, and as such is a policy maker in the New York City government.

24. At all the times relevant to this Complaint and at the present time, as the New York City Deputy Commissioner of Legal Matters (DCLM), Defendant Michael Gerber is responsible for the training and supervision of NYPD officers such as Defendant Officer **MATTHEW S. BESSEN** and Officers John and Jane Doe 1–10 and, as such, Michael Gerber is a policy maker in the New York City government.

25. Defendant Michael Gerber is a state actor.

26. Defendant New York City DCLM Michael Gerber is being sued in his official capacity only.

27. At all the times relevant to this Complaint and at the present time, Defendant Inspector **ROHAN GRIFFITH**, is the Commanding Officer of the NYPD 75th Precinct and, as such, is responsible for the training and supervision of NYPD officers, including but not limited to, Defendant Officer **MATTHEW S. BESSEN** and Officers John and Jane Doe 1–10.

28. Defendant Rohan Griffith is a state actor.

29. Defendant Rohan Griffith is sued in his official capacity.

30. Defendant NYPD Officer **MATTHEW S. BESSEN**, Shield № 14934 is a state actor.

31. NYPD Officer **JOSEPH ASTARITA** is a state actor sued in his individual and official capacity.

32. Defendants NYPD Officers John and Jane Doe №s 1–10, are known to the defendants, individually and collectively, as assigned and working out of the NYPD, but their identities are unknown to the Plaintiff at this time other than that they are in some way responsible for the constitutional deprivations

suffered by the PLAINTIFF RAFFIQUE N. KHAN by arresting, processing, and imprisoning him.

33. Defendants NYPD Officers John and Jane Doe №s 1–10, are each state actors sued officially and individually.

34. NYPD employees John and Jane Doe №s 1–10, together with NYPD Officer **JOSEPH ASTARITA** were involved in refusing to return the firearms unlawfully seized from Raffique N. Khan, are known to the defendants, individually and collectively, but their identities are unknown to the Plaintiff at this time other than that they are in some way responsible for the constitutional deprivations suffered by the Plaintiff Raffique N. Khan by unlawfully seizing and then refusing to return his firearms for which he had valid licenses to carry and possess.

35. Defendants NYPD employees John and Jane Doe №s 1–10, are each state actors.

36. Each of the Defendants in the regular course of their employment acted under color of State law.

37. At all the times relevant to this Complaint and at the present time, each of the Defendants, individually and collectively, in some way specific to their positions in law enforcement deprived and denied Plaintiff Raffique N. Khan his Constitutional and civil rights in the regular course of their employment acting under color of State law.

38. Defendants New York City and NYPD are recipients of federal funding for the purpose of providing for the public safety

39. Defendants, jointly and/or severally, individually and/or collectively did permit and effect the policy and policies, action

6

and actions complained of hereinafter that caused Plaintiff constitutional injury and deprivation of constitutional rights and guarantees.

## FACTS COMMON TO ALL CAUSES OF ACTION

### THE ARREST OF RAFFIQUE N. KHAN

40. On Sunday November 26, 2023 Plaintiff Raffique N. Khan ("Khan" or "SSGT Khan") was attending a small private function commemorating what would have been his mother's 70th Birthday on November 24th. His mother had just recently passed away.

41. SSGT Khan, his cousin, and a friend took some food from the function and sat in SSGT Khan's car to eat and talk catching up on happenings since they last were together.

42. About 0315 while the three men were still talking in the 2022 BMW Series 3 owned by Plaintiff Raffique N. Khan bearing Purple Heart license plates, an unmarked Police Car drove past, slowed down, then drove on.

43. After sitting in his car for a while longer, SSGT Khan drove off with his cousin and friend toward his home in St Albans, Queens.

44. After SSGT Khan had been driving for a short time, he was stopped by the same unmarked police car he had observed earlier.

45. The officers never identified themselves to Plaintiff Raffique N. Khan  and they were not in uniform.

46. Plaintiff Raffique N. Khan told Defendant NYPD Officer Matthew S. Bessen that he had a weapon in the glovebox and the permits and licenses were in the sun visor of the car.

47. Plaintiff Raffique N. Khan always keeps his driver's license, insurance proof, registration, and Concealed Carry Handgun

permit in the sun visor so that in the event he is stopped by police he can keep both hands on the wheel and not have to reach for anything.

48. Without any explanation for the traffic stop or any other explanation Defendant NYPD Officer Matthew S. Bessen told Plaintiff Raffique N. Khan to, "Step out of the vehicle."

49. Defendant NYPD Officer Matthew S. Bessen ordered Plaintiff Raffique N. Khan  and his passengers to go the rear of the vehicle and then the officers started searching SSGT Khan's without asking permission, providing any explanation, and without any probable cause.

