## 1:24–cv–02168-ARR-JAM

# United States District Court
## EASTERN DISTRICT OF NEW YORK

**RAFFIQUE N. KHAN,**

*Plaintiff*

−*v*−

**NEW YORK CITY;**

**ERIC L. ADAMS**, Mayor, New York City, in his official capacity;

**NEW YORK CITY POLICE DEPARTMENT (NYPD)**

**EDWARD A. CABAN**, Police Commissioner, in his official capacity;

**MICHAEL GERBER**, Deputy Commissioner of Legal Matters (DCLM), in his official capacity;

Inspector **ROHAN GRIFFITH**, Commanding Officer, 75th Precinct, in his official capacity

NYPD Officer **MATTHEW S. BESSEN**, Shield № 14934; and NYPD Officers John and Jane Doe №s 1–10, who were directly involved in the arrest and imprisonment of Raffique N. Khan;

NYPD Officer **JOSEPH ASTARITA**; and NYPD employees John and Jane Doe №s 1–10, of "DG_LIC-Incidents," "DG_LIC-Hearings-Appeals involved in refusing to return the firearms unlawfully seized from Raffique N. Khan,

*Defendants*

# AMENDED VERIFIED COMPLAINT

Cory H. Morris, Esq. (CM 5225)
THE LAW OFFICES OF CORY H. MORRIS
*Attorneys for Plaintiff*
863 Islip Avenue
Central Islip, NY 11722
Phone: (631) 450–2515
E-mail: info@coryhmorris.com

# TABLE OF CONTENTS

Verified Complaint ................................................................... 1

Jurisdiction ............................................................................ 1

Venue .................................................................................... 1

The Plaintiff ........................................................................... 2

    Plaintiff's firearm permits ................................................. 2

Defendants ............................................................................. 4

Facts Common to all causes of Action ...................................... 7

    The arrest of Raffique N. Khan ......................................... 7

    Processing and imprisonment of Raffique N. Khan ............. 9

    Prosecution of Raffique N. Khan ..................................... 10

    Seizure of firearms from Raffique N. Khan ...................... 10

    Efforts by Raffique N. Khan to recover his property ......... 11

    The quest by Raffique N. Khan to recover his firearms ..... 12

    The E-mail exchanges (EXHIBIT 12.) ............................... 13

    Defendants obstructed return of SSG Khan's firearms ...... 14

First Cause of Action: 42 U.S.C. § 1981
    Prosecution due to race/color/national origin ................... 18

Second Cause of Action: 42 U.S.C. § 1983
    Denial of Second Amendment Rights ............................... 19

    Seizure of firearms ........................................................ 19

    Refusal to return seized firearms .................................... 20

Third Cause of Action: 42 U.S.C. § 1983
    *Monell* considerations; Municipal Liability ..................... 22

Fourth Cause of Action: 42 U.S.C. § 1983
    False Arrest and False Imprisonment .............................. 23

Fifth Cause of Action:  42 U.S.C. §§ 1985, 1986 — Conspiracy ............ 25

Sixth Cause of Action: Appointment of a Monitor ................... 26

Prayer for Relief ...................................................................28

Plaintiff's Verification .........................................................30

Exhibits attached and submitted herewith ...........................31

   EXHIBIT 1, DD-214 ........................................................31

   EXHIBIT 2. Bronze Star citation ...................................31

   EXHIBIT 3. Purple Heart citation ..................................31

   EXHIBIT 4. Veterinary Service News, May 2013 .................31

   EXHIBIT 5(a). Restricted Handgun License .......................31

   EXHIBIT 5(b). Concealed Carry Handgun License................31

   EXHIBIT 5(c). Handgun Purchase Authorization................31

   EXHIBIT 6. Handgun invoice ........................................31

   EXHIBIT 7. Certificate..................................................31

   EXHIBIT 8. USOPM Form 50 .......................................31

   EXHIBIT 9. Criminal Complaint ...................................31

   EXHIBIT 10. Safe Keeping invoice ................................31

   EXHIBIT 11. Cory H. Morris letter ...............................31

   EXHIBIT 12. E-mail exchange........................................31

## VERIFIED COMPLAINT

Plaintiff Raffique N. Khan, ("Plaintiff") by and through his attorneys, The Law Offices of Cory H. Morris, bring this action to redress the violation of Plaintiff's rights under the Constitution and Laws of the United States and complain of the Defendants ("Defendants") as follows:

### JURISDICTION

1. This is an action pursuant to 42 U.S.C. Section 1983 and 42 U.S.C § 1988 to redress the deprivation under color of statute, ordinance, regulation, custom or usage of rights, privileges and immunities secured to plaintiff by the Second, Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States of America.

2. Jurisdiction is conferred on the Court by 28 U.S.C. §1343 which confers original jurisdiction on Federal District Courts in suits to redress the deprivation of rights, privileges and immunities as stated in Paragraph 2 thereof.

