# United States District Court
## EASTERN DISTRICT OF NEW YORK

**RAFFIQUE N. KHAN,**

*Plaintiff*

*–v–*

**NEW YORK CITY;**
**ERIC L. ADAMS**, Mayor, New York City, in his official
   capacity;
**NEW YORK CITY POLICE DEPARTMENT (NYPD)**
**EDWARD A. CABAN**, Police Commissioner, in his
   official capacity;
**MICHAEL GERBER**, Deputy Commissioner of Legal
   Matters (DCLM), in his official capacity;
Inspector **ROHAN GRIFFITH**, Commanding Officer,
   75th Precinct, in his official capacity
NYPD Officer **MATTHEW S. BESSEN**, Shield № 14934;
NYPD Officer Noah Nicholson, Shield №
undisclosed by NYC at this time;
NYPD Sergeant Patrick Hughes, Shield №
undisclosed by NYC at this time;
NYPD Officer Joseph Jacobsen, Shield №
undisclosed by NYC at this time;
NYPD Officer Thomas Costigan, Shield №
undisclosed by NYC at this time;
NYPD Officer Jeison Jara, Shield № undisclosed
by NYC at this time;
NYPD Officer Mohamed Eldiasty, Shield №
undisclosed by NYC at this time; and
NYPD Officer Joseph Astarita, Shield № 6949 and
NYPD employees John and Jane Does №s 1–10, of
"DG_LIC-Incidents," "DG_LIC-Hearings-Appeals

involved in refusing to return the firearm and
magazine unlawfully seized from Raffique N. Khan
and/or defacing said firearm and magazine,

*Defendants*

# SECOND AMENDED VERIFIED COMPLAINT

Cory H. Morris, Esq. (CM 5225)
THE LAW OFFICES OF CORY H. MORRIS
*Attorneys for Plaintiff*
863 Islip Avenue
Central Islip, NY 11722
Phone: (631) 450–2515
E-mail: info@coryhmorris.com

Victor John Yannacone, jr, Esq., (VY 6405)
*of counsel*
E-mail: vyannacone@yannalaw.com

# TABLE OF CONTENTS

Second Amended Verified Complaint (D.E. 17) ............................................1

Jurisdiction ...........................................................................................1

Venue ..................................................................................................1

The Plaintiff..........................................................................................2

    Plaintiff's firearm Licenses ................................................................2

Defendants............................................................................................4

    Defendant NYPD Officers....................................................................5

    Defendant NYPD Officer Matthew Bessen and Defendant NYPD Officer Noah Nicholson ............................................................................6

    Other Defendant NYPD Officers .........................................................8

Facts Common to all causes of Action.....................................................12

    The arrest of Raffique N. Khan..........................................................12

    Processing and imprisonment of Raffique N. Khan ...............................14

    Prosecution of Raffique N. Khan ........................................................16

    Seizure of firearms from Raffique N. Khan...........................................17

    Efforts by Raffique N. Khan to recover his property ..............................17

    The quest by Raffique N. Khan to recover his firearms...........................20

    The E-mail exchanges (EXHIBIT 12.).....................................................22

    Defendants obstructed return of SSgt Khan's firearms...........................23

First Cause of Action: 42 U.S.C. § 1981
Prosecution due to race/color/national origin ............................................27

Second Cause of Action: 42 U.S.C. § 1983
Denial of Second Amendment Rights ......................................................31

    Seizure of firearms..........................................................................31

    Refusal to return seized firearms .......................................................32

Third Cause of Action: 42 U.S.C. § 1983
*Monell* considerations; Municipal Liability................................................34

Fourth Cause of Action: 42 U.S.C. § 1983
False Arrest and False Imprisonment ........................................... 36

Fifth Cause of Action: 42 U.S.C. § § 1985, 1986 — Conspiracy ................. 38

Sixth Cause of Action: Appointment of a Monitor .................................... 40

Prayer for Relief ............................................................................... 42

Exhibits attached and submitted with Plaintiff's complaint ................. 44

    EXHIBIT 1, DD-214 ....................................................................... 44

    EXHIBIT 2. Bronze Star citation ................................................. 44

    EXHIBIT 3. Purple Heart citation ............................................... 44

    EXHIBIT 4. Veterinary Service News, May 2013 ....................... 44

    EXHIBIT 5(a). Restricted Handgun License ............................... 44

    EXHIBIT 5(b). Concealed Carry Handgun License .................... 44

    EXHIBIT 5©. Handgun Purchase Authorization ....................... 44

    EXHIBIT 6. Handgun invoice ...................................................... 44

    EXHIBIT 7. Certificate ................................................................. 44

    EXHIBIT 8. USOPM Form 50 ...................................................... 44

    EXHIBIT 9. Criminal Complaint ................................................. 44

    EXHIBIT 10. Safe Keeping invoice ............................................. 44

    EXHIBIT 11. Cory H. Morris letter .............................................. 44

    EXHIBIT 12. E-mail exchange .................................................... 44

    EXHIBIT 13. Photos of defaced firearm and magazine ............. 44

Attorney's Verification ................................................................... 45

## SECOND AMENDED VERIFIED COMPLAINT

Plaintiff Raffique N. Khan, ("Plaintiff") by and through his attorneys, The Law Offices of Cory H. Morris, bring this action to redress the violation of Plaintiff's rights under the Constitution and Laws of the United States and complain of the Defendants ("Defendants") as follows:

## JURISDICTION

1. – 1.    This is an action pursuant to 42 U.S.C. Section 1983 and 42 U.S.C § 1988 to redress the deprivation under color of statute, ordinance, regulation, custom or usage of rights, privileges and immunities secured to plaintiff by the Second, Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States.

2. – 2.    Jurisdiction is conferred on the Court by 28 U.S.C. §1343(3) which confers original jurisdiction on Federal District Courts in suits to redress the deprivation of rights, privileges and immunities as stated in Paragraph 2 thereof.

3. – 3.    The plaintiff demands a trial by jury.

## VENUE

4. – 4.    Plaintiff is a resident of Queens County in New York City.

5. – 5.    Defendants are residents of or have their principal place of business in New York City.

6. – 6.    A Notice of Claim was served on Defendants, New York City.

## THE PLAINTIFF

7. – 7.    At all the times relevant to this Complaint and at the present time, Plaintiff Raffique N. Khan was and he still is a citizen of the United States of America.

> That Plaintiff Raffique N. Khan retired from the United States Army with the rank of Staff Sergeant ("SSgt")on July 24, 2015 (**Exhibit 1**, DD-214) by reason of service connected disability as a result of wounds incurred during an insurgent attack on FOB Salerno, in Afghanistan, on June 1, 2012, "After a Suicide Vehicle Borne Improvised Explosive Device destroyed the DFAC where he and his team were eating, SGT Khan extracted trapped personnel from the wreckage and initiated first aid on the wounded. He engaged advancing insurgents with M16 fire, and continued to provide security at an impromptu casualty collection point until the attack was defeated and the casualties evacuated. For his heroic actions, SGT Khan was awarded the Bronze Star Medal for Valor (**EXHIBIT 2**. Bronze Star citation) and the Combat Action Badge, and also received the Purple Heart (**EXHIBIT 3**. Purple Heart citation) for his injuries. (**EXHIBIT 4**, Veterinary Service News, May 2013)

### Plaintiff's firearm Licenses

8. – 8.    On April 11, 2023, New York City, through the 113 Precinct of the NYPD issued Lic: PR2023001500, a "Restricted Handgun License" for "Residential Premises" to Plaintiff Raffique N. Khan. (**EXHIBIT** 5(a). Residential Premises Handgun License)

9. – 9.     At all the times relevant to this Complaint and at the present time, handgun license PR2023001500 is in full force and effect.

