UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
RAFFIQUE N. KHAN,

                            Plaintiff,

           v.

NEW YORK CITY, ERIC L. ADAMS, Mayor, New York City, in his official capacity; NEW YORK CITY POLICE DEPARTMENT (NYPD), EDWARD A. CABAN, Police Commissioner, in his official capacity; MICHAEL GERBER, Deputy Commissioner of Legalx Matters (DCLM), in his official capacity; Inspector ROHAN GRIFFITH, Commanding Officer, 75th Precinct, in his official capacity; NYPD Officer MATTHEW S. BESSEN, Shield No. 14934; NYPD Officer NOAH NICHOLSON, Shield No. undisclosed by NYC at this time; NYPD Sergeant PATRICK HUGHES, Shield No. undisclosed by NYC at this time; NYPD Officer JOSEPH JACOBSEN, Shield No. undisclosed by NYC at this time; NYPD Officer THOMAS COSTIGAN, Shield No. undisclosed by NYC at this time; NYPD OFFICER JEISON JARA, Shield No. undisclosed by NYC at this time; NYC OFFICER MOHAMED ELDIASTY, Shield No. undisclosed by NYC at this time, and NYPD OFFICER JOSEPH ASTARITA, Shield No. 6949 and NYPD employees JOHN and JANE DOES Nos. 1-10, of "DG_LIC-Incidents," "DG_LIC-Hearings-Appeals involved in refusing to return the firearms unlawfully seized from Raffique N. Khan, and/or defacing said firearm and magazine,

                            Defendants.

-------------------------------------------------------------------

**OPINION & ORDER**

24-CV-2168
(Ross, J.)
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

       Plaintiff Raffique N. Khan brings this action alleging, *inter alia*, violations of his constitutional rights arising from a traffic stop, arrest, and the subsequent seizure of his firearm by members of the New York City Police Department.  *See* Dkt. Nos. 1, 48.  Plaintiff asserts that his arrest lacked probable cause, was motivated by racial profiling, and reflects systemic

discrimination against people of color, particularly in the enforcement of firearm laws.  *See* Dkt. Nos. 1, 48.

Currently before the Court are two motions filed by Defendants City of New York, Eric Adams, Thomas G. Donlon,[1] Michael Gerber, Rohan Griffith, Matthew Bessen, and Joseph Astarita (collectively, "Defendants").  First, Defendants move for a stay of all discovery pending disposition of their partial motion to dismiss.  *See* Dkt. No. 59.  Second, Defendants move for a protective order, pursuant to Fed. R. Civ. P. 26(c), to preclude the depositions of former NYPD Commissioner Edward Caban and current Deputy Commissioner Michael Gerber.  *See* Dkt. No. 62.  For the reasons set forth below, the Court **DENIES** Defendants' motion to stay discovery and **GRANTS** Defendants' motion for a protective order related to the depositions of former Commissioner Caban and Commissioner Gerber.

## I.    Background

### A.    Relevant Factual Background

Plaintiff, a retired United States Army Staff Sergeant and Purple Heart recipient, alleges that at all relevant times, he was authorized to carry a concealed firearm pursuant to a Restricted Handgun License and a Concealed Carry Handgun License issued by NYPD.  *See* Dkt. No. 48 ¶¶ 7-14.

---

[1] As Defendants correctly note, "Plaintiff named then-NYPD Commissioner Edward A. Caban as a defendant in his official capacity as Police Commissioner.  The current Acting Police Commissioner is Thomas G. Donlon, appointed on September 13, 2024.  Pursuant to {Fed. R. Civ. P.] 25(d), the successor of a public officer is automatically substituted as a party when the originally named public officer "ceases to hold office while the action is pending."  Dkt. No. 62.  "When a government official is sued in an official capacity and subsequently leaves office, the official's successor is automatically substituted. See Fed. R. Civ. P. 25(d)."  *Marciano v. de Blasio*, 589 F. Supp. 3d 423, 426 (S.D.N.Y. 2022), *appeal dismissed sub nom. Marciano v. Adams*, No. 22-570-CV, 2023 WL 3477119 (2d Cir. May 16, 2023), *cert. denied*, 144 S. Ct. 286 (2023).  The Clerk of the Court is therefore directed to update the docket accordingly to replace former Commissioner Caban with Acting Commissioner Donlon.

Plaintiff alleges that on November 26, 2023, he was stopped in Brooklyn by Defendant Officers Bessen and Nicholson while he was driving home to Queens. *Id.* ¶ 70. Plaintiff alleges that he informed Defendant Bessen that his firearm was in his glovebox and that his licenses were stored in the sun visor of the car. *Id.* ¶ 73. Plaintiff contends that Defendant Bessen ordered him to exit the vehicle without explanation, conducted a search without probable cause, and arrested him without providing *Miranda* warnings. *Id.* ¶¶ 75-78.

Plaintiff alleges that he was detained for over 34 hours, during which time he was denied access to legal counsel and phone calls. *Id.* ¶¶ 81-89. Plaintiff alleges that he was not informed of the charges against him until he met with a Legal Aid Society attorney the next morning just before his arraignment. *Id.* ¶ 90. Plaintiff alleges that he was released without bond after his attorney presented proof of his firearm licenses. *Id.* ¶ 64.

