**EDELSTEIN & GROSSMAN**
Attorneys at Law
501 Fifth Avenue, Suite 514
New York, NY 10017
Tel: (212) 871-0571
Fax: (212) 922-2906
jonathan.edelstein.2@gmail.com
———

July 18, 2025

**VIA ELECTRONIC CASE FILING**
Hon. Joseph A. Martuollo, U.S.M.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

        Re:    Raffique Khan v. City of New York et. al.
                Docket No. 1:24-CV-02168-ARR-JAM

Your Honor:

      The undersigned, co-counsel for plaintiff Raffique Khan, respectfully submits this letter in response to the Court's order of July 16, 2025, which requests (a) details of the plaintiff's proposed Monell claim; (b) what other claims, if any, plaintiff would include in a proposed Third Amended Complaint; and (c) the plaintiff's response to the defendants' assertions regarding outstanding discovery.

      Beginning with part (a) of this Court's order: as this Court is aware, plaintiff Khan, a decorated combat veteran and law enforcement officer, alleges that he was falsely arrested and incarcerated for criminal possession of a weapon based on a handgun for which he had a valid, unrestricted concealed carry permit. During discovery, several things were learned which reveal that the defendants failed to train and/or failed to implement policies to ensure that the Second Amendment rights of carry permit holders were respected.

      As background, Khan's arrest took place on November 26, 2023, and the ostensible basis for the arrest was that, according to the arresting officer, he had a "business carry" permit and was not in his place of business. However, as shown by the annexed emergency rule promulgated by the NYPD on August 23, 2022, *the "business carry" or "business license" category of handgun permit had been abolished more than a year prior to Khan's arrest*, and was replaced by an unrestricted "carry license" that "permits the carrying of a handgun concealed on the person." (Emergency Rule, annexed hereto, at 3, paragraph b). The category of "Limited Carry Business

1

License" was also abolished in the August 2022 rule. (Id., paragraph c). After August 23, 2022, the only type of restricted licenses remaining were "premises license" and "carry guard license/gun custodian license" (id., paragraphs a, d), which Khan's permit, which stated "Concealed Carry" on its face, obviously was not.

Officer Joseph Astarita, who was deposed in this action, confirmed that the change in license names, categories and rules occurred in 2022. (Astarita Dep. at 26). He also confirmed that Khan's license was not restricted as to place and entitled him to carry no matter where he was. (Id. at 66). However, the City *did not immediately change the license database which was used by officers in the field.* (Id. at 27-28). "The computers caught up" only some time before July 2024. (Id. at 36). Officer Astarita did not know when or how the name change was relayed to patrol officers or detectives in the field, that patrol officers don't have access to the same database that the firearms license division so the information available to patrol officers might not have been accurate. (Id. at 42). He was also unaware of any directives to police officers warning them that the database they used might not be accurate and/or warning them not to arrest permit holders based on information obtained from that database. (Id. at 45).

Indeed, Officer Astarita testified that even *before* the rule change, a business license allowed unrestricted public carry, because "the business goes to the need, not [a] restriction" in carry location. (Id. at 66).

The arresting officer, Officer Matthew Bessen, was also deposed in this case, and confirmed that the reason for the arrest was that the database he used indicated that Khan had a "business carry" license, following which a sergeant at NYPD Legal told him to charge Khan with a permit violation. (Bessen Dep. at 68-69).

Another officer who took part in the arrest, Officer Noah Nicholson, testified that he was never informed of the August 23, 2022 changes to the firearm licensing rules. (Nicholson Dep. at 28). Lieutenant Hughes, who was the ranking officer at the scene (Hughes Dep. at 18), likewise testified that he was never made aware of the changes to the licensing rules (id. at 16), had no detailed knowledge of different types of permits (id. at 17), and did not recall receiving any training from the NYPD regarding the scope of gun licenses (id. at 64). He stated further that the face of Khan's license had "conflicting information" from what came back in the database, and that he was confused between "the license produced" and the "observation on [his] phone of what's called a Business Carry license." (Id. at 62-63).