50. After approximately 30 minutes of searching, Defendant NYPD Officer Matthew S. Bessen and other officers handcuffed Plaintiff Raffique N. Khan his cousin, and his friend.

51. Defendant NYPD Officer Matthew S. Bessen looked at the Retired Military Identification of SSGT Khan and his Concealed Weapons Carry License and asked, "How did you get these?" but he was not interested in the answer provided by Plaintiff Raffique N. Khan.

52. At no time during the traffic stop did Defendant NYPD Officer MATTHEW S. BESSEN ever provide Plaintiff Raffique N. Khan with a *Miranda* warning.

53. At no time from the traffic stop until Plaintiff Raffique N. Khan was imprisoned in a holding cell did anyone associated with the Defendant NYPD ever state what charges were being lodged against SSGT Khan.

54. Defendant NYPD Officer MATTHEW S. BESSEN and the other officers at the scene of the traffic stop placed Plaintiff Raffique N.

Khan, his cousin, and his friend in separate cars and transported them all to the 75th Precinct Station house.

## PROCESSING AND IMPRISONMENT OF RAFFIQUE N. KHAN

55. Eventually, NYPD Officer(s) fingerprinted SSGT Khan, his cousin, and his friend, took their personal belongings, and imprisoned them in a "holding" cell.

56. After being imprisoned in the holding cell for approximately four hours, NYPD Officers released the cousin and friend of SSGT Khan.

57. After being imprisoned in the holding cell for approximately eight (8) hours, Plaintiff Raffique N. Khan asked to make a telephone call but was told by a NYPD Officer that only the arresting officer could let him use the phone.

58. After being imprisoned in the holding cell for approximately twelve (12) hours, the arresting officer came back and told Plaintiff Raffique N. Khan he could use the phone after the detectives come in and questioned him. SSGT Khan again asked the Officer what the charges were, but they never told him.

59. Plaintiff Raffique N. Khan asked for a lawyer and none was ever provided. Neither was SSGT Khan allowed to make a phone call.

60. Eventually, hours later, an NYPD Officer told Plaintiff Raffique N. Khan he was being taken to Central Booking in Brooklyn.

61. After Plaintiff Raffique N. Khan arrived at Central Booking, he was photographed and processed, but was never informed of the charges against him, nor was he allowed to make a phone call.

62. After being imprisoned for more than twenty-four (24) hours, Plaintiff SSGT Khan was told by a guard that the Courts were now closed and SSGT Khan would see a Judge in the morning.

## PROSECUTION OF RAFFIQUE N. KHAN

63. At approximately 0800 the next day, a public defender met with SSGT Khan and finally told him what the charges against him were.

64. SSGT Khan was told that the Assistant District Attorney ("ADA") was requesting $50,000 cash bail and $100,000 in assets.

65. Plaintiff Raffique N. Khan  was finally arraigned at 1500 on Monday, November 27, 2023 yet the ADA was still seeking bail.

66. When the public defender present that hour to represent SSGT Khan presented a copy of SSGT Khan's  Concealed Carry Handgun  License, the arraignment judge released Plaintiff SSGT Khan without bond to return on Friday, December 1, 2024.

67. At the time of his release by the Court, Plaintiff Raffique N. Khan had been imprisoned and held incommunicado for over thirty-four (34) Hours from the time of his arrest.

68. During the time that Plaintiff Raffique N. Khan was being imprisoned and held incommunicado he was unable to communicate with his teenage children alone in his home in Queens or with his federal government employer.

69. During the time that Plaintiff Raffique N. Khan was being imprisoned and held incommunicado he was actually marked AWOL (absent without leave) from his federal job.

## SEIZURE OF FIREARMS FROM RAFFIQUE N. KHAN

70. During the time that Defendant NYPD withheld the wrongfully and illegally seized government issued cellphone and federal identification of Plaintiff SSGT Khan, he was unable to gain access to his job site at Ft. Wadsworth and was forced to notify his federal chain of command of his arrest and seizure of his firearm.

71. On Monday, November 27, 2023, Plaintiff Raffique N. Khan called the NYPD licensing Division and was advised to turn in my Resident Firearm, a Smith & Wesson MP9 Model NML8334 to the local police station of the 113 Precinct for safe keeping. He did. (**Exhibit 10**. Safe Keeping invoice)

## EFFORTS BY RAFFIQUE N. KHAN TO RECOVER HIS PROPERTY

72. On November 27, 2023, Plaintiff Raffique N. Khan returned to the 75th Precinct (NYPD) to recover his personal property which had been seized on his arrest. SSGT Khan was unable to retrieve his personal belongings at that time.