3. The plaintiff demands a trial by jury.

### VENUE

4. Plaintiff is a resident of Queens County in New York City.

5. Defendants are residents of or have their principal place of business in New York City.

6. A Notice of Claim was served on Defendants, New York City.

## THE PLAINTIFF

7.   At all the times relevant to this Complaint and at the present time, Plaintiff Raffique N. Khan was and he still is a citizen of the United States of America:

> That Plaintiff Raffique N. Khan retired from the United States Army with the rank of Staff Sergeant ("SSG")on July 24, 2015 (**Exhibit 1**, DD-214) by reason of service connected disability as a result of wounds incurred during an insurgent attack on FOB Salerno, in Afghanistan, on June 1, 2012, "After a Suicide Vehicle Borne Improvised Explosive Device destroyed the DFAC where he and his team were eating, SGT Khan extracted trapped personnel from the wreckage and initiated first aid on the wounded. He engaged advancing insurgents with M16 fire, and continued to provide security at an impromptu casualty collection point until the attack was defeated and the casualties evacuated. For his heroic actions, SGT Khan was awarded the Bronze Star Medal for Valor (**EXHIBIT 2**. Bronze Star citation) and the Combat Action Badge, and also received the Purple Heart (**EXHIBIT 3**. Purple Heart citation) for his injuries. (**EXHIBIT 4**, Veterinary Service News, May 2013)

## Plaintiff's firearm permits

8.    On April 11, 2023, New York City, through the 113 Precinct of the NYPD issued Lic: PR2023001500, a "Restricted  Handgun License" for "Residential Premises" to Plaintiff Raffique N. Khan. (EXHIBIT 5(a). Residential Premises Handgun License)

9.   At all the times relevant to this Complaint and at the present time, handgun license PR2023001500 is in full force and effect.

10. On September 1, 2023, New York City, through the 113 Precinct of the NYPD issued Lic: CB2023005726, a "Concealed

Carry Handgun License" to Plaintiff Raffique N. Khan. (EXHIBIT 5(b). Concealed Carry Handgun License)

11. At all the times relevant to this Complaint and at the present time, handgun license CB2023005726 is in full force and effect.

12. On September 13, 2023, the License Division of the NYPD issued a "Handgun Purchase Authorization" bearing Serial No. 308191 allowing Plaintiff Raffique N. Khan to purchase one handgun for permitted concealed carry and residential premises. (EXHIBIT 5©. Handgun Purchase Authorization)

13. Pursuant to that Handgun Purchase Authorization, Plaintiff Raffique N. Khan did purchase from Woodhaven Rifle & Pistol, an S&W "Equalizer" handgun, SKU# PJH 2036which was similar to the handgun he used in combat during his service in the United States Army. (EXHIBIT 6. Handgun invoice)

14. During April, 2023, Plaintiff Raffique N. Khan completed a "Concealed Carry Firearm 18 Hour Training Course for which he was issued a Certificate by Woodhaven Rifle & Pistol Range, Inc. (EXHIBIT 7. Certificate)

15. Plaintiff Raffique N. Khan is presently employed by the United States Department of the Interior National Park Service at the Gateway National Recreation Area in Staten Island as an Environmental Protection Specialist (EXHIBIT 8. USOPM Form 50) and has carried his handgun pursuant to the permits issued to him since the date it was purchased.

## DEFENDANTS

16. At all the times relevant to this Complaint and at the present time, Defendant **New York City** was and is the policy-making and governing body and authority over Defendant NYPD.

17. At all the times relevant to this Complaint and at the present time, Defendant **Eric L. Adams,** is the elected Mayor of New York City, and is the chief policy maker for the executive branch of New York City government, including the NYPD and, as such, is responsible for the practices and policies of the NYPD.

18. Defendant Eric L. Adams is a state actor.

19. Defendant New York City Mayor, Eric L. Adams, is sued in his official capacity only.

20. At all the times relevant to this Complaint and at the present time,  Defendant **Edward A. Caban** is  the New York City Police  Commissioner and as such is a policy maker and responsible for NYPD practices and policies.

21. Defendant Edward A. Caban is a state actor.

22. Defendant Police Commissioner Edward A. Caban is being sued in his official capacity only.

23. At all the times relevant to this Complaint and at the present time,  **Michael Gerber** is the New York City Deputy Commissioner of Legal Matters (DCLM), and, as such, among other responsibilities is in charge of handgun licensing, and as such is a policy maker in the New York City government.

24. At all the times relevant to this Complaint and at the present time, as the New York City Deputy Commissioner of Legal Matters (DCLM), Defendant Michael Gerber is responsible for the training and supervision of NYPD officers such as Defendant Officer Matthew S. Bessen and Officers John and Jane Doe 1–10 and, as such, Michael Gerber is a policy maker in the New York City government.

25. Defendant Michael Gerber is a state actor.

26. Defendant New York City DCLM Michael Gerber is being sued in his official capacity only.

27. At all the times relevant to this Complaint and at the present time, Defendant Inspector **Rohan Griffith**, is the Commanding Officer of the NYPD 75th Precinct and, as such, is responsible for the training and supervision of NYPD officers, including but not limited to, Defendant Officer Matthew S. Bessen and Officers John and Jane Doe 1–10.

28. Defendant Rohan Griffith is a state actor.

29. Defendant Rohan Griffith is sued in his official capacity.

30. Defendant NYPD Officer **Matthew S. Bessen**, Shield № 14934 is a state actor.

31. Defendants NYPD Officers John and Jane Doe №s 1–10, are known to the defendants, individually and collectively, as assigned and working out of NYPD 75th Precinct, but their identities are unknown to the Plaintiff at this time other than that they are in some way responsible for the constitutional deprivations suffered by the Plaintiff Raffique N. Khan by arresting, processing, and imprisoning him.

32. Defendants NYPD Officers John and Jane Doe №s 1–10, are each state actors.

33. NYPD employees John and Jane Doe №s 1–10, together with NYPD Officer Astarita were involved in refusing to return the firearms unlawfully seized from Raffique N. Khan, are known to the defendants, individually and collectively, but their identities are unknown to the Plaintiff at this time other than that they are in some way responsible for the constitutional deprivations suffered by the Plaintiff Raffique N. Khan by unlawfully seizing and then refusing to return his firearms for which he had valid licenses to carry and possess.