10. – 10.    On September 1, 2023, New York City, through the 113 Precinct of the NYPD issued Lic: CB2023005726, a "Concealed Carry Handgun License" to Plaintiff Raffique N. Khan. (Exhibit 5(b). Concealed Carry Handgun License)

11. – 11.        At all the times relevant to this Complaint and at the present time, handgun license CB2023005726 is in full force and effect

12. – 12.     On September 13, 2023, the License Division of the NYPD issued a "Handgun Purchase Authorization" bearing Serial No. 308191 allowing Plaintiff Raffique N. Khan to purchase one handgun for permitted concealed carry and residential premises. (Exhibit 5(c). Handgun Purchase Authorization).

13. – 13.    Pursuant to that Handgun Purchase Authorization, Plaintiff Raffique N. Khan did purchase from Woodhaven Rifle & Pistol, an S&W "Equalizer" handgun, SKU# PJH 2036which was similar to the handgun he used in combat during his service in the United States Army. (Exhibit 6. Handgun invoice)

14. – 14.    During April, 2023, Plaintiff Raffique N. Khan completed a "Concealed Carry Firearm 18 Hour Training Course for which he was issued a Certificate by Woodhaven Rifle & Pistol Range, Inc. (Exhibit 7. Certificate)

15. – 15.    Plaintiff Raffique N. Khan is presently employed by the United States Department of the Interior National Park Service at the Gateway National Recreation Area in Staten Island as an

Environmental Protection Specialist (Exhibit 8. USOPM Form 50) and has carried his handgun pursuant to the License issued to him since the date it was purchased.

## DEFENDANTS

16. At all the times relevant to this Complaint and at the present time, Defendant New York City was and is the policy-making and governing body and authority over Defendant NYPD.

17. At all the times relevant to this Complaint and at the present time, Defendant Eric L. Adams, is the elected Mayor of New York City, and is the chief policy maker for the executive branch of New York City government, including the NYPD and, as such, is responsible for the practices and policies of the NYPD.

18. Defendant Eric L. Adams is a state actor.

19. Defendant New York City Mayor, Eric L. Adams, is sued in his official capacity only.

20. At all the times relevant to this Complaint and at the present time, Defendant Edward A. Caban is the New York City Police Commissioner and as such is a policy maker and responsible for NYPD practices and policies.

21. Defendant Edward A. Caban is a state actor.

22. Defendant Police Commissioner Edward A. Caban is being sued in his official capacity only.

23. At all the times relevant to this Complaint and at the present time, Michael Gerber is the New York City Deputy Commissioner of Legal Matters (DCLM), and, as such, among other responsibilities is

in charge of handgun licensing, and as such is a policy maker in the New York City government.

24.   At all the times relevant to this Complaint and at the present time, as the New York City Deputy Commissioner of Legal Matters (DCLM), Defendant Michael Gerber is responsible for the training and supervision of NYPD officers including Defendant Officer Matthew S. Bessen Shield № 14934, NYPD Officer Noah Nicholson, Shield № undisclosed by NYC at this time, NYPD Sergeant Patrick Hughes, Shield № undisclosed by NYC at this time, NYPD Officer Joseph Jacobsen, Shield № undisclosed by NYC at this time, NYPD Officer Thomas Costigan, Shield № undisclosed by NYC at this time, NYPD Officer Jeison Jara, Shield № undisclosed by NYC at this time, NYPD Officer Mohamed Eldiasty, Shield № undisclosed by NYC at this time, and, as such, Michael Gerber is a policy maker in the New York City government.

25.   Defendant Michael Gerber is a state actor.

26.   Defendant New York City DCLM Michael Gerber is being sued in his official capacity only.

## Defendant NYPD Officers

27.   At all the times relevant to this Complaint and at the present time, Defendant Inspector Rohan Griffith, is the Commanding Officer of the NYPD 75th Precinct and, as such, is responsible for the training and supervision of NYPD officers, including but not limited to, Defendant Officer Matthew S. Bessen and NYPD Police Officers named herein who were under his supervision and control. (Defendants disclosures Khan 0124–0128).

28.   Defendant Rohan Griffith is a state actor and is in some way responsible for the arrest, and/or processing, and/or imprisoning, and/or prosecuting of Plaintiff Raffique N. Khan.

29.   Defendant Rohan Griffith is sued in his official capacity.

## Defendant NYPD Officer Matthew Bessen and <u>Defendant NYPD Officer Noah Nicholson</u>

30.   Defendant NYPD Officer Matthew S. Bessen, Shield № 14934 is a state actor and is in some way responsible for the arrest, and/or processing, and/or imprisoning, and/or prosecuting Plaintiff Raffique N. Khan.

31. – According to Counsel for Defendants, Defendant NYPD Officer Matthew Bessen signed the criminal court complaint in relation to Plaintiff's November 26, 2023 arrest,

32. – Defendant NYPD Officer Matthew Bessen knew or should have known at the time he executed the criminal complaint against Plaintiff Raffique N. Khan that there was no legal basis for the charge alleged and that it was essentially a false statement which would cause injury and damage to the Plaintiff.

33. – Defendant NYPD Officer Matthew Bessen was identified as the arresting officer who placed Plaintiff Raffique N. Khan in custody, handcuffed him and transported him to the 75th Precinct station house.

34. – <u>Defendant NYPD Officer Noah Nicholson, Shield № undisclosed by NYC at this time, is a state actor and is in some way responsible for the arrest, and/or processing, and/or imprisoning, and/or prosecuting of Plaintiff Raffique N. Khan.</u>

35. – Upon information and belief, <u>Defendant NYPD Officer Noah Nicholson</u> was the partner of Defendant NYPD Officer Matthew Bessen, and he participated in the arrest, <u>and/or processing, and/or imprisoning, and/or</u> <u>prosecuting of</u> Plaintiff Raffique N. Khan.

36. – That Defendant NYPD Officer Matthew Bessen and <u>Defendant NYPD Officer Noah Nicholson</u>, jointly and/or severally, individually and/or collectively, knew or with the exercise of due diligence as New York City Police Officers should have known, that there was no probable cause for stopping Plaintiff Raffique N. Khan while he was operating his motor vehicle on a public roadway in New York City.

37. – That in stopping Plaintiff Raffique N. Khan without probable cause Defendant NYPD Officer Matthew Bessen and <u>Defendant NYPD Officer Noah Nicholson jointly and/or severally, individually and/or collectively,</u> were continuing a long standing policy and practice of racial profiling that had existed for some time in the 75th Precinct.

38. – That Defendant NYPD Officer Matthew Bessen and <u>Defendant NYPD Officer Noah Nicholson</u> knew or with the exercise of due diligence as New York City Police Officers should have known, that there was no legal basis for the arrest, <u>and/or processing, and/or imprisoning, and/or</u> <u>prosecuting</u> of Plaintiff Raffique N. Khan.

39. – That Defendant NYPD Officer Matthew Bessen and <u>Defendant NYPD Officer Noah Nicholson, jointly and/or</u>

severally, individually and/or collectively, operated together in the arrest, and/or processing, and/or imprisoning, and/or prosecuting of Plaintiff Raffique N. Khan.

## Other Defendant NYPD Officers

40. – Defendant NYPD Sergeant Patrick Hughes, Shield № undisclosed by NYC at this time, is a state actor and is in some way responsible for the arrest, and/or processing, and/or imprisoning, and/or prosecuting of Plaintiff Raffique N. Khan.

41. – Upon information and belief, Defendant NYPD Sergeant Patrick Hughes was the superior officer at the scene of and participated in the arrest, and/or processing, and/or imprisoning, and/or prosecuting of Plaintiff Raffique N. Khan.

42. – That Defendant NYPD Sergeant Patrick Hughes knew or with the exercise of due diligence as New York City Police Officers should have known, that there was no legal basis for the arrest, and/or processing, and/or imprisoning, and/or prosecuting of Plaintiff Raffique N. Khan.

43. – That Defendant NYPD Officer Matthew Bessen and Defendant NYPD Officer Noah Nicholson and Defendant NYPD Sergeant Patrick Hughes, jointly and/or severally, individually and/or collectively, operated together in the arrest, and/or processing, and/or imprisoning, and/or prosecuting of Plaintiff Raffique N. Khan.