On February 23, 2023, the charges against Plaintiff were dropped, and his case was dismissed and sealed "on the representation by the People, 'that the defendant is a federal officer working on an Army base and has an active carry and conceal License.'" *Id.* ¶¶ 114, 123. Plaintiff alleges that notwithstanding the dismissal of the criminal charges, NYPD officers delayed returning his personal property, including his firearm, which was not returned to him until April 3, 2024. *Id.* ¶¶ 116-38. Plaintiff further alleges that Defendants defaced and damaged his firearm by engraving numbers on the magazine and the firearm itself. *Id.* ¶¶ 139-41.

**B.    Procedural History**

Plaintiff filed his initial complaint on March 25, 2024, alleging violations of 42 U.S.C. §§ 1981, 1983, 1985, and 1986, as well as the Second, Fourth, and Fourteenth Amendments to the United States Constitution. *See* Dkt. No. 1. Plaintiff's complaint names the City of New York, the Mayor of the City of New York Eric Adams, former NYPD Commissioner Edward Caban,

3

current Deputy Commissioner Michael Gerber, Inspector Rohan Griffith, Officer Matthew Bessen, and Officer Joseph Astarita as defendants. *Id.* The complaint asserts municipal liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), citing alleged failures to train and supervise NYPD officers. *Id.*

Plaintiff filed an amended complaint on May 21, 2024. *See* Dkt. No. 17.

On July 25, 2024, the parties appeared before the undersigned for an initial conference, and the Court set a fact discovery deadline of November 15, 2024. *See* July 25, 2024 Dkt. Entry. On September 23, 2024, the Court stayed discovery on Plaintiff's *Monell* claims pending resolution of Defendants' anticipated motion to dismiss. *See* Sept. 23, 2024 Dkt. Entry.

On October 2, 2024, the Court granted Plaintiff leave to file a second amended complaint, which named additional NYPD officers as defendants. *See* Dkt. No. 48.

On October 17, 2024, the Court set a briefing schedule for Defendants' partial motion to dismiss, which seeks dismissal of Plaintiff's claims for violations of the equal protection clause under 42 U.S.C. § 1981, for municipal liability under 42 U.S.C. § 1983, for conspiracy under 42 U.S.C. §§ 1985 and 1986, and for the appointment of a monitor. *See* Dkt. No. 40. Significantly, Defendants do not seek dismissal of Plaintiff's causes of action for denial of his Second Amendment rights under 42 U.S.C. § 1983 and for false arrest and imprisonment under 42 U.S.C. § 1983. *See* Dkt. No. 40. Defendants' partial motion to dismiss is set to be fully briefed by January 6, 2025. *See* Oct. 17, 2024 Dkt. Entry.

### 1.    Defendants Motion to Stay All Discovery (Dkt. No. 59)

On October 29, 2024, Defendants moved to stay all discovery (including the currently stayed *Monell* discovery) pending resolution of their partial motion to dismiss. *See* Dkt. No. 59. Defendants contend that a stay is justified because they have "substantial grounds" for their partial

motion to dismiss and because Plaintiff continues to serve "numerous, burdensome discovery demands," many of which pertain to *Monell* discovery, which has been stayed.  *Id.* at 1-3. Defendants contend that the parties continue to disagree over the scope of discovery, and that a stay would mitigate unnecessary and burdensome discovery and limit the need for judicial intervention.  *Id.* at 3.

Plaintiff opposes Defendants' motion, arguing that Defendants have failed to establish good cause for the stay and have not provided sufficient evidence that Plaintiff's claims lack merit or that the discovery requests are unduly burdensome.  *See* Dkt. No. 60 at 1-3.  Plaintiff asserts that the motion is a delay tactic aimed at impeding his ability to effectively present his case, and he seeks an award of attorneys' fees and costs under Fed. R. Civ. P. 37.  *Id.* at 3.

Plaintiff also emphasizes the prejudice he would suffer if discovery were stayed.  *Id.* at 2. Plaintiff claims that his firearm, which was allegedly defaced while in NYPD custody, subjects him to potential criminal liability under 18 U.S.C. § 922(k), which prohibits the possession of a defaced firearm.  *Id.* at 1.  Because his firearm is integral to his work as a federal law enforcement officer, Plaintiff argues that this defacement has significant legal and professional consequences. *Id.*  Plaintiff argues that discovery is critical to determining how the defacement occurred, identifying those responsible, and exploring options for replacing the firearm.  *Id.*  Additionally, Plaintiff asserts that the circumstances surrounding the defacement support his *Monell* claims, warranting the vacatur of the prior stay of *Monell* discovery.  *Id.* at 12.

On November 15, 2024, Defendants filed a letter-motion (1) renewing "their October 29, 2024 motion to stay discovery, which alternatively requests an extension of the discovery deadline to 45 days following the Court's decision on Defendants' Motion to Dismiss; and (2) requesting "an extension of time, until 30 days following the Court's decision on Defendants' Motion to

Dismiss, to respond to Plaintiff's requests for admission." Dkt. No. 67. The Court deferred ruling on Defendants' letter-motion and ordered Plaintiff to file a response by November 18, 2024 at 5:00 p.m. *See* Nov. 15, 2024 Dkt. Entry.

Plaintiff did not timely respond to Defendants' letter-motion; however, Plaintiff's counsel subsequently moved to withdraw as counsel, which the undersigned will address in a separate decision. *See* Dkt. No. 68.