Therefore, it is clear that, although the City changed its firearm licensing rules and categories in August 2022 as a result of Supreme Court decisions recognizing a personal constitutional right to bear arms, it never trained police officers on those changes and never even updated its database to reflect the changed categories and the rights associated therewith. This made it virtually inevitable that unrestricted carry permit holders like plaintiff Khan would be falsely arrested because (a) their licenses would continue to come up as "business carry" in the database accessible to field officers and NYPD Legal; and (b) the officers were never told that the former "business license" had been replaced by an unrestricted "carry license."

2

In light of the above, plaintiff thus intends to seek leave to amend his Monell claim to include allegations regarding (i) failure to train NYPD officers concerning Second Amendment rights; (ii) failure to train NYPD officers regarding the August 2022 rule changes and the significance thereof; (iii) failure to train NYPD officers that the term "business license" or "business carry" was no longer an existing category of license and that it had been replaced by unrestricted carry licenses; (iv) failure to train NYPD officers that even before August 2022, the term "business" in a business license went solely to the need and was not a restriction on the places where the permit holder could carry; (v) failure to inform NYPD officers that the database they used did not contain accurate and up-to-date information regarding gun permits and that the only accurate database was that used by the firearm licensing bureau; and (vi) failure to implement policies, including but not limited to updating the database used by officers in the field, in order to protect the Second Amendment rights of lawful carry permit holders such as Khan.

A Monell claim for failure to train "has three elements: (1) a policymaker knows to a moral certainty that her employees will confront a given situation; (2) the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation; and (3) the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." Wos v. County of Suffolk, 2025 WL 1425725, * 15 (E.D.N.Y. 2025). In this case, given the number of gun arrests that occur annually in New York City, it is obvious that NYPD policymakers knew to a moral certainty – indeed, to a metaphysical certainty – that NYPD officers would conduct traffic stops of people who had guns, and would need to determine whether those people were licensed to possess and carry those guns. Moreover, where a police database provides conflicting information from the face of a permit, and where the officers are not trained on how to resolve this conflict, the officers are faced, as Lieutenant Hughes himself admitted, with a difficult choice. Third, training concerning the August 2022 rule change, training concerning what a business carry license actually meant even pre-August 2022, and/or a warning that the database would "make less difficult" – indeed, eliminate all difficulty form – the situation. Finally, it is indisputable that under the Supreme Court's Heller, McDonald and Bruen decisions, the Second Amendment provides lawful and licensed gun owners with a personal constitutional right to bear arms both at home and in public, meaning that a wrongful arrest due to ignorance of the August 2022 rule changes would result in constitutional injury under the Second Amendment as well as unconstitutional seizure under the Fourth Amendment.

A Monell claim may also be based on a municipality's failure to implement policies "where the need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need." Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007). In this case, plaintiff submits that when the NYPD changed its firearm licensing rules in 2022, the need to update the database used by officers in the field was "so obvious" and the existence of an inaccurate database "so likely to result in a deprivation of federal rights" – namely false arrest – that the failure to update the database during the three full months between August 22, 2023 and November 26, 2023 amounted to deliberate indifference to such rights.

Plaintiff thus submits that his proposed failure-to-train claim would not be futile, would amply clear the Twombly/Iqbal threshold of plausibility, and is validly based on information that was obtained during discovery and not known by him prior to taking such discovery. Accordingly, plaintiff intends to seek leave to amend the Monell claim as detailed herein.

Turning now to part (b) of this Court's order, the causes of action in a proposed Third Amended Complaint would include (i) violation of equal protection; (ii) denial of Second Amendment rights; (iii) the Monell claim, including both the allegations currently made in the Second Amended Complaint and the proposed new allegations; and (iv) false arrest and false imprisonment. The proposed Third Amended Complaint would not include those claims which the plaintiff has consented to dismiss in his opposition to the pending motion.

Finally, as to part (c) of this Court's order, plaintiff represents that contact information for the two persons present at the time of his arrest were provided to defendants yesterday, and that he will respond to the remainder of the defendants' December 23, 2024 demands within one week.

Thank you for your consideration in this matter.

Sincerely,

/s/ Jonathan I. Edelstein

Jonathan I. Edelstein

Cc: All Counsel (Via ECF)