73. On November 28, 2923, Plaintiff Raffique N. Khan returned to the 75th Precinct but was told to come back at a specific time which he did. However, the Officer in charge was not there.

74. On November 29, 2024, Plaintiff Raffique N. Khan again went to the 75th Precinct and was told to by NYPD go to 11 Front Street.

75. As instructed, Plaintiff Raffique N. Khan tried to obtain his personal belongings from the NYPD facility at 11 Front St. but he was told that his belongings were still at the 75th Precinct police station.

76. Returning to the 75th Precinct police station, Plaintiff Raffique N. Khan was finally able to retrieve his chain, bracelet and other jewelry but was unable to recover his car, his personal cell phone,

his government cell phone, his Government Work identification, his cash and other personal property.

77. Plaintiff Raffique N. Khan returned several times to the Defendant NYPD 75th Precinct police station but each time he was told he had to come back when the arresting officer was there.

78. Finally, the public defender assigned to represent Plaintiff Raffique N. Khan intervened and SSGT Khan was able to retrieve most of his personal belongings on December 1, 2023. However, his personal cell phone was missing.

79. Plaintiff Raffique N. Khan eventually recovered the cash that had been seized from him but his cell phone was not released to him until January 11, 2024.

80. In Court on December 1, 2023, the ADA requested more time to verify that Plaintiff Raffique N. Khan had an active Concealed Carry Handgun permit and the criminal case against Plaintiff Raffique N. Khan was continued to February 24, 2024.

81. On the evening of February 23, 2023, Plaintiff Raffique N. Khan received an electronic mailing from the ADA advising him that the case was dismissed, and all criminal charges were dropped.

**THE QUEST BY RAFFIQUE N. KHAN TO RECOVER HIS FIREARMS**

82. After dismissal of all the criminal  charges against Plaintiff Raffique N. Khan began a quest to recover the weapon which the NYPD had illegally seized and still maintain to date.

83. In the quest to recover his weapon, Plaintiff Raffique N. Khan first contacted the Defendant NYPD on February 26, 2024 after he had obtained a copy of the certificate of disposition at which time an "investigating" officer told him to write a "statement." He did as he was told but never received a response from Defendant NYPD.

84.  Plaintiff Raffique N. Khan  returned to the Defendant NYPD 75th Precinct police station on March 8, 2024 with the disposition stating all criminal charges were dropped but Defendants told him that the ADA had to send a release for the weapon.

85.  In the quest to recover his weapon, Plaintiff Raffique N. Khan was told by Defendant NYPD Officers that they had received the release and he was directed to go to 11 Front St. to pick up his weapon. At 11 Front Street, SSGT Khan was told that even though the ADA (Kings County) released the weapon Defendant NYPD had to complete an investigation by the licensing division.

86.  On March 11, 2024, attorney Cory H. Morris wrote to a number of NYPD agencies (**EXHIBIT 11**. Letter to NYPD) publicly identified as dealing with firearms requesting return of the firearms seized from Plaintiff Raffique N. Khan. Attached to that letter and submitted with it were a Litigation Hold Notice, and a number of documents some of which are attached to this Complaint and all of which clearly indicate that seizing the weapons owned by SSGT Khan was unlawful and indicating that SSGT Khan had a valid New York City Concealed Carry Handgun License at the time of his arrest which was still valid and in full force and effect.

87.  At the time of filing this Complaint, March 25, 2024, the Defendant NYPD still has not returned the weapon they had illegally seized from Plaintiff Raffique N. Khan.

**THE EMAIL EXCHANGES** (EXHIBIT 12.)

88.  On February 23, 2024 Plaintiff Raffique N. Khan was  advised by email from the Kings County Supreme Court Criminal Term that the case against him had been "dismissed and sealed" on the representation by the People, "that the defendant is a federal

13

officer working on an Army base and has active carry and conceal permits."

89. On February 27, 2024, Plaintiff Raffique N. Khan wrote to Defendant NYPD Officer Astarita that the criminal charges against were dismissed, attaching proof thereof.

90. On March 6, 2024, Defendant NYPD Officer Astarita replied, "Received, thank you."

91. On March 8, 2024, Plaintiff Raffique N. Khan emailed Defendant NYPD Officer Astarita requesting authorization for release of his firearms.

92. On March 13, 2024, Plaintiff Raffique N. Khan again emailed Defendant NYPD Officer Astarita requesting authorization for release of his firearms.