34. Defendants NYPD employees John and Jane Doe №s 1–10, are each state actors.

35. Each of the Defendants in the regular course of their employment acted under color of State law.

36. At all the times relevant to this Complaint and at the present time, each of the Defendants in some way specific to their positions in law enforcement deprived and denied Plaintiff Raffique N. Khan his Constitutional and civil rights in the regular course of their employment acting under color of State law.

37. Defendants New York City and NYPD are recipients of federal funding for the purpose of providing for the public safety

38.  Defendants, jointly and/or severally, individually and/or collectively did permit and effect the policy and policies, action and actions complained of hereinafter that caused Plaintiff

constitutional injury and deprivation of constitutional rights and guarantees.

## FACTS COMMON TO ALL CAUSES OF ACTION

### The arrest of Raffique N. Khan

39. On Sunday November 26, 2023 Plaintiff Raffique N. Khan was attending a small private function with family and friends commemorating what would have been his mother's 70th Birthday on November 24th. His mother had just recently passed away.

40. SSG Khan, his cousin, and a friend took some food from the function and sat in SSG Khan's car to eat and talk catching up on happenings since they last were together.

41. About 0315 while the three men were still talking in the 2022 BMW Series 3 owned by Plaintiff Raffique N. Khan bearing Purple Heart license plates, an unmarked Police Car drove past, slowed down, then drove on.

42. After sitting in his car for a while longer, SSG Khan drove off with his cousin and friend toward his home in St Albans, Queens.

43. After SSG Khan had been driving for a short time, he was stopped by the same unmarked police car he had observed earlier.

44. The officers never identified themselves to Plaintiff Raffique N. Khan  and they were not in uniform.

45. Plaintiff Raffique N. Khan told Defendant NYPD Officer Matthew S. Bessen that he had a weapon in the glovebox and the permits and licenses were in the sun visor of the car.

46. Plaintiff Raffique N. Khan always keeps his driver's license, insurance proof, registration, and Concealed Carry Handgun permit in the sun visor so that in the event he is stopped by police

he can keep both hands on the wheel and not have to reach for anything.

47. Without any explanation for the traffic stop or any other explanation Defendant NYPD Officer Matthew S. Bessen told Plaintiff Raffique N. Khan to, "Step out of the vehicle."

48. Defendant NYPD Officer Matthew S. Bessen ordered Plaintiff Raffique N. Khan  and his passengers to go the rear of the vehicle and then the officers started searching SSG Khan's without asking permission, providing any explanation, and without any probable cause.

49. After approximately thirty (30) minutes of searching, Defendant NYPD Officer Matthew S. Bessen and other officers handcuffed Plaintiff Raffique N. Khan his cousin, and his friend.

50. Defendant NYPD Officer Matthew S. Bessen looked at the Retired Military identification of SSG Khan and his Concealed Weapons Carry License and asked, "How did you get these?" but he was not interested in the answer provided by Plaintiff Raffique N. Khan.

51. At no time during the traffic stop did Defendant NYPD Officer Matthew S. Bessen ever provide Plaintiff Raffique N. Khan with a *Miranda* warning.

52. At no time from the traffic stop until Plaintiff Raffique N. Khan was imprisoned in a holding cell did anyone associated with the Defendant NYPD ever state what charges were being lodged against SSG Khan.

53. Defendant NYPD Officer Matthew S. Bessen and the other officers at the scene of the traffic stop placed Plaintiff Raffique N. Khan, his cousin, and his friend in separate cars and transported them all to the 75th Precinct Station house.

## Processing and imprisonment of Raffique N. Khan

54.  Eventually, NYPD Officer fingerprinted SSG Khan, his cousin, and his friend, took their personal belongings, and imprisoned them in a "holding" cell.

55.  After being imprisoned in the holding cell for approximately four hours, NYPD Officers released the cousin and friend of SSG Khan.

56.  After being imprisoned in the holding cell for approximately eight (8) hours, Plaintiff Raffique N. Khan asked to make a telephone call but was told by a NYPD Officer that only the arresting officer could let him use the phone.

57.  After being imprisoned in the holding cell for approximately twelve (12) hours, the arresting officer came back and told Plaintiff Raffique N. Khan he could use the phone after the detectives come in and questioned him. SSG Khan again asked the Officer what the charges were, but they never told him.

58.  Plaintiff Raffique N. Khan asked for a lawyer and none was ever provided. Neither was SSG Khan allowed to make a phone call.

59.   Eventually, hours later, a NYPD Office told Plaintiff Raffique N. Khan he was being taken to Central Booking in Brooklyn.

60.  After Plaintiff Raffique N. Khan arrived at Central Booking, he was photographed and processed, but was never informed of the charges against him, nor was he allowed to make a phone call.

61.  After being imprisoned for more than twenty-four (24) hours, Plaintiff Raffique N. Khan was told by a guard that the Courts were now closed and SSG Khan would see a Judge in the morning.

## Prosecution of Raffique N. Khan

62. At approximately 0800 the next day, a Legal Aid lawyer met with SSG Khan and finally told him what the charges against him were. He was told that the District Attorney was requesting $50,000 cash bail and $100,000 in assets.

63. Plaintiff Raffique N. Khan  was finally arraigned at 1500 on Monday, November 27, 2023 and the District Attorney was still seeking bail.

64. When the Legal Aid attorney assigned to SSG Khan presented a copy of SSG Khan's  Concealed Carry Handgun  License, the judge released Plaintiff Raffique N. Khan without bond to return on Friday, December 1, 2024.

65. At the time of his release by the Court, Plaintiff Raffique N. Khan had been imprisoned and held incommunicado for over thirty four (34) Hours from the time of his arrest.

66. During the time that Plaintiff Raffique N. Khan was being imprisoned and held incommunicado he was unable to communicate with his teenage children alone in his home in Queens or with his federal government employer.