44. – Defendant NYPD Officer Joseph Jacobsen, Shield № undisclosed by NYC at this time, is a state actor and is in some

way responsible for the arrest, and/or processing, and/or imprisoning, and/or prosecuting of Plaintiff Raffique N. Khan.

45. – Upon information and belief, Defendant NYPD Officer Joseph Jacobsen participated in the arrest, and/or processing, and/or imprisoning, and/or prosecuting of Plaintiff Raffique N. Khan.

46. – Defendant NYPD Officer Thomas Costigan, Shield № undisclosed by NYC at this time, is a state actor and is in some way responsible for the arrest, and/or processing, and/or imprisoning, and/or prosecuting Plaintiff Raffique N. Khan.

47. – Upon information and belief, Defendant NYPD Officer Thomas Costigan participated in the arrest, and/or processing, and/or imprisoning, and/or prosecuting of Plaintiff Raffique N. Khan.

48. – That Defendant NYPD Officer Joseph Jacobsen and Defendant NYPD Officer Thomas Costigan, jointly and/or severally, individually and/or collectively, knew or with the exercise of due diligence as New York City Police Officers should have known, there was no legal basis for the arrest of Plaintiff Raffique N. Khan.

49. – Defendant NYPD Officer Jeison Jara, Shield № undisclosed by NYC at this time but located at the 84th Precinct, is a state actor and is in some way responsible for the arrest, and/or processing, and/or imprisoning, and/or prosecuting Plaintiff Raffique N. Khan. (Defendants Rule 26 Disclosures; ¶9.)

50. – Defendant NYPD Officer Jeison Jara, participated in the arrest, and/or processing, and/or imprisoning, and/or prosecuting of Plaintiff Raffique N. Khan.

51. – Defendant NYPD Officer Jeison Jara knew, or with the exercise of due diligence as a New York City Police Officers should have known, there was no legal basis for the arrest of Plaintiff Raffique N. Khan.

52. – Defendant NYPD Officer Mohamed Eldiasty, Shield № undisclosed by NYC at this time, is a state actor and is in some way responsible for the arrest, and/or processing, and/or imprisoning, and/or prosecuting Plaintiff Raffique N. Khan.

53. – Defendant NYPD Officer Mohamed Eldiasty, participated in the arrest, and/or processing, and/or imprisoning, and/or prosecuting of Plaintiff Raffique N. Khan.

54. – Defendant NYPD Officer Mohamed Eldiasty, knew, or with the exercise of due diligence as a New York City Police Officers should have known, there was no legal basis for the arrest of Plaintiff Raffique N. Khan.

56. – NYPD Officer Joseph Astarita Shield № 6949 has been assigned to the NYPD License Division since 2015.

57. – NYPD Officer Joseph Astarita Shield № 6949 is a state actor who was involved in refusing to return the firearm and magazine unlawfully seized from Plaintiff Raffique N. Khan, and in some way responsible for the constitutional deprivations suffered by the Plaintiff Raffique N. Khan by unlawfully seizing

and then refusing to return his firearm and magazine for which he had valid licenses to carry and possess.

58. – 33.    NYPD employees John and Jane Doe №s 1–10, together with NYPD Officer Astarita were involved in refusing to return the firearm and magazine unlawfully seized from Plaintiff Raffique N. Khan, are known to the defendants, individually and collectively, but their identities are unknown to the Plaintiff at this time other than that they are in some way responsible for the constitutional deprivations suffered by the Plaintiff Raffique N. Khan by unlawfully seizing and then refusing to return his firearm and magazine for which he had valid licenses to carry and possess.

59. – 34.    Defendants NYPD employees John and Jane Doe №s 1–10, are each state actors.

60. – 35.    Each of the Defendants NYPD employees John and Jane Doe №s 1–10, in the regular course of their employment, by or on behalf of the Defendant New York City, acted under color of State law.

61. – 36.    At all the times relevant to this Complaint and at the present time, each of the Defendants NYPD employees John and Jane Doe №s 1–10, in some way specific to their positions in law enforcement deprived and denied Plaintiff Raffique N. Khan his Constitutional and civil rights in the regular course of their employment acting under color of State law.

62. – 37.    Defendants New York City and NYPD are recipients of federal funding for the purpose of providing for the public safety

63. – 38.   Defendant NYPD employees John and Jane Doe №s 1–10, and Defendants, jointly and/or severally, individually and/or collectively did permit and effect the policy and policies, action and actions complained of hereinafter that caused Plaintiff Raffique N. Khan constitutional injury and deprivation of constitutional rights and guarantees.

## FACTS COMMON TO ALL CAUSES OF ACTION

## The arrest of Raffique N. Khan

66. – 39.   On Sunday November 26, 2023 Plaintiff Raffique N. Khan was attending a small private function with family and friends commemorating what would have been his mother's 70th Birthday on November 24th. His mother had just recently passed away.

67. – 40.   SSgt Khan, his cousin, and a friend took some food from the function and sat in SSgt Khan's car to eat and talk catching up on happenings since they last were together.

68. – 41.   About 0315 hours while the three men were still talking in the 2022 BMW Series 3 owned by Plaintiff Raffique N. Khan bearing Purple Heart license plates, an unmarked Police Car drove past, slowed down, then drove on.

69, – Upon information and belief, Defendant NYPD Officer Matthew Bessen and <u>Defendant and NYPD Officer Noah Nicholson</u> were the Police Officers in that unmarked vehicle.

70. – 42.   After sitting in his car for a while longer, SSgt Khan drove off with his cousin and friend toward his home in St Albans, Queens.

71. – 43.  After SSgt Khan had been driving for a short time, he was stopped by the same unmarked police car he had observed earlier.

71. – 44.  The officers never identified themselves to Plaintiff Raffique N. Khan and they were not in uniform.

72. – Upon information and belief, the officers in the unmarked vehicle were Defendant NYPD Officer Matthew Bessen and <u>Defendant NYPD Officer Noah Nicholson.</u>

73. – 45.  Plaintiff Raffique N. Khan told Defendant NYPD Officer Matthew S. Bessen that he had a weapon in the glovebox and the licenses were in the sun visor of the car.

74. – 46.  Plaintiff Raffique N. Khan always keeps his driver's license, insurance proof, registration, and Concealed Carry Handgun License in the sun visor so that in the event he is stopped by police he can keep both hands on the wheel and not have to reach for anything.

75. – 47.  Without any explanation for the traffic stop or any other explanation Defendant NYPD Officer Matthew S. Bessen told Plaintiff Raffique N. Khan to, "Step out of the vehicle."

76. – 48.  Defendant NYPD Officer Matthew S. Bessen ordered Plaintiff Raffique N. Khan and his passengers to go the rear of the vehicle and then the officers started searching SSgt Khan's without asking permission, providing any explanation, and without any probable cause.

75. – 49.  After approximately 30 minutes of searching, Defendant NYPD Officer Matthew S. Bessen and other officers handcuffed Plaintiff Raffique N. Khan his cousin, and his friend.

77. – 50.    Defendant NYPD Officer Matthew S. Bessen looked at the Retired Military Id of SSgt Khan and his Concealed Firearms Carry License and asked, "How did you get these?" but he was not interested in the answer provided by Plaintiff Raffique N. Khan.

78. – 51.    At no time during the traffic stop did Defendant NYPD Officer Matthew S. Bessen ever provide Plaintiff Raffique N. Khan with a *Miranda* warning.

79. – 52.    At no time from the traffic stop until Plaintiff Raffique N. Khan was imprisoned in a holding cell did anyone associated with the Defendant NYPD ever state what charges were being lodged against SSgt Khan.