### 2.    Defendants' Motion for a Protective Order (Dkt. No. 62)

On November 5, 2024, Defendants moved for a protective order under Fed. R. Civ. P. 26(c) to preclude the depositions of former NYPD Commissioner Caban and current Deputy Commissioner Gerber. *See* Dkt. No. 62. Defendants note that Defendant Gerber "serves as a general counsel for the NYPD, provides legal guidance on all aspects of NYPD's operations, and advises all NYPD bureaus, including executive staff." Dkt. No. 62-2 at 8.

Defendants contend that Plaintiff noticed these depositions on July 26, 2024 and October 22, 2024, but has not provided any justification for these witnesses' testimony beyond their high-ranking positions in NYPD. *See* Dkt. No. 62-1 at 2; Dkt. No. 62-2 at 3. Defendants argue that under *Lederman v. New York City Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013), depositions of high-ranking officials are only permissible under "exceptional circumstances," a standard that Plaintiff has failed to meet. Dkt. No. 62-2 at 3-4. Defendants further assert that both individuals are named only in their official capacities, there are no direct allegations against them in the complaint, and Plaintiff has not demonstrated that they possess "unique, first-hand knowledge" of relevant facts that cannot be obtained through less burdensome means. *Id.* at 7-8.

Plaintiff opposes the motion, arguing that Defendants have not met their burden of showing good cause for a protective order under Fed. R. Civ. P. 26(c) or that the depositions would impose

an undue burden.  *See* Dkt. No. 66.  Plaintiff argues that Defendants cannot meet their burden with "empty argument," but instead must provide a "sworn statement from the individuals sought to be deposed and from a knowledgeable representative of the City clearly describing the alleged 'undue burden.'"  *Id.* at 10-11.

Plaintiff maintains that the depositions of former Commissioner Caban and Deputy Commissioner Gerber are essential to his *Monell* claims because these officials likely possess direct knowledge of the NYPD policies and practices relevant to his complaint, including the alleged policies that resulted in Plaintiff's arrest and the seizure and defacement of his firearm.  *Id.* at 10, 15.  Plaintiff disputes Defendants' reliance on the "exceptional circumstances" standard for deposing high-ranking officials, arguing that both former Commissioner Caban and Deputy Commissioner Gerber have "unique first-hand knowledge" directly relevant to Plaintiff's claims and that this information cannot be obtained through alternative, less intrusive methods.  *Id.* at 11. Plaintiff further argues that if other individuals with similar knowledge exist, Defendants should identify and produce them for deposition.  *Id.* at 13.

## II.    **Discussion**

### A.    **Defendants' Motion to Stay Discovery**

#### 1.    **Legal standard**

"'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.'"  *Salese v. JP Morgan Chase & Co.*, No. 23-CV-153 (GRB) (JMW), 2023 WL 5047890, at *1 (E.D.N.Y. Aug. 8, 2023) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).

"A motion to dismiss does not automatically stay discovery," and "discovery should not

be routinely stayed simply on the basis that a motion to dismiss has been filed." *Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 72 (S.D.N.Y. 2013); *see Thomas v. Amazon.com Servs., LLC*, No. 23-CV-1271 (JAM), 2024 WL 3706844, at *3 (E.D.N.Y. Apr. 15, 2024) ("The pendency of a dispositive motion is not, in itself, an automatic ground for a stay.") (citation omitted). Instead, Fed. R. Civ. P. 26(c)(1) allows a court "for good cause, [to] issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" *Gross v. Madison Square Garden Ent. Corp.*, No. 23-CV-3380 (LAK) (JLC), 2023 WL 6815052, at *1 (S.D.N.Y. Oct. 17, 2023) (citations omitted). To that end, if a party makes "a showing of good cause" the Court may, in its discretion, stay discovery under Fed. R. Civ. P. 26(c). *O'Sullivan v. Deutsche Bank AG*, No. 17-CV-8709 (LTS) (GWG), 2018 WL 1989585, at *3 (S.D.N.Y. Apr. 26, 2018). "This mandate of a showing of good cause is critically important" because of the Court's obligation "to secure the just, speedy, and inexpensive determination of every action and proceeding." *Jakob v. JPMorgan Chase Bank, N.A.*, No. 22-CV-03921 (HG), 2023 WL 2386395, at *1 (E.D.N.Y. Mar. 7, 2023) (citing, *inter alia*, Fed. R. Civ. P. 1).

In determining whether there is good cause to grant a stay of discovery, the court "must look to the particular circumstances and posture of each case." *Alford v. City of New York*, No. 11-CV-622 (ERK) (MDG), 2012 WL 947498, at *1 (E.D.N.Y. Mar. 20, 2012) (citation omitted). The relevant factors for the court to consider include: "(1) whether there has been a strong showing that the claim is unmeritorious; (2) the breadth of discovery and the burden of responding to it; and (3) the risk of unfair prejudice to the party opposing the stay[;] (4) the nature and complexity of the action; and (5) the posture of the litigation." *Jakob*, 2023 WL 2386395, at *1 (citation omitted); *see also Amron v. 3M Minnsota Mining & Manufacturing Company*, No. 23-CV-8959 (PKC) (JMW), 2024 WL 263010, at *2 (E.D.N.Y. Jan. 24, 2024) ("In evaluating whether a stay

8

of discovery pending resolution of a motion to dismiss is appropriate, courts typically consider: (1) whether the Defendants has made a strong showing that the plaintiff's claim is unmeritorious; (2) the breadth of discovery and the burden of responding to it; and (3) the risk of unfair prejudice to the party opposing the stay." (citation and quotation marks omitted)).