93. Finally, on March 14, 2024, Defendant NYPD Officer Astarita replied by email stating,

> "Maybe you are not aware of the process regarding your incident. While I have received your recently delivered documents, that does not mean you get your firearms back right away. Your incident is in investigation. When I finish my investigation, it will then be sent to numerous supervisors who will then make a determination. At that time, you will be notified by mail and directed to call for a release and license, if your license is continued. In the meantime, be patient as I hope to have your case completed by midweek next week and then sent on to the supervisors."

## FEDERAL CAUSES OF ACTION

94. Plaintiff Raffique N. Khan asserts violations of his Second, Fourth, Fifth, Eighth and Fourteenth Amendment rights guaranteed him under the Constitution of the United States.

## FIRST CAUSE OF ACTION: 42 U.S.C. § 1981
## PROSECUTION DUE TO RACE/COLOR/NATIONAL ORIGIN

95. Defendants, jointly and/or severally, individually and/or collectively, have violated the rights of Plaintiff Raffique N. Khan, a man of color who was born in Trinidad-Tobago and became an American citizen by virtue of his distinguished military service in the United States Army.

96. 42 USC § 1981 provides

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory … to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

97. During the early morning of November 26, 2023, Plaintiff Raffique N. Khan was lawfully operating his 2022 BMW Series 3 sedan with clearly displayed front and rear license plates bearing the number PH Khan19 indicating that the owner of the vehicle was a veteran of United States military service who had earned a Purple Heart as a result of wounds incurred during service.

98. At the intersection of Newport St. and Chestnut St. Brooklyn within the jurisdiction of the Defendant NYPD 75th Precinct, Plaintiff Raffique N. Khan was stopped by an unmarked vehicle operated by Defendant NYPD Officer Matthew S. Bessen in plain clothes. There was at least one other individual in plain clothes in the unmarked vehicle.

99. There was no probable cause to stop Plaintiff Raffique N. Khan other than he was a person of color operating an expensive late

model motor vehicle along a public roadway in an area patrolled by officers of the NYPD 75th Precinct in Brooklyn.

100. At the time of the traffic stop Plaintiff Raffique N. Khan was not charged with any violation of the Vehicle & Traffic Law, nor has he ever been charged with a violation of the Vehicle & Traffic Law at the time and place of that stop.

101. There was no probable cause for the unjustified traffic stop of Plaintiff Raffique N. Khan other than he was a person of color operating an expensive late model automobile on the public streets patrolled by officers working out of the NYPD 75thPrecinct.

102. Defendants, individually and collectively, through their agent did stop, seize, interrogate and arrest Plaintiff SSGT Khan on the basis of his race, color and/or national origin.

103. Defendants, individually and collectively, through their agent did deprive Plaintiff of equal protection on the basis of color/national origin/race in the stop, seizure and evisceration of his ability to maintain a concealed carry permit, a firearm(s), as white persons.

## SECOND CAUSE OF ACTION: 42 U.S.C. § 1983
## DENIAL OF SECOND AMENDMENT RIGHTS

### SEIZURE OF FIREARMS

104. That the acts and conduct of the Defendants, jointly and/or severally, individually and/or collectively, in seizing a firearm for which Plaintiff Raffique N. Khan held a valid and current New York City Concealed Carry Handgun License (**Exhibit 5(b)**, herein), interfered with and effectively denied Plaintiff his rights guaranteed under the Second Amendment.

16

105. That the Second Amendment Constitutional rights of Plaintiff Raffique N. Khan  were and are being denied him as a result of the Defendants, jointly and/or severally, individually and/or collectively, ignoring the fact that at the time of arrest Plaintiff Raffique N. Khan  held a valid Concealed Carry Handgun License that was displayed on the windshield sun visor of his vehicle.

106. As a direct and proximate result of the actions of the Defendants, jointly and/or severally, individually and/or collectively, Plaintiff Raffique N. Khan has sustained and continues to sustain injury and damages including but not limited to, loss of his firearm and he has been caused to and suffered shock, embarrassment, anxiety and fear of unjust police action, which can only be justly compensated by an award of money damages in an amount to be determined by the trier of facts upon a trial of this action.

**REFUSAL TO RETURN SEIZED FIREARMS**

107. Defendants, jointly and/or severally, individually and/or collectively, have violated the property rights of Plaintiff Raffique N. Khan guaranteed to him under the Fifth and Fourteenth Amendments to the Constitution of the United States.

108. The pretext of SSGT Khan's arrest is over, the pretext of his prosecution eliminated yet the violation of his rights continues.

109. Defendants, jointly and/or severally, individually and/or collectively, have created and are maintaining a policy and practice which began a century ago with the "Sullivan" Act to deny licenses to carry firearms to people of color and racial; and ethnic minorities in violation of the rights guaranteed to all citizens by the Second Amendment to the Constitution of the United States.