67. During the time that Plaintiff Raffique N. Khan was being imprisoned and held incommunicado he was actually marked AWOL (absent without leave) from his federal job.

## Seizure of firearms from Raffique N. Khan

68. During the period that Defendant NYPD withheld the wrongfully and illegally seized government issued cellphone and federal ID of Plaintiff Raffique N. Khan, he was unable to gain access to his federal job site at Fort Wadsworth and was forced to notify his federal chain of command of his arrest and seizure of his weapon.

69. On Monday, November 27, 2023, Plaintiff Raffique N. Khan
    called the NYPD licensing Division and was advised to turn in my
    Resident Firearm, a Smith & Wesson MP9 Model NML8334 to
    the local police station of the 113 Precinct for safe keeping. He did.
    (Exhibit 10. Safe Keeping invoice)

## Efforts by Raffique N. Khan to recover his property

70. On November 27, 2023, Plaintiff Raffique N. Khan returned to the
    75th Precinct to recover his personal property which had been
    seized on his arrest. He was unable to retrieve his personal
    belongings at that time.

71. On November 28, 2923, Plaintiff Raffique N. Khan returned to
    the 75th Precinct but was told to come back at a specific time
    which he did. However, the Officer was not there.

72. On November 29, 2024, Plaintiff Raffique N. Khan again went to
    the 75th Precinct and was told to go to 11 Front Street.

73. As instructed, Plaintiff Raffique N. Khan tried to obtain his
    personal belongings from the NYPD facility at 11 Front St. but he
    was told that his belongings were still at the 75th Precinct police
    station.

74. Returning to the 75th Precinct police station, Plaintiff Raffique N.
    Khan was finally able to retrieve his Chain, bracelet and other
    jewelry but was unable to recover his car, his personal cell phone,
    his government cell phone, his Government Work Id, his cash and
    other personal property.

75. Plaintiff Raffique N. Khan returned several times to the 75th
    Precinct police station but each time he was told he had to come
    back when the arresting officer was there.

76. Finally, the Legal Aid Attorney assigned to represent Plaintiff Raffique N. Khan intervened and SSG Khan was able to retrieve most of his personal belongings on December 1, 2023. However, his personal cell phone was missing.

77. Plaintiff Raffique N. Khan eventually recovered the cash that had been seized from him but his cell phone was not released to him until January 11, 2024.

78. In Court on December 1, 2023, the District Attorney requested more time to verify that Plaintiff Raffique N. Khan had an active Concealed Carry Handgun permit and the criminal case against Plaintiff Raffique N. Khan was continued to February 24, 2024.

79. On the evening of February 23, 2023, Plaintiff Raffique N. Khan received an E-mail form the DA advising him that the case was dismissed and all charges had been dropped.

## The quest by Raffique N. Khan to recover his firearms

80. After dismissal of all the criminal charges against Plaintiff Raffique N. Khan began a quest to recover the weapon which the NYPD had illegally seized.

81. In the quest to recover his weapon, Plaintiff Raffique N. Khan first contacted the NYPD on February 26, 2024 after he had obtained a copy of the criminal disposition form from the Court at which time an "investigating" officer told him to write a "statement." He did as instructed, but never received any response from NYPD.

82. In the quest to recover his weapon, Plaintiff Raffique N. Khan returned to the 75th Precinct police station on March 8, 2024 with the disposition stating all charges were dropped but he was told that the ADA had to send a release for the weapon.

83. In the quest to recover his weapon, Plaintiff Raffique N. Khan was told by NYPD Officers that they had received the release and he was directed to go to 11 Front St. to pick up his weapon. At 11 Front Street, SSG Khan was told that even though the DA released the weapon NYPD had to complete an investigation by the licensing division.

84. On March 11, 2024, attorney Cory H. Morris wrote to a number of NYPD agencies (EXHIBIT 11. Letter to NYPD) publicly identified as dealing with firearms requesting return of the firearms seized from Plaintiff Raffique N. Khan. Attached to that letter and submitted with it were a Litigation Hold Notice, and a number of documents some of which are attached to this Complaint and all of which clearly indicate that seizing the weapons owned by SSG Khan was unlawful and indicating that SSG Khan had a valid New York City Concealed Carry Handgun License at the time of his arrest which was still valid and in full force and effect.

85. At the time of verifying this Complaint, March 25, 2024, the NYPD still has not returned the weapon they had illegally seized from Plaintiff Raffique N. Khan.

## The E-mail exchanges (EXHIBIT 12.)

86. On February 23, 2024 Plaintiff Raffique N. Khan was  advised by E-mail from the Kings County Supreme Court Criminal Term that the case against him had been "dismissed and sealed" on the representation by the People, "that the defendant is a federal officer working on an Army base and has active carry and conceal permits."

87. On February 27, 2024, Plaintiff Raffique N. Khan  wrote to NYPD Officer Astarita that the criminal charges against him had been dismissed and he attached the appropriate Disposition form.

88. On March 6, 2024, NYPD Officer Astarita  replied, "Received, thank you."

89. On March 8, 2024, Plaintiff Raffique N. Khan  E-mailed NYPD Officer Astarita  requesting authorization for release of his firearms.

90. On March 13, 2024, Plaintiff Raffique N. Khan again E-mailed NYPD Officer Astarita  requesting authorization for release of his firearms.

91. Finally, on March 14, 2024, NYPD Officer Astarita replied by E-mail stating,

> Maybe you are not aware of the process regarding your incident. While I have received your recently delivered documents, that does not mean you get your firearms back right away. Your incident is in investigation. When I finish my investigation, it will then be sent to numerous supervisors who will then make a determination. At that time, you will be notified by mail and directed to call for a release and license, if your license is continued. In the meantime, be patient as I hope to have your case completed by midweek next week and then sent on to the supervisors.