80. – 53.    Defendant NYPD Officer Matthew S. Bessen and the other officers at the scene of the traffic stop, including, <u>Defendant NYPD Officer Noah Nicholson</u>, <u>Defendant NYPD Sergeant Patrick Hughes, Defendant NYPD Officer Joseph Jacobsen, and Defendant NYPD Officer Thomas Costigan,</u> placed Plaintiff Raffique N. Khan, his cousin, and his friend in separate cars and transported them all to the 75th Precinct Station house.

## Processing and imprisonment of Raffique N. Khan

81. – 54.    Eventually, a NYPD Officer whose identity is still undisclosed by NYC at this time fingerprinted SSgt Khan, his cousin, and his friend, took their personal belongings, and imprisoned them in a "holding" cell.

82. – 55.    After being imprisoned in the holding cell for approximately four hours, NYPD Officers whose identity is still undisclosed by NYC at this time released the cousin and friend of SSgt Khan.

83. – 56.   After being imprisoned in the holding cell for approximately 8 hours, Plaintiff Raffique N. Khan asked to make a telephone call but was told by a NYPD Officer whose identity is still undisclosed by the Defendants, that only the arresting officer could let him use the phone.

84. – 57.   After being imprisoned in the holding cell for approximately 12 hours, Defendant NYPD Officer Matthew Bessen came back and told Plaintiff Raffique N. Khan he could use the phone after the detectives come in and questioned him. SSgt Khan again asked the Officer what the charges were, but he never told him.

85. – 58.   Plaintiff Raffique N. Khan asked for a lawyer and none was ever provided. Neither was SSgt Khan allowed to make a phone call.

86. – 59.   Eventually, hours later, a NYPD Officer whose identity is still undisclosed by NYC at this time told Plaintiff Raffique N. Khan he was being taken to Central Booking in Brooklyn.

87. – 60.   After Plaintiff Raffique N. Khan arrived at Central Booking, he was photographed and processed, but was never informed of the charges against him, nor was he allowed to make a phone call.

88. – 61.   After being imprisoned for more than 24 hours, Plaintiff Raffique N. Khan was told by a guard whose identity is still undisclosed by NYC at this time, that the Courts were now closed and SSgt Khan would see a Judge in the morning.

89. All of the NYPD Officers involved in the Processing and imprisonment of Raffique N. Khan knew or with the exercise of due diligence as New York City Police Officers should have

known, that they were violating fundamental constitutional and civil rights of the Plaintiff Raffique N. Khan.

## Prosecution of Raffique N. Khan

90. – 62.  At approximately 0800 hours the next day, a Legal Aid attorney met with SSgt Khan and finally told him what the charges against him were. He was told that the District Attorney was requesting $50,000 cash bail and $100,000 in assets.

91. – 63.  Plaintiff Raffique N. Khan was finally arraigned at 1500 hours on Monday, November 27, 2023, The District Attorney was still seeking bail.

92. – The Defendants, jointly and/or severally, individually and/or collectively, knew or with the exercise of due diligence as New York City law enforcement officials should have known, that the bail request was unconscionable and discriminatory and there was no merit to the accusatory instrument.

93. – 64.  When the Legal Aid attorney assigned to SSgt Khan presented a copy of SSgt Khan's Concealed Carry Handgun License, the judge released Plaintiff Raffique N. Khan without bond to return on Friday, December 1, 2024.

94. – 65.  At the time of his release by the Court, Plaintiff Raffique N. Khan had been imprisoned and held incommunicado for over 34 hours from the time of his arrest.

95. – 66.  During the time that Plaintiff Raffique N. Khan was being imprisoned and held incommunicado he was unable to communicate with his teenage children alone in his home in Queens or with his federal government employer.

96. – 68.   During the period that Defendant NYPD withheld the wrongfully and illegally seized government issued cellphone and federal ID of Plaintiff Raffique N. Khan, he was unable to gain access to his federal job site at Fort Wadsworth and was forced to notify his federal chain of command of his arrest and seizure of his firearm.

97. – 67.   During the time that Plaintiff Raffique N. Khan was being imprisoned and held incommunicado he was actually marked AWOL (absent without leave) from his federal job.

## Seizure of firearms from Raffique N. Khan

98. – 69.   On Monday, November 27, 2023, Plaintiff Raffique N. Khan called the NYPD licensing Division and was advised to turn in his Resident Firearm, a Smith & Wesson MP9 Model NML8334 to the local police station of the 113 Precinct for safe keeping. He did. (Exhibit 10. Safe Keeping invoice)

## Efforts by Raffique N. Khan to recover his property

99. – 70.   On November 27, 2023, Plaintiff Raffique N. Khan returned to the 75th Precinct to recover his personal property which had been seized on his arrest. He was unable to retrieve his personal belongings at that time.

100. – Defendants, jointly and/or severally, individually and/or collectively, in furtherance of a policy and practice of harassing persons of color and in order to further injure and damage Plaintiff Raffique N. Khan refused to return the personal belongings of the Plaintiff which they had taken during the arrest, processing, and imprisonment of SSgt Khan.

101. – 71.   On November 28, 2923, Plaintiff Raffique N. Khan returned to the 75th Precinct but was told to come back at a specific time which he did. However, the Officer was not there at that time.

102. – Defendants, jointly and/or severally, individually and/or collectively, in furtherance of a policy and practice of harassing persons of color and in order to further injure and damage Plaintiff Raffique N. Khan refused to return the personal belongings of the Plaintiff which they had taken during the arrest, processing, and imprisonment of SSgt Khan.

103. – 72.   On November 29, 2024, Plaintiff Raffique N. Khan again went to the 75th Precinct and was told to go to 11 Front Street.

104. – 73.   As instructed, Plaintiff Raffique N. Khan tried to obtain his personal belongings from the NYPD facility at 11 Front St. but he was told that his belongings were still at the 75th Precinct police station.

105. – Defendants, jointly and/or severally, individually and/or collectively, in furtherance of a policy and practice of harassing persons of color and in order to further injure and damage Plaintiff Raffique N. Khan refused to return the personal belongings of the Plaintiff which they had taken during the arrest, processing, and imprisonment of SSgt Khan.

106. – 74.   Returning to the 75th Precinct police station, Plaintiff Raffique N. Khan was finally able to retrieve his Chain, bracelet and other jewelry but was unable to recover his car, his personal cell phone, his government cell phone, his Government Work Id, his cash and other personal property.

107. – Defendants, jointly and/or severally, individually and/or collectively, in furtherance of a policy and practice of harassing persons of color and in order to further injure and damage Plaintiff Raffique N. Khan refused to return the personal belongings of the Plaintiff which they had taken during the arrest, processing, and imprisonment of SSgt Khan.

108. – 75. Plaintiff Raffique N. Khan returned several times to the 75th Precinct police station but each time he was told he had to come back when the arresting officer, Defendant NYPD Officer Matthew Bessen, was there.

109. – Defendants, jointly and/or severally, individually and/or collectively, in furtherance of a policy and practice of harassing persons of color and in order to further injure and damage Plaintiff Raffique N. Khan refused to return the personal belongings of the Plaintiff which they had taken during the arrest, processing, and imprisonment of SSgt Khan.

110. – 76. Finally, the Legal Aid Attorney assigned to represent Plaintiff Raffique N. Khan intervened and SSgt Khan was able to retrieve most of his personal belongings on December 1, 2023. However, his personal cell phone was still missing.

111. – 77. Plaintiff Raffique N. Khan eventually recovered the cash that had been seized from him but his cell phone was not released to him until January 11, 2024.

112. – Defendants, jointly and/or severally, individually and/or collectively, in furtherance of a policy and practice of harassing persons of color and in order to further injure and damage Plaintiff Raffique N. Khan refused to return his cellphone which

contained important and valuable personal information even though he had been released from custody and no criminal charges were pending against him.

113. – In Court on December 1, 2023, the District Attorney requested more time to verify that Plaintiff Raffique N. Khan had an active Concealed Carry Handgun License and the criminal case against Plaintiff Raffique N. Khan was continued to February 24, 2024.