While various district courts debate which of the stay factors is the most important, "there can be little doubt that simplification of the issues and prejudice to the opposing party are more important than the case's state of completion." *OV Loop, Inc. v. Mastercard Inc.*, No. 23-CV-1773 (CS), 2023 WL 7905690, at *2 (S.D.N.Y. Nov. 16, 2023) (citation omitted). "These three factors are nonexclusive, and ultimately the overarching consideration of the circumstances in their totality governs." *Id.* (citations and quotation marks omitted). "The burden is on the movant to establish that a stay is warranted." *Nike, Inc. v. Lululemon USA Inc.*, No. 22-CV-00082 (RA) (OTW), 2023 WL 2214884, at *1 (S.D.N.Y. Feb. 24, 2023) (citation omitted).

## 2.    There is no good cause to stay all discovery

Having reviewed the parties' submissions regarding the motion to stay, the Court finds that Defendants have failed to demonstrate good cause to stay all discovery pending resolution of their partial motion to dismiss.

First, regarding the strength of Defendants' anticipated motion, the party "seeking a stay must present substantial arguments for dismissal." *O'Sullivan*, 2018 WL 1989585, at *4. In evaluating such a motion, the Court must consider the "particular circumstances and posture of each case." *Hachette Distribution, Inc. v. Hudson Cnty. News Co.*, 136 F.R.D. 356, 358 (E.D.N.Y. 1991). A stay of discovery is generally appropriate only when "there are no factual issues in need of further immediate exploration, and the issues before the Court are purely questions of law that are potentially dispositive," such as challenges to the Court's jurisdiction. *Id.* (collecting cases).

While the Court takes no position at this stage on the ultimate outcome of Defendants' motion, the arguments presented in their pre-motion letter are, at minimum, "colorable." *Renois v. WVMF Funding, LLC*, 2021 WL 1721818, at *1 (S.D.N.Y. Apr. 30, 2021) (granting a stay of discovery pending the resolution of Defendants' potentially dispositive motion). Defendants' arguments suggest that certain claims—namely, Plaintiff's equal protection, municipal liability, and conspiracy claims—may be subject to dismissal. *See* Dkt. No. 40; *see also Salese*, 2023 WL 5047890, at *2 ("It appears Defendant's arguments are at least not unfounded in the law.").

These arguments, however, do not justify a stay of *all* discovery because Defendants' motion will not dispose of *all* Plaintiffs' claims. *See CT Espresso LLC v. Lavazza Premium Coffees Corp.*, 2022 WL 1639485, at *2 (S.D.N.Y. May 24, 2022) ("[C]ourts tend to consider whether the resolution of the pending motion to dismiss may dispose of the entire action."). Notably, Defendants' motion does not seek dismissal of Plaintiff's Section 1983 claims for violations of the Second Amendment, false arrest, or false imprisonment. *See* Dkt. No. 40. Accordingly, even if Defendants' motion is granted in full, discovery will still be required on these remaining claims, which concern the core of Plaintiff's allegations. *See CT Espresso LLC*, 2022 WL 1639485, at *2 (denying motion to stay all discovery where defendants only moved for partial dismissal of the complaint); *Medina v. City of New York*, No. 19-CV-9412 (AJN), 2020 WL 3050971, at *2 (S.D.N.Y. June 8, 2020) (declining to stay discovery pending resolution of partial motion to dismiss where several claims relating to core of plaintiff's Section 1983 claims would require discovery); *Technograph, Inc. v. Texas Instruments Inc.*, 43 F.R.D. 416, 417 (S.D.N.Y. 1967) (denying motion to stay where defendant's motion, even if successful, would not terminate the action).

Second, the nature and scope of discovery do not support a stay. On this point, the Court

considers whether discovery would be significantly different if the motion to dismiss is resolved in Defendants' favor. *See CT Espresso LLC*, 2022 WL 1639485 at *2 ("it is useful to consider whether the nature of . . . discovery will be fundamentally different from the discovery that Plaintiff would take if a pending motion to dismiss is granted" (citation and internal quotation marks omitted)); *Cambridge Cap. LLC v. Ruby Has LLC*, 20-CV-11118 (LJL), 2021 WL 2413320, at *3 (S.D.N.Y. June 10, 2021) (denying motion to stay discovery while a motion to dismiss counterclaims was pending because "[t]he complaint and counterclaims arise out of the same set of operative facts").

Here, all of Plaintiff's claims arise from his alleged false arrest, subsequent seizure of his firearm, and defacement of that firearm. *See* Dkt. No. 48. Thus, resolution of the partial motion to dismiss will not meaningfully narrow the scope of discovery because Defendants will still be subject to discovery into the circumstances around these events. *Cf. Alapaha View Ltd. v. Prodigy Network, LLC*, No. 20-CV-7572 (VSB), 2021 WL 1893316, at *2 (S.D.N.Y. May 10, 2021) (granting stay where "the disposition of the dismissal motion may significantly narrow, if not eliminate, the issues remaining in this case." (citation omitted)).