110. The continued existence of this policy and practice within New York City executed and enforced by the NYPD is clearly demonstrated in the treatment of Plaintiff Raffique N. Khan with respect to the obstacles interposed by the NYPD to his efforts to recover his handgun which had been wrongfully seized during an illegal arrest following a racially motivated improper traffic stop.

111. That the acts and conduct of the Defendants, jointly and/or severally, individually and/or collectively, in refusing to return a wrongfully seized firearm for which Plaintiff Raffique N. Khan held a valid and current New York City Concealed Carry Handgun License (**Exhibit 5(b)** herein), interfered with and effectively denied Plaintiff his rights guaranteed under the Second Amendment.

112. As a direct and proximate result of the actions of the Defendants, jointly and/or severally, individually and/or collectively, Plaintiff Raffique N. Khan has sustained and continues to sustain injury and damages including but not limited to, loss of his firearm and he has been caused to and suffered shock, embarrassment, anxiety and fear of unjust police action, specifically that of depriving black persons of firearms, which can only be justly compensated by money damages in an amount to be determined by the trier of facts upon a trial of this action.

113. As a result of the violation of the rights of Plaintiff Raffique N. guaranteed under the Second Amendment by Defendants, jointly and/or severally, individually and/or collectively, Plaintiff seeks to recover compensatory damages from the Defendants, jointly and/or severally, individually and/or collectively, in an

amount to be determined by the trier of facts upon a trial of this action.

114. As a result of the violation of SSGT Khan's rights guaranteed under state and federal constitution by Defendants, jointly and/or severally, individually and/or collectively, Plaintiff seeks to recover punitive damages from the Defendants, jointly and/or severally, individually and/or collectively, in an amount to be determined by the trier of facts upon a trial of this action.

## THIRD CAUSE OF ACTION: 42 U.S.C. § 1983
## *MONELL* CONSIDERATIONS; MUNICIPAL LIABILITY

115. The violations of the civil rights of Plaintiff Raffique N. Khan were the result of and/or caused by the negligent hiring, training, retention, and supervision, acts of negligence, failure to train, recklessness and intentional acts of Defendants  New York City and NYPD, their agents, employees, and contractors.

116. Starting with the initial baseless traffic stop of a gentleman of color driving a relatively new BMW through Brooklyn in the domain of the NYPD 75th Precinct, and then the pretextual arrest for possession of a handgun when the Concealed Carry License was visible on the windshield sun visor; followed by the indignity of booking, imprisonment, and arraignment, only to have the case summarily dismissed with the charges withdrawn, Plaintiff Raffique N. Khan was clearly a victim of long standing policy and practices of the Defendant NYPD since the command and management of the NYPD 75th Precinct were fully aware that SSGT Khan was a wounded American combat veteran with a Bronze Star for Valor and a Purple Heart.

117. The initial baseless traffic stop of a gentleman of color driving a relatively new BMW through Brooklyn is a manifestation of a

long-standing policy by elements of the NYPD to take actions
which violate the spirit and intent of the United States
Constitution.

118. As a consequence of Defendants' wrongful actions, Plaintiff
Raffique N. Khan was deprived of his freedom, and suffered
shock, personal humiliation, degradation, embarrassment,
anxiety, fear of unjust and discriminatory police action, which
can only be justly compensated by an award of money damages
in an amount to be determined by the trier of facts upon a trial
of this action.

119. Defendants, individually and collectively, maintain a practice,
custom, trade, usage, policy, custom and/or practice of stopping
minority persons unlawfully, disarming persons (inclusive of
minorities) knowing or having reason to know that their
firearm ownership is lawful if not the policy of forcibly
removing firearms from black/minority persons on the basis of
their color, race and/or national origin.

120. Defendants, individually and collectively, arrest, seize and
refuse to comply with the United States Constitution, Second
Amendment, allowance of legal firearm ownership.

121. The shock, personal humiliation, degradation, embarrassment,
anxiety, fear of unjust and discriminatory police action,
suffered by Plaintiff Raffique N. Khan as a result of
Defendants, jointly and/or severally, individually and/or
collectively, deliberately violating Plaintiff's Constitutional and
civil rights calls for an award of punitive damages in an
amount to be determined by the trier of facts upon a trial of
this action all together with costs and attorneys' fees.