## Defendants obstructed return of SSG Khan's firearms

92. On or about March 14, 2024. Plaintiff Raffique N. Khan received the following E-mail instructions from his Legal Aid Society attorney: "...the ADA has agreed to release all of the property under those vouchers. So the process will be the same as for your phone. When you are at the precinct, call 718–250–3550/3552/3553 and they will send the release to the precinct at that time. If the items have been moved to 11 Front Street (which is possible given how long ago the arrest was), then Front Street is open 8–230 and you would need to go there and call the same

numbers to have the release sent when you are there.  The gun 3001668962 is located at 11 Front St, voucher 3001668999 ... documents, also located at 11 Front St. The other voucher 4001052896 is at the Queens Property Clerks' office 125–01 Queens Blvd Room G3. So just call the numbers I gave you when you get to the Qns [*sic*] location and Front Street."

93.  After Plaintiff Raffique N. Khan followed those instructions, but although the ADA sent the release, City/NYPD officials stated that the "license and division have to get back to them first, then make a determination. At that time, you will be notified by mail and directed to call for a release and license, if your license is continued. In the meantime, be patient as I hope to have your case completed by midweek next week and then sent on to the supervisors."

94.  On or about April 2, 2024, Plaintiff Raffique N. Khan E-mailed Defendant Joseph Astarita asking for help,

> I received a letter from Sergeant Brian Herbert from the NYPD Pistol License Division. The letter stated that both my concealed carry and my premise Residence Licenses has been CONTINUED it was signed by Inspector Bogle the commanding officer.
>
> The letter also stated that, I had to contact you to schedule an appointment to come into the license Division. The is to process the restoration of my license.
>
> I called but did not get any response, please advise.

95.   On or about April 2, 2024, Plaintiff Raffique N. Khan received an e-mail from Defendant Joseph Astarita stating.

> As per our phone conversation, Sgt. Herbert will give you releases for your firearms and your pistol licenses at 10:00 am on 4/3/24. You are to appear at 1 Police Plaza, Rm 110A.

96. After unsuccessful attempts to recover his firearms and his licenses/permits on February 8th, 29th and March 1st, 2024, Plaintiff Raffique N. Khan was unable to obtain some kind of required release from the ADA to recover his weapons.

97. Plaintiff Raffique N. Khan attempted to contact the Licensing Division several times by phone and E-mail but did not get a response until April 2, 2024, Defendant Joseph Astarita sent him an E-mail stating that his weapons permits have been reinstated but h will have to go to One Police Plaza to pick it up together with one of the releases.

98. On or about April 2, 2024, Plaintiff Raffique N. Khan went to the NYPD property office in Brooklyn but was told that the ADA had to E-mail a release to the property office first, but the ADA was not available before the NYPD Property Office closed at 2 PM.

99. Defendant Joseph Astarita had instructed Plaintiff Raffique N. Khan to take the "letter" to the Property Offices to recover his weapons and that he had to contact the ADA once he was at the property office to get a second release.

100. On April 3, 2024, Plaintiff Raffique N. Khan took the letter first to One Police Plaza, but then he was forced to go to the Brooklyn Property office and finally to the Queens property Office. However, there was a notice on the Inventory sheet that required SSG Khan to obtain yet another release letter from the Licensing Division which he did obtain.

101. On or about April 3, 2024, Plaintiff Raffique N. Khan finally recovered his weapons.

102. The weapon SSG Khan recovered from the Property Office in Brooklyn had been damaged but the NYPD employee who returned the weapon was unable to explain the damage.

103. The carry weapon SSG Khan recovered was a Smith and Wesson Equalizer 9 MM bearing original serial Number PJH2036.

104. Numbers had been engraved on the magazine and the weapon itself. There's also a silver coating of paint on the weapon. The following is a true and accurate photo of the weapons as SSG Khan received them from the NYPD.



## FIRST CAUSE OF ACTION: 42 U.S.C. § 1981
## RACE/COLOR/NATIONAL ORIGIN DISCRIMINATION

105. 42 USC § 1981 provides

> All persons within the jurisdiction of the United States
> shall have the same right in every State and Territory …
> to the full and equal benefit of all laws and proceedings for
> the security of persons and property as is enjoyed by white
> citizens, and shall be subject to like punishment, pains,
> penalties, taxes, licenses, and exactions of every kind, and
> to no other.

Defendants, jointly and/or severally, individually and/or
collectively,  have violated the rights of Plaintiff Raffique N. Khan,
a man of color who was born in Trinidad-Tobago and became an
American citizen by virtue of his distinguished military service in
the United States Army.

106. During the early morning of November 26, 2023, Plaintiff
Raffique N. Khan was lawfully operating his 2022 BMW Series 3
sedan with clearly displayed front and rear license plates bearing
the number PH Khan19 indicating that the owner of the vehicle
was a veteran of United States military service who had earned a
Purple Heart as a result of wounds incurred during service.

107.  St the intersection of Newport St. and Chestnut St. Brooklyn
within the jurisdiction of the NYPD 75th Precinct, Plaintiff
Raffique N. Khan was stopped by an unmarked vehicle operated
by Defendant NYPD Officer Matthew S. Bessen in plain clothes.
There was at least one other individual in plain clothes in the
unmarked vehicle.

108. There was no probable cause to stop Plaintiff Raffique N. Khan
other than he was a person of color operating an expensive late

model motor vehicle along a public roadway in an area patrolled by officers of the NYPD 75th Precinct in Brooklyn.