114. – 79.  On the evening of February 23, 2023, Plaintiff Raffique N. Khan received an E-mail form the District Attorney advising him that the case was dismissed and all charges against him had been dropped.

115. – Defendants, jointly and/or severally, individually and/or collectively, in furtherance of a policy and practice of harassing persons of color and in order to further injure and damage Plaintiff Raffique N. Khan worked with the District Attorney in order to continue the unfounded and malicious prosecution of the Plaintiff Raffique N. Khan.

## The quest by Raffique N. Khan to recover his firearms

116. – 80.  After dismissal of all the criminal charges against him, Plaintiff Raffique N. Khan began a quest to recover the firearm which the NYPD had illegally seized.

117. – 81.  In the quest to recover his firearm, Plaintiff Raffique N. Khan first contacted the NYPD on February 26, 2024 after he had obtained a copy of the criminal disposition form from the Court at which time an "investigating" officer who has not yet been identified

by the Defendants told him to write a "statement." He did as instructed, but never received any response from the NYPD.

118. – 82.   In the quest to recover his firearm, Plaintiff Raffique N. Khan returned to the 75th Precinct police station on March 8, 2024 with the disposition stating all charges were dropped but he was told that the ADA had to send a release for the firearm.

119. –83.   In the quest to recover his firearm, Plaintiff Raffique N. Khan was told by NYPD Officers that they had received the release and he was directed to go to 11 Front St. to pick up his firearm. At 11 Front Street, SSgt Khan was told that even though the DA released the firearm NYPD had to complete an investigation by the licensing division.

120. – Defendants, jointly and/or severally, individually and/or collectively, in furtherance of a policy and practice of harassing persons of color and in order to further injure and damage Plaintiff Raffique N. Khan attempted to conduct or actually did conduct an investigation of the Plaintiff Raffique N. Khan in violation of his constitutional and civil rights.

121. – 84.   On March 11, 2024, attorney Cory H. Morris wrote to a number of NYPD agencies (Exhibit 11. Letter to NYPD) publicly identified as dealing with firearms requesting return of the firearms seized from Plaintiff Raffique N. Khan. Attached to that letter and submitted with it were a Litigation Hold Notice, and a number of documents some of which are attached to this Complaint and all of which clearly indicate that seizing the firearms owned by SSgt Khan was unlawful and indicating that SSgt Khan had a valid New York

City Concealed Carry Handgun License at the time of his arrest which was still valid and in full force and effect.

122. – 85. At the time of verifying this Complaint, March 25, 2024, the NYPD still has not returned the handgun and magazine they had improperly seized from Plaintiff Raffique N. Khan.

## The E-mail exchanges (EXHIBIT 12.)

123. – 86. On February 23, 2024 Plaintiff Raffique N. Khan was advised by E-mail from the Kings County Supreme Court Criminal Term that the case against him had been "dismissed and sealed" on the representation by the People, "that the defendant is a federal officer working on an Army base and has an active carry and conceal License."

124. – 87. On February 27, 2024, Plaintiff Raffique N. Khan wrote to NYPD Officer Astarita that the criminal charges against him had been dismissed and attached the appropriate Disposition form.

125. – 88. On March 6, 2024, NYPD Officer Astarita replied, "Received, thank you."

126. – 89. On March 8, 2024, Plaintiff Raffique N. Khan E-mailed NYPD Officer Astarita requesting authorization for release of his firearms.

127. – 90. On March 13, 2024, Plaintiff Raffique N. Khan again E-mailed NYPD Officer Astarita requesting authorization for release of his firearms.

128. – 91. Finally, on March 14, 2024, NYPD Officer Astarita replied by E-mail stating,

Maybe you are not aware of the process regarding your incident. While I have received your recently delivered documents, that does not mean you get your firearms back right away. Your incident is in investigation. When I finish my investigation, it will then be sent to numerous supervisors who will then make a determination. At that time, you will be notified by mail and directed to call for a release and license, if your license is continued. In the meantime, be patient as I hope to have your case completed by midweek next week and then sent on to the supervisors.

## Defendants obstructed return of SSgt Khan's firearms

129. – 92.  On or about March 14, 2024. Plaintiff Raffique N. Khan received the following E-mail instructions from his Legal Aid Society attorney: "…the ADA has agreed to release all of the property under those vouchers. So the process will be the same as for your phone. When you are at the precinct, call 718–250–3550/3552/3553 and they will send the release to the precinct at that time. If the items have been moved to 11 Front Street (which is possible given how long ago the arrest was), then Front Street is open 8–230 and you would need to go there and call the same numbers to have the release sent when you are there.  The gun 3001668962 is located at 11 Front St, voucher 3001668999 … documents, also located at 11 Front St. The other voucher 4001052896 is at the Queens Property Clerks' office 125–01 Queens Blvd Room G3. So just call the numbers I gave you when you get to the Qns [*sic*] location and Front Street."

130. – 93.  After Plaintiff Raffique N. Khan followed those instructions, and although the ADA sent the release, NYPD officials stated that the "license and division have to get back to them first, then make a determination. At that time, you will be notified by mail and directed to call for a release and license, if your license is continued. In the meantime, be patient as I hope to have your case completed by midweek next week and then sent on to the supervisors."

131. – 94.  On or about April 2, 2024, Plaintiff Raffique N. Khan E-mailed Defendant Joseph Astarita asking for help,

> I received a letter from Sergeant Brian Herbert from the NYPD Pistol License Division. The letter stated that both my concealed carry and my premise Residence Licenses has been CONTINUED it was signed by Inspector Bogle the commanding officer.

> The letter also stated that, I had to contact you to schedule an appointment to come into the license Division. The is to process the restoration of my license.

> I called but did not get any response, please advise.

132. – 95.  On or about April 2, 2024, Plaintiff Raffique N. Khan received an e-mail from Defendant Joseph Astarita stating.

> As per our phone conversation, Sgt. Herbert will give you releases for your firearms and your pistol licenses at 10:00 am on 4/3/24. You are to appear at 1 Police Plaza, Rm 110A.

133. – 96.  After unsuccessful attempts to recover his firearms and his licenses on February 8th, 29th and March 1st, 2024, Plaintiff Raffique N. Khan was unable to obtain some kind of required release from the ADA to recover his firearms.

134. – 97.  Plaintiff Raffique N. Khan attempted to contact the Licensing Division several times by phone and E-mail but did

not get a response until April 2, 2024, Defendant Joseph Astarita sent him an E-mail stating that his firearms Licenses have been reinstated but h will have to go to One Police Plaza to pick it up together with one of the releases.

135. – 98. On or about April 2, 2024, Plaintiff Raffique N. Khan went to the NYPD property office in Brooklyn but was told that the ADA had to E-mail a release to the property office first, but the ADA was not available before the NYPD Property Office closed at 2 PM.

136. – 99. Defendant Joseph Astarita had instructed Plaintiff Raffique N. Khan to take the "letter" to the Property Offices to recover his firearms and that he had to contact the ADA once he was at the property office to get a second release.

137. – 100. On April 3, 2024, Plaintiff Raffique N. Khan took the letter first to One Police Plaza, but then he was forced to go to the Brooklyn Property office and finally to the Queens property Office. However, there was a notice on the Inventory sheet that required SSG Khan to obtain yet another release letter from the Licensing Division which he did obtain.

138. – 101. On or about April 3, 2024, Plaintiff Raffique N. Khan finally recovered his firearms.

139. – 102. The firearm SSG Khan recovered from the Property Office in Brooklyn had been damaged but the NYPD employee who returned the firearm was unable to explain the damage.

140. – 103. The  carry firearm SSG Khan recovered was a Smith and Wesson Equalizer 9 MM bearing original serial Number PJH2036.

141. – 104. Numerals had been engraved on the magazine and the firearm itself. There's also a silver coating of paint  on the firearm. The following is a true and accurate photo of the firearms as SSgt Khan received them from the NYPD.