Defendants' concerns about the burden of discovery are not persuasive. As the party seeking the stay, Defendants "bear[] the burden of showing specifically how responding to discovery would be prejudicial." *Thomas v. L. Offs. of Steven Cohen, LLC*, No. 23-CV-6453 (EAW) (MJP), 2024 WL 21547, at *4 (W.D.N.Y. Jan. 2, 2024). On this point, Defendants primarily take issue with the number of depositions and requests served near the fact discovery deadline. *See* Dkt. No. 59 at 3. But these concerns are better addressed through an extension of that deadline rather than a wholesale stay. *See Bennett v. Cuomo*, No. 22-CV-7846 (VSB), 2023 WL 2021560, at *4 (S.D.N.Y. Feb. 15, 2023) ("A stay is also less appropriate where the resolution

11

of pending motions to dismiss will not meaningfully change the scope or burden of discovery.");
*see also United States v. Veeraswamy*, No. 23-CV-9379 (JAM), -- F.R.D. --, 2024 WL 4762899, at *11 (E.D.N.Y. Nov. 13, 2024) (denying motion to stay but extending pertinent discovery deadlines).

Accordingly, the Court will extend the fact discovery deadline for Plaintiff's non-*Monell* claims until January 17, 2025, as detailed below.[2]

Finally, Plaintiff would suffer prejudice from a stay, as it would delay his ability to gather relevant evidence needed to prosecute his claims effectively. *See Veeraswamy*, 2024 WL 4762899, at *11 (finding that "[d]efendant would likely suffer prejudice were discovery to be stayed" because she "would be unable to make the necessary inquiries to obtain the relevant information she may need to effectively litigate the claims brought against her by the Government"); *Califano v. Roman Cath. Diocese of Rockville Ctr., New York*, No. 24-CV-04346 (AMD) (JMW), -- F.Supp.3d --, 2024 WL 4276170, at *10 (E.D.N.Y. Sept. 24, 2024) (denying motion to stay and finding that prejudice existed because "discovery is necessary to proceed with this case"). Plaintiff has also raised concerns about the impact of this litigation on his professional career and potential legal consequences stemming from the defacement of his firearm, which further counsels against delay. *See* Dkt. No. 60 at 1; *see also S.E.C. v. Jones*, 2005 WL 2837462, at *2 (S.D.N.Y. Oct. 28, 2005) (denying stay because "[defendant's] reputation and credibility have been called into question, and he deserves a timely opportunity to clear his name," and the

---

[2] Defendants also argue that several of Plaintiff's discovery requests seek discovery related to Plaintiff's *Monell* claims, leading to recurring disagreements between the parties. *See* Dkt. No. 59. The Court reiterates that *Monell* discovery is stayed. Counsel is therefore ordered not to seek discovery related to Plaintiff's *Monell* claims and is warned that failure to abide by this order could result in sanctions under Fed. R. Civ. P. 37(b). *See, e.g.*, *Internet L. Libr., Inc. v. Southridge Cap. Mgmt., LLC*, No. 01-CV-6600 (RLC), 2003 WL 21537782 (S.D.N.Y. July 8, 2003) (holding that discovery sanctions were warranted where plaintiff violated discovery stay).

"pendency of this litigation continues to cloud his future career and personal life").

For these reasons, Defendants' motion to stay discovery is denied; however, the deadline for fact discovery on Plaintiff's non-*Monell* claims is extended to January 17, 2025.

### B.    Defendants' Motion for a Protective Order

Defendants also move for a protective order, pursuant to Fed. R. Civ. P. 26(c)[3] to preclude the depositions of former Commissioner Caban and current Deputy Commissioner Gerber on the grounds that they are high-ranking officials and their depositions would pose an undue burden on Defendants.

### 1.    Legal Standard

"[T]o depose a high-ranking government official, a party must demonstrate exceptional circumstances justifying the deposition—for example, that the official has unique first-hand knowledge related to the litigated claims or that the necessary information cannot be obtained through other, less burdensome or intrusive means." *Lederman v. New York City Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013) (affirming denial of the plaintiffs' request to depose the Mayor and a former Deputy Mayor). These "exceptional circumstances" are necessary both because it is "not the function of [a] court to probe the mental processes" of agency decision-makers, *United States v. Morgan*, 313 U.S. 409, 422 (1941), and because allowing such depositions would interfere with the functioning of the Executive Branch, *see Lederman*, 731 F.3d at 202-03 (affirming denial of plaintiffs' request to depose the Mayor of the City of New York and a former Deputy Mayor).

---

[3] Under Fed. R. Civ. P. 26(c), a "party . . . may move for a protective order . . . to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . forbidding the disclosure or discovery." Fed. R. Civ. P. 26(c)(1).