## FOURTH CAUSE OF ACTION: 42 U.S.C. § 1983
## FALSE ARREST AND FALSE IMPRISONMENT

122. The serious charges filed against Plaintiff Raffique N. Khan in the Criminal Court of the City of New York alleging he committed the crimes of violating PL 265.03(3) Criminal possession of a weapon in the second degree (DQO), PL 265.01-B(l) Criminal possession of a firearm (DQO); PL 265.01 (1) Criminal possession of a weapon in the fourth degree; and AC 10-131(I) (3) Possession of pistol ammunition were patently false and known to be false at the time they were sworn to and filed by Defendant NYPD Officer MATTHEW S. BESSEN. (**EXHIBIT 9.** Criminal Complaint)

123. The accusations of wrongful actions leveled against Plaintiff, Raffique N. Khan, were false and known or could have been known to Defendant NYPD Officer MATTHEW S. BESSEN, Shield № 14934, at the time he signed the Criminal Complaint and/or Information.

124. The criminal charges prosecuted against Plaintiff Raffique N. Khan were made by Defendant NYPD Officer MATTHEW S. BESSEN for an improper purpose: to cover up the lack of probable cause for the arrest of Plaintiff Raffique N. Khan.

125. The arrest and physical restraint of Plaintiff Raffique N. Khan were without probable cause or legitimate reason therefore constituted a violation of Plaintiff's rights, secured by the Fourth Amendment to the United States Constitution, to be free from unreasonable searches and seizures.

126. As a consequence of Defendants' wrongful actions, Plaintiff Raffique N. Khan was deprived of his freedom, and suffered shock, embarrassment, anxiety and fear of unjust police action, which can only be justly compensated by an award of money

damages in an amount to be determined by the trier of facts upon a trial of this action.

127. The suffered shock, embarrassment, anxiety and fear of unjust police action, which can only be justly compensated by an award of money damages in an amount to be determined by the trier of facts upon a trial of this action suffered by Plaintiff Raffique N. Khan as a result of Defendants, jointly and/or severally, individually and/or collectively, deliberately violating Plaintiff's Constitutional and civil rights calls for an award of punitive damages in an amount to be determined by the trier of facts upon a trial of this action all together with costs and attorneys' fees.

## FIFTH CAUSE OF ACTION: 42 U.S.C. § 1983 and NEW YORK LAW — ABUSE OF PROCESS

128. Defendants, jointly and/or severally, individually and/or collectively, acting under color of state law, have engaged in actions and abuses which have deprived Plaintiff Raffique N. Khan of rights, privileges and immunities secured by the Constitution of the United States, in violation of 42 U.S.C. § 1983, constituting a conspiracy.

129. Abuse of process is evidenced by Defendants prolonged imprisonment of the Plaintiff Raffique N. Khan, confiscation of his weapon for which he had a lawful and current New York City Concealed Carry Handgun License, initiation of criminal process, and prosecution of the Plaintiff.

130. Defendants, jointly and/or severally, individually and/or collectively, did violate the rights of the Plaintiff Raffique N. Khan guaranteed to him under Constitution of the United States by initiating an improper bias motivated traffic stop, then subsequently causing SSGT Khan to be arrested, processed,

imprisoned. and criminally charged with false crimes by Defendant NYPD Officer Matthew S. Bessen acting in accordance with practices and policies fostered and condoned by the NYPD.

131. The unlawful NYPD policy maintained and enforced by the Defendants, individually and collectively, deprived Plaintiff of rights guaranteed by the Second Amendment.

132. Defendants, jointly and/or severally, individually and/or collectively, had a duty to conduct a prompt, full and fair investigation of the incident surrounding the bias-motivated traffic stop of Plaintiff, Raffique N. Khan, his false arrest, false imprisonment, and prosecution, yet no such investigation was ever initiated much less conducted.

133. Defendants had a duty to not arrest persons for exercising their rights guaranteed under the Second Amendment.

134. Failure to conduct such an investigation into the circumstances of the mistreatment of Plaintiff Raffique N. Khan evidenced malice, gross recklessness, intention and/or indifference without excuse or justification in violation of 42 U.S.C. § 1983.

135. As a direct and proximate result of NYPD actions, Plaintiff Raffique N. Khan suffered shock, embarrassment, anxiety and fear of unjust police action, which can only be justly compensated by an award of money damages in an amount to be determined by the trier of facts upon a trial of this action, as well as punitive damages, costs and attorney's fees.

## SIXTH CAUSE OF ACTION: 42 U.S.C. §§ 1985, 1986 — CONSPIRACY

136. Defendants, jointly and/or severally, individually and/or collectively, did intend and conspire to deprive Plaintiff Raffique

N. Khan  of his Constitutional rights, and caused such deprivation of rights by acting in concert to unlawfully arrest, falsely imprison, and criminally prosecute SSGT Khan.

137. Defendants, jointly and/or severally, individually and/or collectively, did intend and conspire to deprive Plaintiff Raffique N. Khan of his Constitutional rights by acting in concert to unlawfully arrest, falsely imprison, and criminally prosecute Plaintiff according to a well-established pattern, practice, widespread custom and/or policy of long standing duration in the NYPD.