109. At the time of the traffic stop Plaintiff Raffique N. Khan was not charged with any violation of the Vehicle & Traffic Law, nor has he ever been charged with a violation of the Vehicle & Traffic Law at the time and place of that stop.

110. Plaintiff had the right to own a concealed carry permit.

111. Plaintiff had the right to own a firearm.

112. Plaintiff was deprived of the ability to own a firearm lawfully without unlawful police intrusion or interference.

113. Plaintiff was treated differently because his race/color/national origin in accordance with longstanding New York State policy.

114. There was no probable cause for the unjustified traffic stop of Plaintiff Raffique N. Khan other than he was a person of color operating an expensive model automobile on the public streets patrolled by officers working out of the NYPD 75th Precinct.

## SECOND CAUSE OF ACTION: 42 U.S.C. § 1983
### DENIAL OF SECOND AMENDMENT RIGHTS

## Seizure of firearms

115. That the acts and conduct of the Defendants, jointly and/or severally, individually and/or collectively, in seizing a firearm for which Plaintiff Raffique N. Khan held a valid and current New York City Concealed Carry Handgun License (Exhibit 5(b), herein), interfered with and effectively denied Plaintiff his rights guaranteed under the Second Amendment.

116. That the Second Amendment Constitutional rights of Plaintiff Raffique N. Khan  were and are being denied him as a result of the

Defendants, jointly and/or severally, individually and/or collectively, ignoring the fact that at the time of arrest Plaintiff Raffique N. Khan  held a valid Concealed Carry Handgun License that was displayed on the windshield sun visor of his vehicle.

117. As a direct and proximate result of the actions of the Defendants, jointly and/or severally, individually and/or collectively, Plaintiff Raffique N. Khan has sustained and continues to sustain injury and damages including but not limited to, loss of his firearm and he has been caused to and suffered shock, embarrassment, anxiety and fear of unjust police action, which can only be justly compensated by an award of money damages in an amount to be determined by the trier of facts upon a trial of this action.

## Refusal to return seized firearms

118. Defendants, jointly and/or severally, individually and/or collectively, have violated the property rights of Plaintiff Raffique N. Khan guaranteed to him under the Fifth and Fourteenth Amendments to the Constitution of the United States.

119. Defendants, jointly and/or severally, individually and/or collectively, have created and are maintaining a policy and practice which began a century ago with the "Sullivan" Act to deny licenses to carry firearms to people of color and racial; and ethnic minorities in violation of the rights guaranteed to all citizens by the Second Amendment to the Constitution of the United States.

120. The continued existence of this policy and practice within New York City executed and enforced by the NYPD is clearly demonstrated in the treatment of Plaintiff Raffique N. Khan with respect to the obstacles interposed by the NYPD to his efforts to recover his handgun which had been wrongfully seized during an illegal arrest following a racially motivated improper traffic stop.

121. That the acts and conduct of the Defendants, jointly and/or severally, individually and/or collectively, in refusing to return a wrongfully seized firearm for which Plaintiff Raffique N. Khan held a valid and current New York City Concealed Carry Handgun License (Exhibit 5(b) herein), interfered with and effectively denied Plaintiff his rights guaranteed under the Second Amendment.

122. As a direct and proximate result of the actions of the Defendants, jointly and/or severally, individually and/or collectively, Plaintiff Raffique N. Khan has sustained and continues to sustain injury and damages including but not limited to, loss of his firearm and he has been caused to and suffered shock, embarrassment, anxiety and fear of unjust police action, which can only be justly compensated by an award of money damages in an amount to be determined by the trier of facts upon a trial of this action.

123. As a result of the violation of the rights of Plaintiff Raffique N. guaranteed under the Second Amendment by Defendants, jointly and/or severally, individually and/or collectively, Plaintiff seeks to recover compensatory damages from the Defendants, jointly and/or severally, individually and/or collectively, in an amount to be determined by the trier of facts upon a trial of this action.

124. Defendants, individually and collectively, may have physically returned the firearm(s) and magazine(s) owned by Plaintiff to him but not before discharging, marking and damaging if not defacing Plaintiff's property in violation of the United States Constitution.

125. As a result of the violation of the rights of Plaintiff Raffique N. guaranteed under the Second Amendment by Defendants, jointly and/or severally, individually and/or collectively, Plaintiff seeks to recover punitive damages from the Defendants, jointly and/or severally, individually and/or collectively, in an amount to be determined by the trier of facts upon a trial of this action.

## THIRD CAUSE OF ACTION: 42 U.S.C. § 1983
### MONELL CONSIDERATIONS; MUNICIPAL LIABILITY

126. The violations of the civil rights of Plaintiff Raffique N. Khan were the result of and/or caused by the negligent hiring, training, retention, and supervision, acts of negligence, failure to train, recklessness and intentional acts of Defendants New York City and NYPD, their agents, employees, and contractors.

127. Starting with the initial baseless traffic stop of a gentleman of color driving a relatively new BMW through Brooklyn in the domain of the NYPD 75th Precinct, and then the pretextual arrest for possession of a handgun when the Concealed Carry License was visible on the windshield sun visor; followed by the indignity of booking, imprisonment, and arraignment, only to have the case summarily dismissed with the charges withdrawn, Plaintiff Raffique N. Khan was clearly a victim of long standing policy and practices of the NYPD since the command and management of the 75th Precinct were fully aware that SSG Khan was a wounded American combat veteran with a Bronze Star for Valor and a Purple Heart.

128. The initial baseless traffic stop of a gentleman of color driving a relatively new BMW through Brooklyn is a manifestation of a long-standing policy by elements of the NYPD to take actions which violate the spirit and intent of the United States Constitution.