"""""""



## FIRST CAUSE OF ACTION: 42 U.S.C. §1981
## PROSECUTION DUE TO RACE/COLOR/NATIONAL ORIGIN

142. ~~105.~~        42 USC §1981 provides

> All persons within the jurisdiction of the United States
> shall have the same right in every State and Territory …
> to the full and equal benefit of all laws and proceedings

for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Defendants, jointly and/or severally, individually and/or collectively, have violated the rights of Plaintiff Raffique N. Khan, a man of color who was born in Trinidad-Tobago and became an American citizen by virtue of his distinguished military service in the United States Army.

143. – 106. During the early morning of November 26, 2023, Plaintiff Raffique N. Khan was lawfully operating his 2022 BMW Series 3 sedan with clearly displayed front and rear license plates bearing the number PH Khan19 indicating that the owner of the vehicle was a veteran of United States military service who had earned a Purple Heart as a result of wounds incurred during service.

144. – 107. At the intersection of Newport St. and Chestnut St. Brooklyn within the jurisdiction of the NYPD 75th Precinct, Plaintiff Raffique N. Khan was stopped by an unmarked vehicle operated by Defendant NYPD Officer Matthew S. Bessen in plain clothes. Defendant NYPD Officer Noah Nicholson was riding with Defendant NYPD Officer Matthew Bessen in the unmarked vehicle.

145. – 108. There was no probable cause to stop Plaintiff Raffique N. Khan other than he was a person of color operating an expensive late model motor vehicle along a public roadway in an area patrolled by officers of the NYPD 75th Precinct in Brooklyn.

146. – 109. At the time of the traffic stop Plaintiff Raffique N. Khan was not charged with any violation of the Vehicle & Traffic Law, nor

has he ever been charged with a violation of the Vehicle & Traffic Law at the time and place of that stop.

147. – In stopping Plaintiff Raffique N. Khan without probable cause while he was lawfully operating his motor vehicle on the public roadways of New York City in the Borough of Brooklyn, Defendant NYPD Officer Matthew Bessen and <u>Defendant NYPD Officer Noah Nicholson violated the constitutional and civil rights of SSgt Khan.</u>

148. – That in stopping Plaintiff Raffique N. Khan without probable cause while he was lawfully operating his motor vehicle on the public roadways of New York City in the Borough of Brooklyn, Defendant NYPD Officer Matthew Bessen and <u>Defendant NYPD Officer Noah Nicholson were acting in accordance with and in furtherance of the policy and practice of the Defendants, jointly and/or severally, individually and/or collectively, to deny people of color the opportunity to freely travel the public roadways of New York City without fear of improper stop[s and malicious prosecution by NYPD Police Officers.</u>

149. – That in stopping Plaintiff Raffique N. Khan while he was lawfully operating his motor vehicle on the public roadways of New York City in the Borough of Brooklyn, and seizing a licensed firearm which Plaintiff was transporting in the glove compartment of that vehicle, Defendant NYPD Officer Matthew Bessen and <u>Defendant NYPD Officer Noah Nicholson were acting in accordance with and in furtherance of the policy and</u>

practice of the Defendants, jointly and/or severally, individually and/or collectively, to deny people of color such as the Plaintiff Raffique N. Khan, the right to own and possess firearms in violation of their constitutional and civil rights.

150. – 110. Plaintiff Raffique N. Khan had the right to own and did own a firearm for which he possessed a concealed carry License issued by New York City (Exhibit 5(b)).

151. – 111.   Plaintiff had the right to own a firearm and he did own a firearm.

152. – 112. Plaintiff Raffique N. Khan was denied his fundamental constitutional and civil right to own a firearm lawfully without police intrusion or interference by the actions of Defendant NYPD Officer Matthew Bessen and Defendant NYPD Officer Noah Nicholson in accordance with and in furtherance of the policy and practices of the Defendants, jointly and/or severally, individually and/or collectively to deny or unreasonably limit the fundamental constitutional and civil right of people of color to own firearms in the City of New York.

153. – 113. Plaintiff Raffique N. Khan was treated differently because of his race, color, and/or national origin in accordance with longstanding New York City policy to deny or unreasonably limit the fundamental constitutional and civil right of people of color to own firearms in the City of New York.

154. – 114. There was no probable cause for the unjustified traffic stop of Plaintiff Raffique N. Khan other than he was a person of color operating an expensive late model automobile on the public streets patrolled by officers working out of the NYPD 75thPrecinct.

## SECOND CAUSE OF ACTION: 42 U.S.C. §1983
## DENIAL OF SECOND AMENDMENT RIGHTS

## Seizure of firearms

155. – 115. That the acts and conduct of the Defendant NYPD Officer Matthew Bessen and <u>Defendant NYPD Officer Noah Nicholson</u> acting individually and in furtherance of a policy and practice of the Defendants, jointly and/or severally, individually and/or collectively, in seizing a firearm for which Plaintiff Raffique N. Khan held a valid and current New York City Concealed Carry Handgun License (Exhibit 5(b), herein), interfered with and effectively denied SSgt Khan his rights guaranteed under the Second Amendment.

156. – 116. That the Second Amendment Constitutional rights of Plaintiff Raffique N. Khan were and are being denied him as a result of his arrest and malicious prosecution by Defendant NYPD Officer Matthew Bessen and <u>Defendant NYPD Officer Noah Nicholson</u> acting individually and in furtherance of a policy and practice of the Defendants, jointly and/or severally, individually and/or collectively, in seizing a firearm for which Plaintiff Raffique N. Khan held a valid and current New York City Concealed Carry Handgun License and by the actions of Defendant Joseph Astarita, individually and together with others whose identity is still undisclosed by NYC at this time, in furtherance of a policy and practice of the Defendants, jointly and/or severally, individually and/or collectively, to violate the constitutional and civil rights of persons of color such as SSgt Khan to own and carry firearms in New York City.

157. – 117. As a direct and proximate result of the actions of the Defendants, jointly and/or severally, individually and/or collectively, Plaintiff Raffique N. Khan has sustained and continues to sustain injury and damages and he has been caused to and suffered shock, embarrassment, anxiety and fear of unjust police action, which can only be justly compensated by an award of money damages in an amount to be determined by the trier of facts upon a trial of this action.

## Refusal to return seized firearms

158. – 118. Defendants, jointly and/or severally, individually and/or collectively, have violated the property rights of Plaintiff Raffique N. Khan guaranteed to him under the Fifth and Fourteenth Amendments to the Constitution of the United States.

159. – 119. Defendants, jointly and/or severally, individually and/or collectively, have created and are maintaining a policy and practice which began a century ago with the "Sullivan" Act to deny licenses to carry firearms to persons of color and members of racial and ethnic minorities in violation of the rights guaranteed to all citizens by the Second Amendment to the Constitution of the United States.

160. – 120. The continued existence of this policy and practice within New York City executed and enforced by the NYPD is clearly demonstrated in the treatment of Plaintiff Raffique N. Khan with respect to the obstacles interposed by Defendant Joseph Astarita and other as yet unidentified members and/or employees of the NYPD to his efforts to recover his handgun which had been wrongfully seized during an illegal arrest following a racially motivated improper traffic stop.

161. – 121. That the acts and conduct of the Defendants, jointly and/or severally, individually and/or collectively, in refusing to return a wrongfully seized firearm for which Plaintiff Raffique N. Khan held a valid and current New York City Concealed Carry Handgun License (Exhibit 5(b) herein), interfered with and effectively denied Plaintiff his rights guaranteed under the Second Amendment.

162. – 122. As a direct and proximate result of the actions of the Defendants, jointly and/or severally, individually and/or collectively, Plaintiff Raffique N. Khan has sustained and continues to sustain injury and damages and he has been caused to and suffered shock, embarrassment, anxiety and fear of unjust police action, which can only be justly compensated by an award of money damages in an amount to be determined by the trier of facts upon a trial of this action.