"*Lederman* stands for the proposition that "high-ranking government officials" should not be "subject to depositions[,]" as these officials "have greater duties and time constraints than other witnesses," and, "[i]f courts did not limit these depositions, such officials would spend an inordinate amount of time tending to pending litigation." *Haskell v. Cnty. of Nassau*, No. 22-CV-1713 (OEM) (JMW), 2024 WL 623727, at *4 (E.D.N.Y. Feb. 14, 2024) (quoting *Marisol A. by Forbes v. Giuliani*, No. 95-CV-10533 (RJW), 1998 WL 132810, at *2 (S.D.N.Y. Mar. 23, 1998)); *cf. Markowitz v. Precipart Corp.*, No. 20-CV-5033 (GRB) (JMW), 2022 WL 1508638 (E.D.N.Y. Apr. 15, 2022) (explaining how courts give special scrutiny to requests to depose high-ranking corporate executives). Indeed, *Lederman*'s rule is part of a longstanding rule stemming from *Morgan*, in which "the Supreme Court long ago expressed concern that the District Court had required a high-ranking government official [ ] to submit to a deposition." *Lederman*, 731 F.3d at 203 (noting that "courts have relied on *Morgan* to hold that a high-ranking government official should not—absent exceptional circumstances—be deposed or called to testify regarding the reasons for taking official action, 'including the manner and extent of his study of the record and his consultation with subordinates.'" (citations omitted)).

The rule set forth in *Lederman*, however, is not absolute. "Depositions of high-ranking officials may be permitted where the official has first-hand knowledge related to the claim being litigated." *Presti v. City of New York*, 609 F. Supp. 3d 204, 207 (E.D.N.Y. 2022) (citing *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007)); *see, e.g.*, *United States v. City of New York*, No. 07-CV-2067 (NGG) (RLM), 2009 WL 2423307, at *3 (E.D.N.Y. Aug. 5, 2009) ("The Mayor's sworn testimony before Congress indicates his personal involvement in the events at issue in this litigation and raises the question of the basis for the Mayor's belief that the challenged examinations were job related.").

The *Lederman* doctrine applies to both former and current high-ranking officials.  *See Lederman*, 731 F.3d at 203 (applying test to former deputy mayor); *see, e.g.*, *Chin v. New York City Dep't of Correction*, No. 23-CV-5268 (AMD) (JAM), -- F. Supp. 3d --, 2024 WL 3517440, at *4 (E.D.N.Y. July 24, 2024) (applying test to former commissioner of department of corrections and former chief of department); *see also In re New York City Policing During Summer 2020 Demonstrations*, 677 F. Supp. 3d 206, 208 (S.D.N.Y. 2023) (explaining how "[s]ubjecting former officials decision-making processes to judicial scrutiny and the possibility of continued participation in lawsuits years after leaving public office would serve as a significant deterrent to qualified candidates for public service" (citation omitted)).

Additionally, while the party seeking the protective order bears the burden of establishing good cause under Fed. R. Civ. P. 26(c), the party seeking the deposition of a high-ranking official must rebut this showing with evidence of exceptional circumstances warranting the deposition. *See Morales v. City of New York*, No. 18-CV-1573 (JGK) (DF), 2019 WL 6213059, at *6 (S.D.N.Y. Nov. 21, 2019) ("The party seeking to take the depositions in question bears the burden of demonstrating exceptional circumstances."); *see also In re United States (Reno & Holder)*, 197 F.3d 310, 314 (8th Cir. 1999) (quashing subpoena issued to the Attorney General, finding that defendant failed to "show[ ] that there are no other sources for the information he seeks")*; Deluca v. Bank of Tokyo-Mitsubishi UFJ*, No. 05-CV-639 (GEL) (KNF), 2007 WL 2589534, at *4 (S.D.N.Y. Aug. 30, 2007) (finding that defendant established good cause for protective order precluding deposition of CEO and that plaintiff failed to rebut this showing with evidence that CEO had personal or unique knowledge of the case).

2.      **Plaintiff has failed to establish the requisite exceptional circumstances to warrant depositions of former Commissioner Caban or Deputy Commissioner Gerber**

Plaintiff has failed to demonstrate the "exceptional circumstances" necessary to justify the depositions of former Commissioner Caban or Deputy Commissioner Gerber, and indeed, none exist. *See Presti*, 609 F. Supp. 3d at 207 ("the attempt to depose [a former mayor] fails at the first stage—that is, Plaintiffs cannot establish first-hand knowledge, let alone 'unique' knowledge").

As a preliminary matter, Plaintiff has not shown that former Commissioner Caban and Deputy Commissioner Gerber possess first-hand—let alone, unique—knowledge of the events underlying his claims. Plaintiff's assertions that former Commissioner Caban and Deputy Commissioner Gerber "should have" personal knowledge based on their roles are speculative and unsupported by evidence. *See* Dkt. No. 66 at 6-7; *see, e.g., Presti*, 609 F. Supp. 3d at 209 ("the suggestion of de Blasio's personal knowledge is pure conjecture. And because Plaintiffs bear the burden and must show first-hand knowledge, it is their obligation to put forward such proof before the Court can order the deposition."); *Ebbert v. Nassau Cnty.*, No. 05-CV-5445 (AKT), 2007 WL 674725, at *6 (E.D.N.Y. Mar. 5, 2007) ("No evidence has been presented thus far to demonstrate that [the commissioner] had any direct involvement in the actual preparation or administration of the examinations nor any communications with any representatives of Nassau County about the pay scales at issue.").

Indeed, Plaintiff's complaint contains no allegations tying either former Commissioner Caban or Deputy Commissioner Gerber to his alleged false arrest or the seizure and defacement of his firearm. *See* Dkt. No. 48. Nor has Plaintiff, despite extensive discovery, identified any evidence of their personal involvement. While Plaintiff argues that "[i]t is not up to [him] to

16

know about the intricacies of New York City politics and the internal workings of the [NYPD]" (Dkt. No. 66 at 15), discovery has been ongoing since July, and Plaintiff could have sought information regarding whether former Commissioner Caban or Deputy Commissioner Gerber were personally involved with, or gave any orders in connection with, Plaintiff's arrest or the seizure of his firearm.