138. Defendants, jointly and/or severally, individually and/or collectively, failed to train those involved in reporting, intervening, punishing and/or prosecuting violations of constitutional rights such as those which occurred with Plaintiff Raffique N. Khan.

139. Defendants actions were motivated by race, color and/or national origin – stopping SSGT Khan on this basis – and continued in the longstanding legacy since ruled unconstitutional by the United States Supreme Court – removing firearm ownership from New York persons so unfortunate to be black or minority and on the basis of race, color and/or national origin.

140. The Sullivan Act, over one hundred years old, was a pretext to ensure that black/African American persons, freed slaves in some instance, from owning and exercising the Second Amendment right to protect themselves and others during the Jim Crow era.

141. Defendants, jointly and/or severally, individually and/or collectively, engaged in a pattern, practice, widespread custom, usage and/or policy of charging and prosecuting persons who were victims of improper or illegal traffic stops as stated.

142. As a consequence of Defendants' wrongful actions, individually and collectively, Plaintiff Raffique N. Khan was deprived of his freedom, and suffered shock, embarrassment, anxiety and fear of unjust police action, which can only be justly compensated by an award of money damages in an amount to be determined by the trier of facts upon a trial of this action.

143. The evisceration of constitutional rights occasioned by unjust police action on the basis of race, color and/or national suffered by Plaintiff Raffique N. Khan as a result of Defendants, jointly and/or severally, individually and/or collectively, deliberately violating Plaintiff's constitutional and civil rights calls for an award of punitive damages in an amount to be determined by the trier of facts together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION:
### MALICIOUS PROSECUTION

144. Defendants, jointly and/or severally, individually and/or collectively,  lacked reasonable suspicion to stop and detain Plaintiff and further lacked probable cause for making the initial traffic stop of Plaintiff Raffique N. Khan, nor any probable cause to arrest him, process, imprison, and prosecute him.

145. Immediately upon the unfounded and improper initial bias-based traffic stop of Plaintiff Raffique N. Khan, Defendant NYPD Officer MATTHEW S. BESSEN knew or had reason to know that Plaintiff Raffique N. Khan had a valid and current New York City Concealed Carry License and there was no probable cause to arrest Plaintiff and, therefore, such arrest was illegal and in violation of Plaintiff's Constitutional rights.

146. Defendants, jointly and/or severally, individually and/or collectively, violated Plaintiff's Constitutional right to be free from

illegal arrest, illegal confinement and/or illegal seizure of property.

147. The subsequent malicious prosecution of Plaintiff Raffique N. Khan following his wrongful arrest, which was conducted by Defendants with knowledge that Plaintiff had been subject to an improper, illegal bias-based traffic stop then wrongfully arrested, was wrongfully pursued by Defendants, jointly and/or severally, individually and/or collectively, under color of law, customs, usages and/or statutes of the State of New York.

148. Under color of law, Defendants, jointly and/or severally, individually and/or collectively, deprived Plaintiff Raffique N. Khan of his Constitutional right to protection from unlawful search and seizure by falsely charging him criminally and then prosecuting him without any substantial credible evidence  to support the allegations of the criminal complaint.

149. The criminal prosecution of Plaintiff was summarily dismissed on arraignment.

150. As a consequence of Defendants' wrongful actions, Plaintiff Raffique N. Khan was deprived of his freedom, and suffered shock, embarrassment, anxiety and fear of unjust police action, which can only be justly compensated by an award of money damages in an amount to be determined by the trier of facts upon a trial of this action.

151. The shock, embarrassment, anxiety and fear of unjust police action suffered by Plaintiff Raffique N. Khan as a result of Defendants, jointly and/or severally, individually and/or collectively, deliberately violating Plaintiff's Constitutional and civil rights calls for an award of punitive damages in an amount to

26

be determined by the trier of facts upon a trial of this action all together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION: APPOINTMENT OF A MONITOR

152. Defendants, jointly and/or severally, individually and/or collectively, acting under color of state law, have engaged in actions and abuses which have deprived Plaintiff Raffique N. Khan of rights, privileges and immunities secured by the Constitution of the United States, in violation of 42 U.S.C. § 1983, constituting a conspiracy.

153. Abuse of process is evidenced by Defendants prolonged imprisonment of the Plaintiff Raffique N. Khan, confiscation of his firearm for which he had a lawful and current New York City Concealed Carry Handgun License, initiation of criminal process, and prosecution of the Plaintiff.