129. As a consequence of Defendants' wrongful actions, Plaintiff Raffique N. Khan was deprived of his freedom, and suffered shock, personal humiliation, degradation, embarrassment, anxiety, fear of unjust and discriminatory police action, which can only be justly compensated by an award of money damages in an

amount to be determined by the trier of facts upon a trial of this action.

130. The stop and seizure of Plaintiff, the seizure of his firearms and defacing of the same, are constitutional violations that separately and collectively evidence this *Monell* violation.

131. Defendants know and have reason to know that the mere ownership of a firearm no longer suffices to be probable cause for an arrest, irrespective of the unlawful stop of Plaintiff, and the continuation of Defendants' policy to arrest those who merely possess a firearm is a constitutional violation evidencing a *Monell* custom, policy, trade or usage of violating the Second Amendment

132. The violation of Plaintiff's Constitutional and civil rights calls for an award of punitive damages in an amount to be determined by the trier of facts upon a trial of this action all together with costs and attorneys' fees.

## FOURTH CAUSE OF ACTION: 42 U.S.C. § 1983
### FALSE ARREST, FALSE IMPRISONMENT AND MALICIOUS PROSECUTION

133. The serious charges filed against Plaintiff Raffique N. Khan in the Criminal Court of the City of New York alleging he committed the crimes of violating PL 265.03(3) Criminal possession of a weapon in the second degree (DQO), PL 265.01-B(l) Criminal possession of a firearm (DQO); PL 265.01 (1) Criminal possession of a weapon in the fourth degree; and AC 10-131(I) (3) Possession of pistol ammunition were patently false and known to be false at the time they were sworn to and filed by Defendant NYPD Officer Matthew S. Bessen. (EXHIBIT 9. Criminal Complaint)

134. The accusations of wrongful actions leveled against Plaintiff, Raffique N. Khan, were false and known or could have been known to Defendant NYPD Officer Matthew S. Bessen, Shield №

14934, at the time he signed the Criminal Complaint and/or Information.

135. The criminal charges prosecuted against Plaintiff Raffique N. Khan were made by Defendant NYPD Officer Matthew S. Bessen for an improper purpose: to cover up the lack of probable cause for the arrest of Plaintiff Raffique N. Khan.

136. The arrest and physical restraint of Plaintiff Raffique N. Khan were without probable cause or legitimate reason therefore constituted a violation of Plaintiff's federal civil rights, secured by the Fourth Amendment to the United States Constitution, to be free from unreasonable searches and seizures.

137. As a consequence of Defendants' wrongful actions, Plaintiff Raffique N. Khan was deprived of his freedom, and suffered shock, embarrassment, anxiety and fear of unjust police action, which can only be justly compensated by an award of money damages in an amount to be determined by the trier of facts upon a trial of this action.

138. All charges against Raffique N. Khan were dismissed.

139. There is and remains no basis for the prosecution of Plaintiff.

140. Plaintiff Raffique N. Khan suffered shock, embarrassment, anxiety and fear of unjust police action, which can only be justly compensated by an award of money damages in an amount to be determined by the trier of facts upon a trial of this action suffered by Plaintiff Raffique N. Khan as a result of Defendants, jointly and/or severally, individually and/or collectively, deliberately violating Plaintiff's Constitutional and civil rights calls for an award of punitive damages in an

amount to be determined by the trier of facts upon a trial of this action all together with costs and attorneys' fees.

### FIFTH CAUSE OF ACTION:
### 42 U.S.C. §§ 1985, 1986 — CONSPIRACY

141. Defendants, jointly and/or severally, individually and/or collectively, did intend and conspire to deprive Plaintiff Raffique N. Khan  of his Constitutional rights, and caused such deprivation of rights by acting in concert to unlawfully arrest, falsely imprison, and criminally prosecute SSG Khan.

142. Defendants, jointly and/or severally, individually and/or collectively, did intend and conspire to deprive Plaintiff Raffique N. Khan of his Constitutional rights by acting in concert to unlawfully arrest,  falsely imprison, and criminally prosecute Plaintiff according to a well-established pattern, practice, widespread custom and/or policy of long standing duration in the NYPD from the unlawful stop of Plaintiff, a black/minority person

143. Defendants, jointly and/or severally, individually and/or collectively, failed to train those involved in reporting, intervening, punishing and/or prosecuting violations of constitutional rights such as those which occurred with Plaintiff Raffique N. Khan that occurred from a race-based stop.

144. Defendants, jointly and/or severally, individually and/or collectively, engaged in a pattern, practice, widespread custom, usage and/or policy of charging and prosecuting persons who were victims of improper or illegal traffic stops.

145. As a consequence of Defendants' wrongful actions, Plaintiff Raffique N. Khan was deprived of his freedom, and suffered shock, embarrassment, anxiety and fear of unjust police action,

which can only be justly compensated by an award of money damages in an amount to be determined by the trier of facts upon a trial of this action.

146. Defendants actions are motivated if not based on Plaintiff's race, color and/or national origin: there not even being a pretextual basis to stop the Plaintiff nevertheless prosecute him for lawful possession of a firearm.

147. Defendants conduct here continues the pretextual scheme of disenfranchising black/minorities from being free from illegal search, seizure and having legal firearm ownership, a practice declared unconstitutional by the United States Supreme Court.

148. The shock, embarrassment, anxiety and fear of unjust police action, suffered by Plaintiff Raffique N. Khan as a result of Defendants, jointly and/or severally, individually and/or collectively, deliberately violating Plaintiff's Constitutional and civil rights calls for an award of punitive damages in an amount to be determined by the trier of facts upon a trial of this action all together with costs and attorneys' fees.