163. – 123. As a result of the violation of the rights of Plaintiff Raffique N. Khan guaranteed under the Second Amendment by Defendants, jointly and/or severally, individually and/or collectively, Plaintiff seeks to recover compensatory damages from the Defendants, jointly and/or severally, individually and/or collectively, in an amount to be determined by the trier of facts upon a trial of this action.

164. – 124. Defendants, , jointly and/or severally, individually and/or collectively, may have physically returned the firearm(s) and magazine(s) owned by Plaintiff to him but not before discharging, marking, damaging and defacing Plaintiff's property in violation of the United States Constitution.

165. – 125. As a result of the violation of the rights of Plaintiff Raffique N. Khan guaranteed under the Second Amendment by Defendants,

jointly and/or severally, individually and/or collectively, Plaintiff
seeks to recover punitive damages from the Defendants, jointly
and/or severally, individually and/or collectively, in an amount to
be determined by the trier of facts upon a trial of this action.

## THIRD CAUSE OF ACTION: 42 U.S.C. §1983
### *MONELL* CONSIDERATIONS; MUNICIPAL LIABILITY

166. – 126. The violations of the civil rights of Plaintiff Raffique N.
Khan were the result of and/or caused by the negligent hiring,
training, retention, and supervision, acts of negligence, failure to
train, recklessness and intentional acts of Defendants New York
City and NYPD, their agents, employees, and contractors.

167. – 127. Starting with the initial baseless traffic stop of Plaintiff
Raffique N. Khan, a gentleman of color apparently for no other
reason than he was a person of color driving a relatively new BMW
through Brooklyn in the domain of the NYPD 75th Precinct,
"driving while black," and then the pretextual arrest for possession
of a handgun when the Concealed Carry License issued to SSgt
Khan was clearly visible to the arresting officer, Defendant NYPD
Officer Matthew Bessen and all the other Defendant NYPD Officers
present at the scene, on the windshield sun visor; followed by the
indignity of booking, imprisonment, and arraignment, only to have
the case summarily dismissed with the charges withdrawn, Plaintiff
Raffique N. Khan was clearly a victim of long standing policy and
practices of the NYPD of attempting to limit, restrict, and where
possible prohibit, possession of a handgun by persons of color in
New York City, since the command and management of the 75th
Precinct were fully aware that SSgt Khan was a wounded American

combat veteran with a Bronze Star for Valor and a Purple Heart and had a valid concealed carry handgun license.

168. – 128. The initial baseless traffic stop of Plaintiff Raffique N. Khan, a gentleman of color driving a relatively new BMW through Brooklyn is a manifestation of a long-standing policy by elements of the NYPD to take actions which violate the spirit and intent of the United States Constitution.

169. – 129.As a consequence of Defendants' wrongful actions, Plaintiff Raffique N. Khan was deprived of his freedom, and suffered shock, personal humiliation, degradation, embarrassment, anxiety, fear of unjust and discriminatory police action, which can only be justly compensated by an award of money damages in an amount to be determined by the trier of facts upon a trial of this action.

170. – 130. The stop and arrest of Plaintiff Raffique N. Khan, the seizure of his firearms and defacing them, are constitutional violations that separately and collectively evidence a pattern and practice of the NYPD implemented by the Defendants, jointly and/or severally, individually and/or collectively.

171. – 131. Defendant NYPD Officer Matthew Bessen and Defendant NYPD Officer Noah Nicholson knew or with the exercise of due diligence as New York City law enforcement officials should have known, that the mere ownership of a firearm no longer suffices to be probable cause for an arrest, and the continuation of Defendants' policy to arrest those who merely possess a firearm is a constitutional violation evidencing a custom and policy of the Defendants, jointly and/or severally, individually

and/or collectively, to violate the Second Amendment rights of the Plaintiff Raffique N. Khan and other persons of color.

172. – As a result of the violation of the rights of Plaintiff Raffique N. Khan guaranteed under the Second Amendment by Defendants, jointly and/or severally, individually and/or collectively, Plaintiff seeks to recover compensatory damages from the Defendants, jointly and/or severally, individually and/or collectively, in an amount to be determined by the trier of facts upon a trial of this action.

173. – 132. The violation of Plaintiff's Constitutional and civil rights calls for an award of punitive damages in an amount to be determined by the trier of facts upon a trial of this action all together with costs and attorneys' fees.

## FOURTH CAUSE OF ACTION: 42 U.S.C. §1983
## FALSE ARREST AND FALSE IMPRISONMENT

174. – 133. The serious charges filed against Plaintiff Raffique N. Khan in the Criminal Court of the City of New York alleging he committed the crimes of violating PL 265.03(3) Criminal possession of a weapon in the second degree (DQO), PL 265.01-B(l) Criminal possession of a firearm (DQO); PL 265.01 (1) Criminal possession of a weapon in the fourth degree; and AC 10-131(I) (3) Possession of pistol ammunition were patently untrue and known to be false at the time they were sworn to and filed by Defendant NYPD Officer Matthew S. Bessen. (Exhibit 9. Criminal Complaint)

175. – 134. The accusations of wrongful actions leveled against Plaintiff, Raffique N. Khan, were false and known or could have

been known to Defendant NYPD Officer Matthew S. Bessen, at the time he signed the Criminal Complaint and/or Information.

176. – 135. The criminal charges prosecuted against Plaintiff Raffique N. Khan were made by Defendant NYPD Officer Matthew S. Bessen for an improper purpose: to cover up and disguise the lack of probable cause for the arrest of Plaintiff Raffique N. Khan.

177. – 138. All charges against Raffique N. Khan were dismissed.

178. – 139. There was no basis for the criminal prosecution of Plaintiff Raffique N. Khan.

179. – 136. The arrest and physical restraint of Plaintiff Raffique N. Khan were without probable cause or legitimate reason as was the seizure of his firearm and magazine for which he held a lawful License and constituted a violation of Plaintiff's rights, secured by the Fourth Amendment to the United States Constitution, to be free from unreasonable searches and seizures.

180. – 137. As a consequence of Defendants' wrongful actions, Plaintiff Raffique N. Khan was deprived of his freedom, and suffered shock, embarrassment, anxiety and fear of unjust police action, which can only be justly compensated by an award of money damages in an amount to be determined by the trier of facts upon a trial of this action.

181. – 140. Plaintiff Raffique N. Khan suffered shock, embarrassment, anxiety and fear of unjust police action, as a result of Defendants, jointly and/or severally, individually and/or collectively, deliberately violating Plaintiff's Constitutional and civil rights and calls for an award of punitive damages in an amount to be determined by the trier of facts upon a trial of this action all together with costs and attorneys' fees.

## FIFTH CAUSE OF ACTION:
## 42 U.S.C. §§1985, 1986 — CONSPIRACY

182. – 141. Defendants, jointly and/or severally, individually and/or collectively, did intend and conspire to deprive Plaintiff Raffique N. Khan of his Constitutional rights, and caused such deprivation of rights by acting in concert to unlawfully arrest, falsely imprison, and criminally prosecute SSgt Khan.

183. – 142. Defendants, jointly and/or severally, individually and/or collectively, did intend and conspire to deprive Plaintiff Raffique N. Khan of his Constitutional rights by acting in concert to unlawfully arrest, falsely imprison, and criminally prosecute Plaintiff according to a well-established pattern, practice, widespread custom and/or policy of long standing duration in the NYPD arising from the unlawful stop without probable cause of Plaintiff Raffique N. Khan, a person of color.

184. – 143. Defendants, jointly and/or severally, individually and/or collectively, failed to train those involved in reporting, intervening, punishing and/or prosecuting violations of constitutional rights such as those which occurred with Plaintiff Raffique N. Khan that occurred from a race-based traffic stop.

185. – 144. Defendants, jointly and/or severally, individually and/or collectively, engaged in a pattern, practice, widespread custom, usage and/or policy of charging and prosecuting persons who were victims of improper or illegal traffic stops.