Despite this opportunity, Plaintiff has not presented any evidence of former Commissioner Caban or Deputy Commissioner Gerber's personal involvement in this case and therefore has failed to meet the "exceptional circumstances" standard. *See Chin*, 2024 WL 3517440, at *5 (denying motion to compel depositions of high-ranking officials where plaintiff failed to establish that either official has unique personal information essential to the case); *Presti*, 609 F. Supp. 3d at 208 (precluding deposition of former mayor where plaintiffs failed to demonstrate that former mayor had first-hand knowledge related to manager's claims against city for false arrest and excessive force); *Raba v. Suozzi*, No. 06-CV-1109 (DRH) (AKT), 2007 WL 9709827, at *6 (E.D.N.Y. Jan. 25, 2007) (granting protective order where plaintiffs failed to establish that county comptroller had "knowledge regarding the decision to terminate the supplements at issue [that] is unique and personal"); *Universal Calvary Church v. City of New York*, No. 96-CV-4606, 1999 WL 350852, at *4 (S.D.N.Y. June 2, 1999) ("Plaintiffs had full opportunity to determine from Deputy Commissioner Maple whether Mayor Giuliani gave any orders or what order, if any, the police officers on the scene received following his call. They also took extensive depositions from other command officers on the scene and had the opportunity to go into the question of whether the Mayor gave orders or supervised the officers during the incident. Despite this opportunity, they have not presented any evidence that the Mayor gave orders or supervised police officers during the incident.").

Plaintiff has also failed to demonstrate that relevant information sought by former Commissioner Caban and Deputy Commissioner Gerber's depositions could not be obtained through less intrusive means, such as depositions of other NYPD officers. *See Lederman*, 731 F.3d at 203 (depositions of high-ranking officials was not justified where plaintiffs failed to show "that the relevant information could not be obtained elsewhere"); *Presti*, 609 F. Supp. 3d at 209 (precluding deposition of former mayor where plaintiffs failed to establish that necessary information for his false arrest and excessive force claims against city could not be obtained through less burdensome or intrusive means); *Solomon v. Nassau Cty.*, 274 F.R.D. 455, 461 (E.D.N.Y. 2011) (Spatt, J.) ("In weighing the undue burden against the necessity of the testimony, the Court may also consider under Rule 26(b)(2)(C)(i) if the discovery can be 'obtained from some other source that is more convenient' or 'less burdensome.'"); *cf. C.K. through P.K. v. McDonald*, 345 F.R.D. 262, 269 (E.D.N.Y. 2023), *aff'd*, 2024 WL 127967 (E.D.N.Y. Jan. 11, 2024) ("Unlike the plaintiffs in *Lederman*, Plaintiffs have shown the Commissioners have or should have first-hand knowledge of Plaintiffs' claims, which was not— and cannot be—obtained from other individuals."). While Defendants attempt to shift the blame on Defendants for purportedly failing to identify other witnesses with personal knowledge, Defendants have offered to produce officers with direct involvement in the events at issue, including the arresting officer, Defendant Bessen, but Plaintiff has declined to depose him. *See* Dkt. No. 62-2 at 9; *see also Low v. Whitman*, 207 F.R.D. 9 (D.D.C. 2002) (issuing a protective order where the information sought from the EPA's Deputy Chief of Staff was readily available from other witnesses).

Additionally, Plaintiff fails to adequately address the well-established case law that current and former high-level government officials should not ordinarily be compelled to testify

concerning their official actions.  *See Morgan*, 313 U.S. at 422; *Lederman*, 731 F.3d at 204; *Franklin Sav. Ass'n v. Ryan*, 922 F.2d 209, 211 (4th Cir. 1991); *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985).  As the Supreme Court recognized in *Morgan*, parties litigating against government agencies are precluded from examining the processes by which high-ranking agency officials exercise discretion and make decisions.  *See Morgan*, 313 U.S. at 422. The Court emphasized that the administrative decision-making and judicial processes are "collaborative instrumentalities of justice and the appropriate independence of each should be respected by the other." *Id.*  Insulating the deliberative process of high-level public officials from judicial scrutiny thus helps preserve constitutional separation of powers. *See Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 268 n.18 (1977) (noting that "judicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government").

Conversely, compelling the testimony of high-ranking agency officials "would have serious repercussions for the relationship between two coequal branches of government."  *In re United States (Jackson)*, 624 F.3d 1368, 1373-74 (11th Cir. 2010) (observing that "compelling the [Food and Drug Administration] Commissioner's testimony by telephone for 30 minutes disrespected the separation of powers").  In light of the strong policies against requiring such testimony, the deposition of high-ranking government officials is permitted only in "exceptional circumstances." *Lederman*, 731 F.3d at 203; *see also Arlington Heights*, 429 U.S. at 268 (administrative decisionmakers may be compelled to testify "concerning the purpose of official action" only in "extraordinary instances").