154. Defendants, jointly and/or severally, individually and/or collectively, did violate the rights of the Plaintiff Raffique N. Khan guaranteed to him under Constitution of the United States by initiating an improper bias motivated traffic stop, then subsequently causing SSGT Khan to be arrested, processed, imprisoned. and criminally charged with false crimes by Defendant NYPD Officer MATTHEW S. BESSEN acting in accordance with practices and policies fostered and condoned by the NYPD.

155. Defendants, jointly and/or severally, individually and/or collectively,  had a duty to conduct a prompt, full and fair investigation of the incident surrounding the bias-motivated traffic stop of Plaintiff, Raffique N. Khan, his false arrest, false

27

imprisonment, and prosecution, yet no such investigation was ever initiated much less conducted.

156. Failure to conduct such an investigation into the circumstances of the mistreatment of Plaintiff Raffique N. Khan evidenced malice, gross recklessness, intention and/or indifference without excuse or justification in violation of 42 U.S.C. § 1983.

157. The treatment of Plaintiff Raffique N. Khan exemplifies a long standing policy and practice of the NYPD particularly with respect to bias-based traffic stops without probable cause and the failure to properly investigate complaints concerning such stops and other violations of Constitutional rights of motorists following such illegal bias (race/color/national origin) based stops.

158. Defendants, jointly and/or severally, individually and/or collectively, intentionally violated and continue to violate Plaintiff's Constitutional rights, Plaintiff Raffique N. Khan seeks appointment of a Special Federal Court Monitor to oversee all d actions by Defendant New York City and Defendant NYPD which deny or interfere with the Second Amendment rights of the Plaintiff and others who might be so unfortunate as to be similarly affected by (facially neutral but) discriminatory policies even after the Supreme Court of the United States decision in *N.Y.S. Rifle and Pistol Assoc. vs. Bruen et al.* decided on June 23, 2022.

159. Without the appointment of a Special Federal Court Monitor, Defendants, jointly and/or severally, individually and/or collectively, will continue to apply and enforce the unconstitutional policies and practices complained of in this Complaint by the Plaintiff Raffique N. Khan.

160. Defendants, together, show by its prosecution of SSGT Khan that federal oversight is necessary to respect the Second Amendment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Raffique N. Khan demands judgment against the
Defendants, jointly and/or severally, individually and/or
collectively, as follows:

AGAINST the Defendants, jointly and/or severally, individually and/or
collectively, on the applicable State and Federal Causes of Action
pursuant to 42 U.S.C. Section 1983, compensatory damages in an
amount to be determined by the triers of fact;

AGAINST the Defendants, jointly and/or severally, individually and/or
collectively, on the Federal Causes of Action, punitive damages,
where appropriate and allowed, in an amount to be determined by
the triers of fact;

APPOINTMENT of a Special Federal Court Monitor to review the nature of
traffic stops by Defendant NYPD police officers in Eastern Brooklyn
of people of color (race/national origin) driving on public
throughways and the subsequent treatment of those individuals;

DECLARATIVE AND INJUNCTIVE relief necessary to enforce Defendants,
individually and collectively, to comply with the United States
Constitution, Second Amendment, and the property rights of persons
within the Eastern District of New York;

AN AWARD of attorney's fees pursuant to 42 U.S.C. § 1988 together with
the costs of disbursements in this action.

all together with such other and further relief as this Court shall believe
is just and proper under the circumstances.

DATED AT:   Central Islip, NY
March 25, 2024

/S/   *Cory H. Morris*

_____

Cory H. Morris, Esq. (CM 5225)
THE LAW OFFICES OF CORY H. MORRIS

29

*Attorneys for Plaintiff*
863 Islip Avenue
Central Islip, NY 11722
Phone: (631) 450–2515
FAX: (631) 223–7377
Email: info@coryhmorris.com

Victor John Yannacone, jr, Esq., (VY6405)
*of counsel*
Email: vyannacone@yannalaw.com

31

### EXHIBITS ATTACHED AND SUBMITTED HEREWITH

EXHIBIT 1, DD-214

EXHIBIT 2. Bronze Star citation

EXHIBIT 3. Purple Heart citation

EXHIBIT 4. Veterinary Service News, May 2013

EXHIBIT 5(a). Restricted Handgun License

EXHIBIT 5(b). Concealed Carry Handgun License

EXHIBIT 5©. Handgun Purchase Authorization

EXHIBIT 6. Handgun invoice

EXHIBIT 7. Certificate

EXHIBIT 8. USOPM Form 50

EXHIBIT 9. Criminal Complaint

EXHIBIT 10. Safe Keeping invoice

EXHIBIT 11. Cory H. Morris letter

EXHIBIT 12. Email exchange