## SIXTH CAUSE OF ACTION: APPOINTMENT OF A MONITOR

149. Defendants, jointly and/or severally, individually and/or collectively, acting under color of state law, have engaged in actions and abuses which have deprived Plaintiff Raffique N. Khan of rights, privileges and immunities secured by the Constitution of the United States, in violation of 42 U.S.C. § 1983, constituting a conspiracy.

150. Abuse of process is evidenced by Defendants prolonged imprisonment of the Plaintiff Raffique N. Khan, confiscation of

his weapon for which he had a lawful and current New York City Concealed Carry Handgun License, initiation of criminal process, and prosecution of the Plaintiff.

151. Defendants, jointly and/or severally, individually and/or collectively, did violate the rights of the Plaintiff Raffique N. Khan guaranteed to him under Constitution of the United States by initiating an improper bias motivated traffic stop, then subsequently causing SSG Khan to be arrested, processed, imprisoned. and criminally charged with false crimes by Defendant NYPD Officer Matthew S. Bessen acting in accordance with practices and policies fostered and condoned by the NYPD.

152. Defendants, jointly and/or severally, individually and/or collectively,  had a duty to conduct a prompt, full and fair investigation of the incident surrounding the bias-motivated traffic stop of Plaintiff, Raffique N. Khan, his false arrest, false imprisonment, and prosecution, yet no such investigation was ever initiated much less conducted.

153. Failure to conduct such an investigation into the circumstances of the mistreatment of Plaintiff Raffique N. Khan  evidenced malice, gross recklessness, intention and/or indifference without excuse or justification in violation of 42 U.S.C. § 1983.

154. The treatment of Plaintiff Raffique N. Khan exemplifies a long standing policy and practice of the NYPD particularly with respect to bias-based traffic stops without probable cause and the failure to properly investigate complaints concerning such stops and other violations of Constitutional rights of motorists following such illegal bias-based stops.

155. Defendants, jointly and/or severally, individually and/or collectively, intentionally violated and continue to violate

27

Plaintiff's Constitutional rights, Plaintiff Raffique N. Khan seeks appointment of a Special Federal Court Monitor to oversee all actions by Defendant New York City and Defendant NYPD which deny or interfere with the Second Amendment rights of the Plaintiff and others so unfortunate as to be similarly affected.

156. Defendants, individually and collectively, did engrave identification numbers unique to a system created and promoted by Defendants in an effort to unlawfully seize, retain and track firearms within the jurisdiction of this Honorable Court.

157. Without the appointment of a Special Federal Court Monitor, Defendants, jointly and/or severally, individually and/or collectively, will continue to apply and enforce the unconstitutional policies and practices complained of in this Complaint by the Plaintiff Raffique N. Khan.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Raffique N. Khan demands judgment against the Defendants, jointly and/or severally, individually and/or collectively, as follows:

AGAINST the Defendants, jointly and/or severally, individually and/or collectively, on the Causes of Action set forth and alleged in this amended verified complaint  for compensatory damages in an amount to be determined by the triers of fact;

AGAINST the Defendants, jointly and/or severally, individually and/or collectively, on the Causes of Action Causes of Action set forth and alleged in this amended verified complaint for punitive damages, where appropriate and allowed, in an amount to be determined by the triers of fact;

APPOINTMENT of a Special Federal Court Monitor to review the nature of traffic stops by police officers in Eastern Brooklyn of people of color driving newer model cars and the subsequent treatment of those individuals;

AN AWARD of attorney's fees pursuant to 42 U.S.C. § 1988 together with the costs and disbursements in this action.

all together with such other and further relief as this Court shall believe is just and proper under the circumstances

DATED AT: Central Islip, NY
May 21, 2024

*Cory H. Morris*
_____
Cory H. Morris, Esq. (CM 5225)
THE LAW OFFICES OF CORY H. MORRIS
*Attorneys for Plaintiff*
863 Islip Avenue
Central Islip, NY 11722
Phone: (631) 450–2515
FAX: (631) 223–7377
E-mail: info@coryhmorris.com

Victor John Yannacone, jr, Esq., (VY6405)
*of counsel*
E-mail: vyannacone@yannalaw.com

## PLAINTIFF'S VERIFICATION

State of New York
County of Queens } *ss:*

**RAFFIQUE N. KHAN,** the Plaintiff in this action swears under penalty of perjury for the purposes of a verification under New York Civil Practice Law & Rules ("CPLR") section 2106 does state that I have read the foregoing Complaint and know the contents thereof and as to the facts stated therein, I know them to be true unless stated to be upon information and belief, in which case I believe them to be true.

I affirm this 20th day of May, 2024, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

_____
Raffique N. Khan

*[signature]*

5/21/2024

Trinity Lake Singh
Notary Public, State of New York
Reg. No. 01S16100627
Qualified in Queens County
Commission Expires October 20, ~~2000~~ 2027

## EXHIBITS ATTACHED AND SUBMITTED HEREWITH

EXHIBIT 1, DD-214

EXHIBIT 2. Bronze Star citation

EXHIBIT 3. Purple Heart citation

EXHIBIT 4. Veterinary Service News, May 2013

EXHIBIT 5(a). Restricted Handgun License

EXHIBIT 5(b). Concealed Carry Handgun License

EXHIBIT 5(c). Handgun Purchase Authorization

EXHIBIT 6. Handgun invoice

EXHIBIT 7. Certificate

EXHIBIT 8. USOPM Form 50

EXHIBIT 9. Criminal Complaint

EXHIBIT 10. Safe Keeping invoice

EXHIBIT 11. Cory H. Morris letter

EXHIBIT 12. E-mail exchange