186. – 145. As a consequence of Defendants' wrongful actions, Plaintiff Raffique N. Khan was deprived of his freedom, and suffered shock, embarrassment, anxiety and fear of unjust police action, which can only be justly compensated by an award of money damages in an

amount to be determined by the trier of facts upon a trial of this action.

187. – 146. Defendants' actions were motivated by and based on the  , color, race, and/or national origin of Plaintiff Raffique N. Khan. There was not even a pretextual basis to stop the Plaintiff Raffique N. Khan who was lawfully operating his motor vehicle on the public roadways of New York City other than the color of his skin and certainly no reason to prosecute him for unlawful possession of a firearm for which he had a valid concealed carry License from New York City.

188. – 147. The conduct of the Defendants, , jointly and/or severally, individually and/or collectively, continues the long-standing scheme of disenfranchising persons of color and/or minorities and allowing them to be subject to illegal search and seizure for legal firearm ownership, a practice declared unconstitutional by the United States Supreme Court.

189. – 149. As a consequence of Defendants' wrongful actions, Plaintiff Raffique N. Khan was deprived of his freedom, and suffered shock, embarrassment, anxiety and fear of unjust police action, which can only be justly compensated by an award of money damages in an amount to be determined by the trier of facts upon a trial of this action.

190. – 148. The shock, embarrassment, anxiety and fear of unjust police action, suffered by Plaintiff Raffique N. Khan as a result of Defendants, jointly and/or severally, individually and/or collectively, deliberately violating Plaintiff's Constitutional and civil rights calls for an award of punitive damages in an amount to be

determined by the trier of facts upon a trial of this action all together with costs and attorneys' fees.

## SIXTH CAUSE OF ACTION:
### APPOINTMENT OF A MONITOR

191. – 149. Defendants, jointly and/or severally, individually and/or collectively, acting under color of state law, have engaged in actions and abuses which have deprived Plaintiff Raffique N. Khan of rights, privileges and immunities secured by the Constitution of the United States, in violation of 42 U.S.C. §1983 and constituting a conspiracy.

192. – 150. Abuse of process is evidenced by Defendants prolonged imprisonment of the Plaintiff Raffique N. Khan, confiscation of his firearm for which he had a lawful and current New York City Concealed Carry Handgun License, initiation of criminal process, and prosecution of the Plaintiff.

193. – 151. Defendants, jointly and/or severally, individually and/or collectively, did violate the rights of the Plaintiff Raffique N. Khan guaranteed to him under Constitution of the United States by initiating an improper bias motivated traffic stop, then subsequently causing SSgt Khan to be arrested, processed, imprisoned. and criminally charged with false crimes by Defendant NYPD Officer Matthew S. Bessen acting in accordance with and furtherance of practices and policies fostered and condoned by the NYPD and the Defendants, jointly and/or severally, individually and/or collectively.

194. – 152. Defendants, jointly and/or severally, individually and/or collectively, had a duty to conduct a prompt, full and fair

investigation of the incident surrounding the bias-motivated traffic stop of Plaintiff, Raffique N. Khan, his false arrest, false imprisonment, and prosecution, yet no such investigation was ever initiated much less conducted.

195. – 153. Failure to conduct such an investigation into the circumstances of the mistreatment of Plaintiff Raffique N. Khan evidenced malice, gross recklessness, intention and/or indifference without excuse or justification in violation of 42 U.S.C. §1983.

196. – 154. The treatment of Plaintiff Raffique N. Khan exemplifies a long standing policy and practice of the NYPD particularly with respect to bias-based traffic stops without probable cause and the failure to properly investigate complaints concerning such stops and other violations of Constitutional rights of motorists following such illegal bias-based stops.

197. – 155. Defendants, jointly and/or severally, individually and/or collectively, intentionally violated and continue to violate Plaintiff's Constitutional rights, and Plaintiff Raffique N. Khan seeks appointment of a Special Federal Court Monitor to oversee all actions by Defendant New York City and Defendant NYPD which deny or interfere with the Second Amendment rights of the Plaintiff and others who might be so unfortunate as to be similarly mistreated.

198. – 156. Defendants, individually and collectively, did engrave identification numbers unique to a system created and promoted by Defendants in an effort to unlawfully seize, retain and track firearms lawfully owned and in possession of residents living within the jurisdiction of this Honorable Court.

199. – 157. – According to recent media reports, https://www.thecity.nyc/2024/09/13/caban-watered-down-nypd-punishments-as-final-act/, Defendant former Commissioner "Caban Watered Down NYPD Misconduct Rules as his Final Act." If the substance of the article is true, there should be immediate appointment of a federal monitor to oversee complaints of police misconduct.

200. – 157. Without the appointment of a Special Federal Court Monitor, Defendants, jointly and/or severally, individually and/or collectively, will continue to apply and enforce the unconstitutional policies and practices complained of in this Complaint by the Plaintiff Raffique N. Khan.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Raffique N. Khan demands judgment against the Defendants, jointly and/or severally, individually and/or collectively, as follows:

AGAINST the Defendants, jointly and/or severally, individually and/or collectively, on the Causes of Action set forth and alleged in this amended verified complaint for compensatory damages in an amount to be determined by the triers of fact;

AGAINST the Defendants, jointly and/or severally, individually and/or collectively, on the Causes of Action Causes of Action set forth and alleged in this amended verified complaint for punitive damages, where appropriate and allowed, in an amount to be determined by the triers of fact;

APPOINTMENT of a Federal Court Monitor to review the nature of traffic stops by police officers in Eastern Brooklyn of people of color driving newer model cars and the subsequent treatment of those individuals;

AN AWARD of attorney's fees pursuant to 42 U.S.C. § 1988 together with the costs and disbursements in this action.

all together with such other and further relief as this Court shall believe is just and proper under the circumstances

DATED AT: Central Islip, NY
May 20, 2024

Cory H. Morris, Esq. (CM 5225)
THE LAW OFFICES OF CORY H. MORRIS
*Attorneys for Plaintiff*
863 Islip Avenue
Central Islip, NY 11722
Phone: (631) 450–2515
FAX: (631) 223–7377
E-mail: info@coryhmorris.com

Victor John Yannacone, jr, Esq., (VY6405)
*of counsel*
E-mail: vyannacone@yannalaw.com

## EXHIBITS ATTACHED AND SUBMITTED WITH PLAINTIFF'S COMPLAINT

EXHIBIT 1, DD-214

EXHIBIT 2. Bronze Star citation

EXHIBIT 3. Purple Heart citation

EXHIBIT 4. Veterinary Service News, May 2013

EXHIBIT 5(a). Restricted Handgun License

EXHIBIT 5(b). Concealed Carry Handgun License

EXHIBIT 5©. Handgun Purchase Authorization

EXHIBIT 6. Handgun invoice

EXHIBIT 7. Certificate

EXHIBIT 8. USOPM Form 50

EXHIBIT 9. Criminal Complaint

EXHIBIT 10. Safe Keeping invoice

EXHIBIT 11. Cory H. Morris letter

EXHIBIT 12. E-mail exchange

EXHIBIT 13. Photos of defaced firearm and magazine

## ATTORNEY'S VERIFICATION

Victor John Yannacone, jr. declares under penalty of perjury and pursuant to 28 U.S.C 1746, as follows:

I have drafted and read the foregoing second amended verified complaint and I am familiar with the contents thereof. The allegations contained therein are true to the best of my personal knowledge except those which are alleged to be upon information and belief and as to those allegations I have good reason to believe they are true.

Plaintiff Raffique N. Khan has participated in drafting this Second Amended Complaint and intended to verify it personally.

I submit this verification because Plaintiff is not available at this time due to a personal tragedy, the death of two of his family members and the need to attend to funeral services and the deadline for filing imposed by the United States Magistrate Judge.

I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

I have executed this Verification on October 4, 2024.

/s Victor John Yannacone, jr. /s

Victor John Yannacone, jr., *of counsel*
THE LAW OFFICES OF CORY H. MORRIS
*Attorneys for Plaintiff*