Plaintiff appears to argue that because he brings a *Monell* claim, he should be permitted to depose former Commissioner Caban or Deputy Commissioner Gerber.[4]  But merely asserting a *Monell* claim does not, in and of itself, justify the deposition of high-ranking municipal officials under *Lederman* and its progeny.  *See Presti*, 609 F. Supp. 3d at 208 ("Plaintiffs then argue that the former Mayor created the policy that is the basis of their *Monell* claim.  This argument does not provide an entitlement to a deposition of de Blasio.").  And allowing depositions of high-ranking Government officials as a matter of course when their agencies are sued over one of their policies would create "a tremendous potential for abuse or harassment," *K.C.R. v. Cty. of Los Angeles,* No. 13-CV-3806, 2014 WL 3434257, *3 (C.D. Cal. July 11, 2014) (quotation omitted), and "would . . . likely discourage people" from accepting Government positions, *F.D.I.C. v. Galan-Alvarez*, No. 15-MC-00752 (CRC), 2015 WL 5602342, at *4 (D.D.C. Sept. 4, 2015).  Such an outcome would threaten the functioning of the NYPD and fly in the face of the Second Circuit's warning that without strict limits on plaintiffs' ability to depose high-ranking officials, those officials will soon find themselves "spend[ing] 'an inordinate amount of time tending to pending litigation'" in the relevant case and others.  *See Lederman*, 731 F.3d at 203 (quoting *Bogan*, 489 F.3d at 423).

Finally, the fact that former Commissioner Caban is no longer serving as the Police Commissioner does not entitle Plaintiff to circumvent the *Lederman* doctrine.  As noted above,

---

[4] Plaintiff also asserts that "By denying Plaintiff the right to *Monell* discovery in the face of a motion to dismiss his *Monell* claims provides an unfair advantage to the Defendants [*sic*].  *Unless that is the actual intent of this Court*, the stay should be vacated *sua sponte* at least to the extent of permitting the depositions of Defendant Edward A. Caban and Defendant Michael Gerber to go forward in that order."  Dkt. No. 66 at 12-13 (emphasis added).  Of course, contrary to Plaintiff's baseless assertion, the Court's "actual intent" here is to simply apply the law to the facts.  Plaintiff's counsel shall avoid *ad hominem* attacks against the Court in the future.  Failure to do so may result in sanctions.  *See Koehl v. Greene*, 424 F. App'x 61, 62 (2d Cir. 2011) (summary order) ("Courts can adjudicate disputes only when the parties present reasoned arguments rather than invective-laden diatribes.").

the case law in this Circuit clearly establishes that the *Lederman* doctrine applies to both former and current high-ranking officials. *See, e.g., Lederman*, 731 F.3d at 203 (applying test to former deputy mayor); *Chin*, 2024 WL 3517440, at *4; *In re New York City Policing During Summer 2020 Demonstrations*, 677 F. Supp. 3d at 208. "Subjecting former officials' decision-making processes to judicial scrutiny and the possibility of continued participation in lawsuits years after leaving public office would serve as a deterrent to qualified candidates for public service." *United States v. Wal-Mart Stores*, No. 01-CV-152, 2002 WL 562301, at *3 (D. Md. Mar. 29, 2002); *Dobson v. Vail*, No. 10–CV- 5233 (KLS), 2011 WL 4404146, at *1 (W.D. Wash. Sept. 21, 2011) ("Former high-ranking government administrators, whose past official conduct may potentially implicate them in a significant number of related legal actions, have a legitimate interest in avoiding unnecessary entanglements in civil litigation." (quoting *Arnold Agency v. West Virginia Lottery Com'n*, 206 W.Va. 583, 599, 526 S.E.2d 814 (W. Va. 1999)).

"If the immunity *Morgan* affords is to have any meaning, the protections must continue upon the official's departure from public service." *Wal-Mart Stores*, 2002 WL 562301, at *3; *see also United States v. Sensient Colors, Inc.*, 649 F. Supp. 2d 309, 318 (D.N.J. 2009) ("Having found that *Morgan* applies to former high-ranking officials, there can be no doubt that *Morgan* applies to . . . the former Administrator of the EPA."); *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1049-50 (E.D. Cal. 2010) (General rule prohibiting depositions of high-ranking government officials applies to former high-ranking officials). "The integrity of administrative proceedings and the underlying decision making process of agency officials are just as important where the official to be questioned no longer serves in the same position," and "indiscriminate depositions" of such officials "would . . . likely discourage people" from accepting those positions,

"irrespective of whether those deposed were current or former officials." *F.D.I.C.*, 2015 WL 5602342, at *4.

Accordingly, Plaintiff has failed to show exceptional circumstances to warrant the depositions of former Commissioner Caban and Deputy Commissioner Gerber. Defendants' motion for a protective order is therefore granted.

## III.    Conclusion

Accordingly, for the foregoing reasons, Defendants' motion to stay discovery (Dkt. Nos. 59, 67) is **DENIED**; however, the Court will extend the fact discovery deadline for Plaintiff's non-*Monell* claims until January 17, 2025. In addition, Defendants' motion for a protective order to preclude the depositions of former NYPD Commissioner Edward Caban and current Deputy Commissioner Michael Gerber (Dkt. No. 62) is **GRANTED**.

Dated: Brooklyn, New York
        November 18, 2024

**SO ORDERED**.

*s/ Joseph A. Marutollo*
JOSEPH A. MARUTOLLO
United States Magistrate Judge