UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RAFFIQUE N. KHAN,

|  | Plaintiff, | 24 CV 2168 (BMC)(JAM) |

-against-

CITY OF NEW YORK, NYPD OFFICER MATTHEW S. BESSEN, NYPD OFFICER NOAH NICHOLSON, NYPD SGT. PATRICK HUGHES, NYPD OFFICER JOSEPH JACOBSEN, NYPD OFFICER THOMAS COSTIGAN, NYPD OFFICER JEISON JARA, NYPD OFFICER MOHAMED ELDIASTY, and NYPD OFFICER JOSEPH ASTARIA,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**MURIEL GOODE-TRUFANT**
CORPORATION COUNSEL OF THE CITY OF NEW YORK
*Attorney for City Defendants*
100 Church Street
New York, New York 10007

By:    Thomas Lai
       *Senior Counsel*
       Special Federal Litigation Division
       (212) 356-2336

## TABLE OF CONTENTS

**TABLE OF CONTENTS** ................................................................................ ii-iii

**TABLE OF AUTHORITIES** ........................................................................ iv-vi

**PRELIMINARY STATEMENT** ....................................................................... 1

**STATEMENT OF FACTS** .............................................................................. 2

**STANDARD OF REVIEW** ............................................................................. 6

**ARGUMENT IN SUPPORT OF SUMMARY JUDGMENT MOTION** ............................... 6

POINT I      THE UNDISPUTED FACTS DEMONSTRATE THAT THERE WAS PROBABLE CAUSE FOR PLAINTIFF'S ARREST ............................. 7

     A. Probable Cause Existed to Arrest Plaintiff for Failure to Safely Store a Firearm ................................................................ 8

     B. Probable Cause Existed to Arrest Plaintiff for Attempted Criminal Possession of a Firearm in a Sensitive Location ................................. 9

POINT II      PLAINTIFF'S CLAIM PURSUANT TO 42 U.S.C. § 1981 FAILS AS A MATTER OF LAW ................................................................. 10

POINT III      PLAINTIFF HAS NOT ESTABLISHED A SECOND AMENDMENT VIOLATION AS A MATTER OF LAW ...................................... 12

     A. NYPD Properly Seized and Vouchered Plaintiff's Firearms Following His Arrest ...................................................... 13

     B. The License Division Did Not Refuse to Return Plaintiff's Firearm .. 15

     C. The Engraving of Plaintiff's Firearm Does Not Violate the Second Amendment ............................................................. 16

POINT IV      PLAINTIFF FAILS TO ESTABLISH A CLAIM AGAINST DEFENDANT JOSEPH ASTARITA, JEISON JARA, AND MOHAMED ELDIASTY .. 18

     A. Defendant Joseph Astarita ................................................ 19

     B. Defendants Jeison Jara and Mohamed Eldiasty ............................ 20

POINT V      CITY DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ................................................................................ 21

     A. Defendants Nicholson, Hughes, Jacobsen, Costigan, Jara, and Eldiasty are entitled to qualified immunity .................................. 22

B.  Defendant Astarita is entitled to Qualified Immunity.........................23

POINT VI        PLAINTIFF'S MONELL CLAIM FAILS AS A MATTER OF LAW ......23

**CONCLUSION** ........................................................................................................

## TABLE OF AUTHORITIES

**Cases**

*Ackerson v. City of White Plains*, 702 F.3d 15 (2d Cir. 2012) ......................................................7

*Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113 (2d Cir. 2004) ...........................................24

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, (1986) ..............................................................6

*Ashcroft v. al-Kidd*, 563 U.S. 731  (2011)................................................................................21

*Askins v. Doe No. 1*, 727 F.3d 248  (2d Cir. 2013) ....................................................................23

*Bernard v. United States*, 25 F.3d 98 (2d Cir. 1994) ...................................................................7

*Bradway v. Gonzales*, 26 F.3d 313 (2d Cir. 1994) ....................................................................21

*Brewer v. Vanmarter*, 2024 U.S. Dist. LEXIS 860148 (W.D.V.A. May 13, 2024) .....................23

*Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411 (S.D.N.Y. 2002) ...................................25

*Brown v. Eli Lilly & Co.*, 654 F.3d 347 (2d Cir. 2011).................................................................6

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) ...........................................................................6

*Collins v. City Univ. of New York*, 21-civ-9544, 2023 U.S. Dist. LEXIS 21587 (S.D.N.Y. Feb. 8, 2023)................................................................................................................................19

*Coollick v. Hughes*, 699 F.3d 211 (2d Cir. 2012)........................................................................6

*District of Columbia v. Heller*, 554 U.S. 570 (2008)..................................................................18

*District of Columbia v. Wesby*, 199 L.Ed.2d 453 (U.S. 2018) ....................................................21

*Dunkelberger v. Dunkelberger*, 14-CV-3877, 2015 U.S. Dist. LEXIS 133814, (S.D.N.Y. Sept. 30, 2015)...........................................................................................................................18

*Gatling v. West*, 850 F. App'x 91 (2d Cir. 2021) .......................................................................11

*Giaccio v. City of New York*, 308 F. App'x 470 (2d Cir. 2009)....................................................24

*Harding v. Gould*, No. 22-CV-6285, 2024 U.S. Dist. LEXIS 141944 (S.D.N.Y. Aug. 9, 2024) .13

iv

*Hayes v. Perotta*, 751 F. Supp. 2d 597 (S.D.N.Y. 2010) ..........................................................28

*Hunter v. Bryant*, 502 U.S. 224 (1991) ...................................................................................21

*Illinois v. Gates*, 462 U.S. 213 (1983)......................................................................................8

*Jenkins v. City of New York*, 478 F.3d 76 (2d Cir. 2007)..........................................................7

*Jones v. Town of East Haven*, 691 F. 3d 72 (2d Cir. 2012).....................................................25

*Leneau v. Ponte,* 1:16-cv-776, 2018 U.S. Dist. LEXIS 112272, (S.D.N.Y. Jan. 24, 2018) .........18

*Malley v. Briggs*, 475 U.S. 335, (1986)...................................................................................21

*Maxwell v. City of New York*, 272 F. Supp. 2d 285 (S.D.N.Y. 2003)...........................................8

*N.Y. State Rifle & Pistol Ass'n v. Brue*n, 142 S. Ct. 2111 (2022) ...................................................3

*N.Y. State Rifle & Pistol Assoc. v. Bruen*, 579 U.S. 1 (2022........................................................18

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022).......................................23

*Pearson v. Callahan*, 555 U.S. 223 (2009) ................................................................................21

*Reichle v. Howards*, 566 U. S. 658 (2012)................................................................................21

*Savino v. City of New York*, 331 F.3d 63 (2d Cir. 2003)..............................................................7

*Shaul v. Cherry Valley-Springfield Cent. Sch. Dist.*, 363 F.3d 177 (2d Cir. 2004)......................15

*Silva v. Farrish*, 47 F.4th 78 (2d Cir. 2022) ............................................................................11

*Singer v. Fulton County Sheriff*, 63 F.3d 110 (2d Cir. 1995) ........................................................7

*Smalls v. Collins*, 10 F.4th 117 (2d Cir. 2021) .........................................................................11

*Spears v. City of N.Y.*, No. 10-CV-03461, 2012 U.S. Dist. LEXIS 145517 (E.D.N.Y. Oct. 9, 2012).........................................................................................................................................20

*States v. Gagnon*, 373 F.3d 230, (2d Cir. 2004) .........................................................................8

*Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) 19

*Thomas v. Genova*, 698 F. Supp. 3d 493, 521 (E.D.N.Y. 2023.................................................11

*Vippolis v. Vill. of Haverstraw*, 768 F.2d 40 (2d Cir. 1985) ........................................................24

*Walczyk v. Rio*, 496 F.3d 139 (2d Cir. 2007)...............................................................................22

*Weyant v. Oskt*, 101 F.3d 845 (2d Cir. 1996) ..............................................................................7

*Windsor v. United States*, 699 F.3d 169, 192 (2d Cir. 2012), aff'd by 133 S. Ct. 2675 (2013)......6

**Statutes**

38 RCNY §§ 5-10 and 5-11.........................................................................................................16

Fed. R. Civ. P. 56(a)...................................................................................................................6

N.Y. Penal Law § 265.01 ...........................................................................................................22

N.Y. Penal Law § 265.01-e ........................................................................................................10

N.Y. Penal Law § 265.01-e, .......................................................................................................9

N.Y. Penal Law § 265.45(2)....................................................................................................9, 22

N.Y. Penal Law § 400.00 ...........................................................................................................8

U.S. Const. Amd. II.  Title 38 Rules of the City of New York § 5-30 ........................................12

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RAFFIQUE N. KHAN,

Plaintiff,

24 CV 2168 (BMC)(JAM)

-against-

CITY OF NEW YORK, NYPD OFFICER
MATTHEW S. BESSEN, NYPD OFFICER NOAH
NICHOLSON, NYPD SGT. PATRICK HUGHES,
NYPD OFFICER JOSEPH JACOBSEN, NYPD
OFFICER THOMAS COSTIGAN, NYPD OFFICER
JEISON JARA, NYPD OFFICER MOHAMED
ELDIASTY, and NYPD OFFICER JOSEPH
ASTARIA,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants City of New York, Matthew S. Bessen, Noah Nicholson, Patrick Hughes, Joseph Jacobsen, Thomas Costigan, Jeison Jara, Mohamed Eldiasty, and Joseph Astarita[1] ("City Defendants"), by their attorney, Muriel Goode-Trufant, Corporation Counsel of the City of New York, respectfully submit this Memorandum of Law in support of their motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

**PRELIMINARY STATEMENT**

City Defendants' investigation, which included information received from a confidential informant, established probable cause to arrest Plaintiff on November 26, 2023. Even Plaintiff's own testimony, which is supported by the observations of the individual City Defendants, supports that there was probable cause to arrest him. Whether there was probable cause to arrest Plaintiff

---

[1] Being sued herein as "Joseph Astaria."

1

for the offense invoked at the time of arrest is irrelevant because there was probable cause to arrest Plaintiff for other offenses. Furthermore, it is apparent from the record that Plaintiff was not discriminated against based on his race and his Second Amendment rights were not violated. Lastly, the individual City Defendants are entitled to qualified immunity. For these reasons, City Defendants' motion for summary judgment should be granted.

## STATEMENT OF FACTS

On November 26, 2023, Plaintiff attempted to enter a private establishment which served alcohol with a  firearm on his person. *See* Deposition Transcript of Plaintiff ("Plaintiff Dep.), Lai Decl., Exhibit S at pgs. 65-68, 71-14; City Defendants' Local Civil Rule 56.1 Statement of Facts (Rule 56.1 Statement") at ¶29, 30, 31. That same day, the New York City Police Department ("NYPD") Field Intelligence Division ("FIT") in the 67th Precinct received information from a Confidential Informant that a male Indian, whose approximate height was 5 feet 10 inches, and wearing black pants, black shoes, a black and white shirt with a gold chain, and had a pony tail, attempted to enter an event that served alcohol with a firearm and then placed the firearm inside the glove box of a blue BMW. New York City Police Department ("NYPD") Omniform Systems Arrest Report Arrest ID: K23660528 ("Arrest Report"), Declaration of Thomas Lai ("Lai. Decl."), Exhibit E; NYPD Omniform Systems Complaint Report, Complaint # 2023-073-012094 ("Complaint Report"), Lai Decl., Exhibit F; Rule 56.1 Statement at ¶1-4. Plaintiff's height is approximately five feet and eleven inches and that day he was wearing black pants, black shoes, a black and white shirt with a gold chain, had a ponytail hairstyle, and was driving a blue BMW. Plaintiff Dep., Lai Decl., Exhibit S at pg. 38; Rule 56.1 Statement at ¶22-27. NYPD FIT provided the information from the Confidential Informant to Defendant Patrick Hughes, and he and Defendants Bessen and Nicholson, along with Defendants Joseph Jacobsen, Thomas Costigan,

2

went to the location indicated by the Confidential Informant. Deposition Transcript of Patrick Hughes ("Hughes Dep.), Lai Decl., Exhibit Q at pgs. 18-24; Rule 56.1 Statement at ¶5-8. A Blue BMW was parked on a one-way street near the location and Defendants Hughes, Bessen, and Nicholson parked on a side street further back from the vehicle, while Defendants Jacobsen and Costigan, who were in a police vehicle, parked in a different location. Hughes Dep., Lai Decl., Exhibit Q at pgs. 22-25; Deposition Transcript of Matthew Bessen ("Bessen Dep."), Lai Decl., Exhibit R at pgs. 30-31; Rule 56.1 Statement at ¶¶ 8-12. The license plate number on the Blue BMW was used to obtain information that Plaintiff was the owner of the vehicle and that Plaintiff had a "business carry" firearm license.[2] Hughes Dep., Lai Decl., Exhibit Q at pgs. 25-30; Lai Decl., Bessen Dep., Lai Decl., Exhibit R at pg. 31; Rule 56.1 Statement at ¶13-15. As the vehicle was being driven away by Plaintiff, with two passengers, it was stopped by Defendants Hughes, Bessen, Nicholson, Jasobsen and Costigan. Bessen Dep., Lai Decl., Exhibit R at pg. 30-31; Plaintiff Dep., Lai Decl., Exhibit S at pg. 38.; Rule 56.1 Statement at ¶17-21. Plaintiff informed them that he had a "permit" for the firearm inside the vehicle. Bessen BWC, Lai Decl., Exhibit A, at 1:24-1:30; Rule 56.1 Statement at ¶36. A firearm, magazines, and a New York City Firearms Permit, "Concealed Carry Permit" was recovered from the glove box. Bessen Dep., Lai Decl., Exhibit R at pgs. 60-69; Rule 56.1 Statement at ¶¶38-39, 43. When Defendant Bessen investigated

---

[2] On June 23, 2022, the United States Supreme Court, in *N.Y. State Rifle & Pistol Ass'n v. Brue*n, 142 S. Ct. 2111 (2022), held that New York State's "proper cause" requirement for obtaining a concealed carry firearm license was an unconstitutional restriction on an individual's Second Amendment right to bear arms for self-defense. This resulted in NYPD changing the rules and terminology associated with firearm permits. The term "Business License" was previously associated with an "unrestricted" handgun license and following the rule changes the terminology associated with an unrestricted license was changed to "Carry License." *See* NYPD Notice of Adoption of Emergency Rules establishing Additional Rules for Receiving a Concealed Carry Handgun license, https://www.nyc.gov/site/nypd/news/sa0014/nypd-the-adoption-an-emergency-rule-effective-immediately-establishing-additional. However, at the time of Plaintiff's arrest on November 26, 2023, it appears that the NYPD records were not yet updated to reflect this change in terminology.

3

Plaintiff's concealed carry permit, NYPD records indicated that it was a "business carry only permit." Bessen Dep., Lai Decl., Exhibit R at pgs. 60-69; Rule 56.1 Statement at ¶42. Plaintiff was arrested for violating N.Y. Penal Law § 400.00, Licensing And Other Provisions Relating To Firearms, because it was the officers understanding that Plaintiff was carrying the firearm outside the terms with a "business carry only" permit. Bessen Dep., Lai Decl., Exhibit R at pgs. 60-69; Rule 56.1 Statement at ¶¶42, 45.

Defendants Jeison Jara and Mohamed Eldiasty subsequently arrived on scene and transported one of the other two individuals to a police precinct. BWC from Police Officer Mohamed Eldiasty, recorded on November 26, 2023 at 4:34 a.m. ("Eldiasty BWC), Lai Decl., Exhibit B at 1:00-1:48; Rule 56.1 Statement at ¶44.

Plaintiff, who admitted to owning the firearm, was charged by the Brooklyn District Attorney Office with various counts of Criminal possession of a Weapon and Possession of Pistol Ammunition. Plaintiff Dep., Lai Decl., Exhibit S at pg. 87; Certificate of Disposition, Kings County Supreme Criminal Court, Docket Number SCR-76890-23/001 ("Certificate of Disposition)," Lai Decl., Exhibit P; Rule 56.1 Statement at ¶40, 46. On December 23, 2024, all charges against Plaintiff were dismissed. Certificate of Disposition, Lai Decl., Exhibit P; Rule 56.1 Statement at ¶47.

Thereafter, an investigation was conducted by Defendant Joseph Astarita of NYPD's License Division into Plaintiff's arrest and it was discovered that at the time of his arrest, Plaintiff held a Premise Residence Handgun License and a Concealed Carry License, which were valid. NYPD License Division list of Plaintiff's license information ("Plaintiff License List"), Lai Decl, Exhibit H; NYPD License Division list of Plaintiff's licensed firearms ("Plaintiff Firearm List"), Lai Decl, Exhibit I;  Plaintiff Dep., Lai Decl., Exhibit S at pg. 49, 53; Rule 56.1 Statement at ¶48-

50. Plaintiff owned two firearms: one in connection to each of his firearm licenses. Plaintiff License List, Lai Decl, Exhibit H; Plaintiff Firearm List, Lai Decl, Exhibit I; Rule 56.1 Statement at ¶48-52. The firearm and magazines in the vehicle were taken as arrest evidence, and Plaintiff surrendered the other for safekeeping at the request of the police. Plaintiff Dep., Lai Decl., Exhibit S at pg. 87; Plaintiff Dep., Lai Decl., Exhibit S at pgs. 138-141; NYPD Property Clerk Invoice No. 3001668962, November 26, 2023 ("11/26/23 Property Invoice"), Lai Decl., Exhibit G; NYPD Property Clerk Invoice No. 4001052896 dated November 28, 2023 ("11/28/2023 Property Invoice"), Lai Decl., Exhibit J; Rule 56.1 Statement at ¶40, 54-55.

By Law, during the investigation, Plaintiff's firearm permits were also temporarily suspended. NYPD Notice of Temporary Suspension for License, dated November 28, 2023 ("Suspension Notification"), Lai Decl., Exhibit K; Plaintiff Dep., Lai Decl., Exhibit S at pg. 152; Rule 56.1 Statement at ¶56-59. The firearm seized during Plaintiff's arrest was examined and marked with an engraving by Detective Malcolm Lewis pursuant to NYPD procedure. Deposition Transcript of Malcolm Lewis ("Lewis Dep.), Lai Decl., Exhibit T at pgs. 16-20, 26-27; NYPD Police Laboratory, Firearms Analysis Section Procedure Manual, Lai Decl., Exhibit O; Rule 56.1 Statement at ¶68-70. Plaintiff informed Defendant Astarita of the dismissal of the criminal charges on February 27, 2024. Email from Plaintiff to Defendant Joseph Astarita, dated February 27, 2024, Lai Decl., Exhibit L; Rule 56.1 Statement at ¶62. At the end of the investigation, Plaintiff's firearm licenses were "continued" and Plaintiff retrieved his firearms from NYPD. Incident Unit Case Summary for Incident 183/23, March 16, 2024 ("Incident Unit Case Summary"), Lai Decl., Exhibit M; NYPD License Division Notice of Determination letter, dated April 2, 2024 ("Determination Letter"), Lai Decl., Exhibit N; Plaintiff Dep., Lai Decl., Exhibit S at pgs. 171,

5

173-174; Rule 56.1 Statement at ¶63-67; Third Amended Complaint, Dkt. No. 97, 24-CV-02168

(BMC)(JAM) ("TAC").

## STANDARD OF REVIEW

The Court should grant summary judgment when, as here, the movant can show that "there

is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). "[T]he mere

existence of some alleged factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment; the requirement is that there be no genuine issue of

material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 48 (1986). "A fact is material if

it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if

the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Windsor*

*v. United States*, 699 F.3d 169, 192 (2d Cir. 2012), aff'd by 133 S. Ct. 2675 (2013) (quotation

marks and alterations omitted). City Defendants, as the moving parties, have "the burden of

showing that no genuine issue of material fact exists and that the undisputed facts entitle [them] to

judgment as a matter of law." *Coollick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012) (citations

omitted). To avoid summary judgment, Plaintiff must "do more than simply show that there is

some metaphysical doubt as to the material facts," and he "may not rely on conclusory allegations

or unsubstantiated speculation." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)

(quotation marks and citations omitted).

## ARGUMENT IN SUPPORT OF SUMMARY JUDGMENT

Plaintiff asserts civil rights claims pursuant to 42 U.S.C. §1983 of false arrest and false

imprisonment, denial of Second Amendment rights, municipal liability and a claim pursuant to 42

U.S.C. §1981 for prosecution due to race, color, and/or national origin.[3] As argued below, City

Defendants' motion for summary judgment should be granted.

**POINT I**

**THE UNDISPUTED FACTS DEMONSTRATE THAT THERE WAS PROBABLE CAUSE FOR PLAINTIFF'S ARREST**

In order to state a claim for false arrest and imprisonment, under either state or federal law,

plaintiff must prove: "(1) the defendant intended to confine plaintiff; (2) plaintiff was conscious

of the confinement; (3) did not consent to such confinement; and (4) the confinement was not

otherwise privileged." *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003) (quoting *Bernard*

*v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)); *Singer v. Fulton County Sheriff*, 63 F.3d 110,

118 (2d Cir. 1995).  "The existence of probable cause to arrest constitutes justification and is a

complete defense to an action for false arrest." *Weyant v. Oskt*, 101 F.3d 845, 852 (2d Cir. 1996)

(quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)); *see also Ackerson v. City of*

*White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (quotation omitted). This is true "whether that action

is brought under state law or under § 1983." *Weyant*, 101 F.3d at 852 (citations omitted). It

therefore follows that, for Plaintiff's claims to survive, he must show that he was arrested in the

absence of probable cause. *Jenkins v. City of New York*, 478 F.3d 76, 88 (2d Cir. 2007) ("under

both New York and federal law, summary judgment dismissing a plaintiff's false arrest claim is

appropriate if the undisputed facts indicate that the arresting officer's probable cause determination

---

[3] Plaintiff amended the complaint three times. *See* Dkt. Nos. 1, 17, 48, 97. The earlier complaints contained additional claims, such as malicious prosecution and pendent state law claims, that were not included in the operative pleading, the third amended complaint.  City Defendants only address the claims raised in the Third Amended Complaint, Dkt. No. 97.

was objectively reasonable"); *Singer*, 63 F.3d at 118 ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause").

Probable cause is an objective determination based on the totality of the circumstances and exists "when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Maxwell v. City of New York*, 272 F. Supp. 2d 285, 293 (S.D.N.Y. 2003). Probable cause requires only a probability of criminal activity, not an actual showing of criminal activity. *Illinois v. Gates*, 462 U.S. 213, 244, n.13 (1983). Although probable cause is largely a factual question, a court may nonetheless determine whether probable cause existed as a matter of law if the pertinent events and the officer's knowledge are not in dispute. *Maxwell*, 272 F. Supp. 2d at 294.

Information from a Confidential Informant can support a finding of probable cause if material aspects are corroborated by independent evidence. *See States v. Gagnon*, 373 F.3d 230, 236 (2d Cir. 2004) ("In addition to considering an informant's veracity, reliability, and basis of knowledge, in assessing the totality of the circumstances we also evaluate whether the information an informant provides is corroborated by independent police investigation.").

For the reasons set forth below, the undisputed facts established that there was probable cause to arrest Plaintiff.

**A. Probable Cause Existed to Arrest Plaintiff for Failure to Safely Store a Firearm**

Plaintiff was arrested for violation of N.Y. Penal Law § 400.00, Licensing And Other Provisions Relating To Firearms, based on the arresting officer's understanding that Plaintiff had a "business carry" firearm license and that he was in possession of the firearm outside the terms of the permit. While the underlying facts establish probable cause, this penal law offense is not

completely applicable. Regardless, justification for Plaintiff's arrest is proper under N.Y. Penal Law § 265.45(2), Failure to safely store firearms in the first degree.

Here, the corroborated information received from the Confidential Informant, and observed by City Defendants, established probable cause under N.Y. Penal Law § 265.45(2) which states that "[n]o person shall store or otherwise leave…firearm out of such person's immediate possession or control inside a vehicle without first removing the ammunition from and securely locking such…firearm in an appropriate safe storage depository out of sight from outside of the vehicle. For purposes of this section… a glove compartment or glove box shall not be considered an appropriate safe storage depository." NYPD FIT received information from a Confidential Informant that an individual matching Plaintiff's physical and clothing description, and driving a Blue BMW, placed a firearm inside the glove box of the vehicle, after attempting to take it into an event or establishment that served alcohol. Arrest Report, Lai Decl., Exhibit E; Complaint Report, Lai Decl., Exhibit F; Lai Decl., Exhibit S at pg. 38, 65-68, 71-74, 81-82; Bessen BWC, Lai Decl., Exhibit A, at 1:00 to 1:48; Rule 56.1 Statement at ¶1-4, 22-34. When the blue BMW Plaintiff was driving was stopped, a firearm was located in the glove box, Bessen Dep., Lai Decl., Exhibit R at pg. 31-33; Plaintiff Dep., Lai Decl., Exhibit S at pgs. 86-87; Rule 56.1 Statement at ¶21, 38-40, in violation of N.Y. Penal Law § 265.45(2). As such, regardless of whether Plaintiff has a valid license, or whether this charge was listed on the Arrest Report, there was probable cause to arrest him for this offense.

## B. Probable Cause Existed to Arrest Plaintiff for Attempted Criminal Possession of a Firearm in a Sensitive Location

There was also probable cause to arrest Plaintiff for violation of N.Y. Penal Law § 265.01-e, Criminal Possession Of A Firearm In A Sensitive Location. Pursuant to that statute, "[a] person is guilty of criminal possession of a firearm…in a sensitive location when such person possesses

9

a firearm…in or upon a sensitive location, and such person knows or reasonably should know such location is a sensitive location. For the purposes of this section, a sensitive location shall mean: (o) any establishment holding an active license for on-premise consumption pursuant to …the alcoholic beverage control law where alcohol is consumed…" N.Y. Penal Law § 265.01-e.

The Confidential Informant informed NYPD that there was an attempt[4] by an individual matching Plaintiff's physical and clothing description, and driving a car that matched Plaintiff's, to enter an event with a firearm that had security at the door, and was serving alcohol. *See* Plaintiff Dep., Lai Decl., Exhibit S at pgs. 65-66, 71-74; . Arrest Report, Lai Decl., Exhibit E; Complaint Report, Lai Decl., Exhibit F. Rule 56.1 Statement at ¶1-4, 29-33. This information was corroborated by Defendants Bessen, Nicholson, Hughes, Jacobsen, Costigan, Jara, and Eldiasty's observations. So, although this charge was not invoked at the time of arrest, there was probable cause to arrest Plaintiff for attempting to violate N.Y. Penal Law § 265.01-e.

## POINT II

### PLAINTIFF'S CLAIM PURSUANT TO 42 U.S.C. § 1981 FAILS AS A MATTER OF LAW

City Defendants are entitled to summary judgment  on Plaintiff's Section 1981 claim. "To state a *prima facie* claim under…[Section 1981…], plaintiff[] must prove: (1) they are [a] member[] of a racial minority; (2) an intent to discriminate on the basis of their race by defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (*i.e.*,

---

[4] Under N.Y. Penal Law § 110.00, "[a] person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime.

make and enforce contracts…. To survive summary judgment, the plaintiff[] need[s] to produce enough evidence for a reasonable jury to find that the defendants intentionally discriminated against the plaintiffs based on race.") *Thomas v. Genova*, 698 F. Supp. 3d 493, 521 (E.D.N.Y. 2023) citing *Silva v. Farrish*, 47 F.4th 78, 89 (2d Cir. 2022)(citations and quotations omitted). Although "direct evidence of discrimination is not required and [Section 1981] cases…often rest on the cumulative weight of circumstantial evidence…[,] a jury cannot infer discrimination from thin air." *Gatling v. West*, 850 F. App'x 91, 97 (2d Cir. 2021) (citations and quotations omitted).

As an initial matter, the Second Circuit has concluded that "42 U.S.C. § 1983 provides the sole cause of action available against state actors alleged to have violated § 1981." *Thomas*, 698 F. Supp. at 520-521 citing  *Smalls v. Collins*, 10 F.4th 117, 144 (2d Cir. 2021); *Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018) (holding that "§ 1981 does not provide a separate private right of action against state actors"). As a result, this claim should be dismissed because claims of racial discrimination and/or equal protection should be brought under Section 1983, and not Section 1981.

Furthermore, there is no evidence that City Defendants discriminated against Plaintiff based on race. Plaintiff was located, stopped, and arrested based on information received from a Confidential Informant that a crime was being committed. Race, i.e. that Plaintiff is a "male Indian," only factored as part of a more detailed description of the suspect given by the Confidential Informant and also included his height, clothing, and the make and color of the vehicle. *See* Plaintiff Dep., Lai Decl., Exhibit S at pgs. 65-66, 71-74**;** . Arrest Report, Lai Decl., Exhibit E; Complaint Report, Lai Decl., Exhibit F. Rule 56.1 Statement at ¶1-4, 29-33 . As a result, Plaintiff's arrest and the subsequent seizure of his firearm was not based on race. Further, Plaintiff has proffered no evidence that Plaintiff was discriminated against based on race throughout the

11

investigation into Plaintiff's arrest and confiscation of his firearm. Thus, Plaintiff's 42 U.S.C. § 1981 claim fails.

## POINT III
## PLAINTIFF HAS NOT ESTABLISHED A SECOND AMENDMENT VIOLATION AS A MATTER OF LAW

City Defendants are entitled to summary judgment on Plaintiff's Second Amendment claim. The Second Amendment proscribes the infringement on a person's right to keep and bear arms. *See* U.S. Const. Amd. II. Title 38 Rules of the City of New York ("RCNY") § 5-30 sets forth NYPD License Division procedures for investigating incidents and safekeeping firearms during the pendency of such investigation. Pursuant to 38 RCNY § 5-30(c)(1), an arrest is considered an "incident" that must be reported immediately to the License Division's Incident Section. Further, Title 38 RCNY § 5-30(e) provides that "[a]ll 'Incidents' shall be reviewed and evaluated by License Division investigators." The License Division shall notify the licensee by mail of any determination to suspend or revoke a license and "[u]pon receipt of a suspension or revocation order, the licensee shall be directed to immediately voucher for safekeeping all handguns, rifles and/or shotguns listed on any license and any rifle / shotgun permit the licensee possesses. Provided that if a licensee is arrested and their handgun or rifle/shotgun is in their possession at the time of the arrest . . . such weapon and license or permit may be vouchered by the officer at the time of the arrest or stop . . . ." 38 RCNY § 5-30(f).

Here, Plaintiff alleges that this right was violated through the seizure of his firearms and the process to recover them. *See* TAC, Dkt. No. 97, at ¶¶ 162, 167. Plaintiff does not challenge the validity of the NYPD License Division's procedure for investigating incidents, as set forth in Title 38 of the Rules of the City of New York ("RCNY"), nor does Plaintiff allege that the License Division failed to follow that procedure. Indeed, that very procedure ultimately resulted in the

12

return of his firearm.  Instead, Plaintiff's Second Amendment challenge seems to be an extension of his false arrest claim—that there was no probable cause to arrest Plaintiff, so he should not have had his firearm licenses temporarily suspended and his firearms confiscated. TAC, Dkt. No. 97, at ¶¶161-172. As discussed *supra*, in Point I, City Defendants had probable cause to arrest Plaintiff, and therefore, this claim fails if it is an extension of the false arrest claim.  It also fails if it is  based on the NYPD License Division's investigation of the arrest. Moreover, Plaintiff cannot establish a Second Amendment claim because, as set forth below, City Defendants' actions were lawful.

### A.  NYPD Properly Seized and Vouchered Plaintiff's Firearms Following His Arrest

The seizure of Plaintiff's firearms and magazines were lawful.  As discussed *supra*, at Point I, there was probable cause for Plaintiff's arrest related to the storage of his firearm and/or his attempt to enter an event/private establishment that served alcohol with the firearm. The firearm was in Plaintiff's possession, was the basis for Plaintiff's arrest, and as a result was vouchered as evidence by NYPD. *See* NYPD Property Clerk Invoice No. 3001668962, November 26, 2023, Lai Decl., Exhibit G; Matthew Bessen Dep., January 13, 2025, Lai Decl., Exhibit R at pgs.at 31–33, 52, 57–58; *See also* Title 38 Rules of the City of New York ("RCNY") § 5-30(f) ("[I]f a licensee is arrested and their handgun or rifle/shotgun is in their possession at the time of the arrest . . . such weapon and license or permit may be vouchered by the officers at the time of the arrest or stop."); *Harding v. Gould*, No. 22-CV-6285, 2024 U.S. Dist. LEXIS 141944, *18 (S.D.N.Y. Aug. 9, 2024) (Second Amendment and Fourth Amendment claims related to NYPD seizure of plaintiff's firearm during an arrest dismissed because "plaintiff's assertion that she was later prosecuted for 'firearm charges' suggests her pistol was seized as evidence of a crime.").

Likewise, it was lawful for the License Division to require Plaintiff to surrender his second firearm, the one associated with his Premise Residence license, and to hold both firearms while

the License Division conducted its mandatory investigation upon Plaintiff's arrest. *See* Plaintiff Dep., Lai, Decl., Exhibit S at pgs. 140–143; 11/28/2023 Property Invoice, Lai Decl., Exhibit J; *see also,* Title 38 Rules of the City of New York ("RCNY") § 5-30(c)(1) (an arrest is an "incident" which shall be immediately reported to the License Division's Incident Section and "shall be reviewed and evaluated by License Division investigators."). The firearms were returned after the investigation was completed. TAC, Dkt. No. 97, at ¶132. There is no question of fact as to whether the License Division properly followed this procedure after being notified of Plaintiff's arrest. Here, pursuant to 38 RCNY § 5-30(e), the License Division launched an investigation into Plaintiff's arrest, and notified Plaintiff by mail. *See* Suspension Notification, Lai Decl., Exhibit K; Plaintiff Dep., Lai Decl., Exhibit S at pg. 146. Pursuant to 38 RCNY § 5-30(e), NYPD notified Plaintiff to surrender his second, and held it for safekeeping throughout the duration of the License Division investigation. Plaintiff Dep., Lai Decl., Exhibit S at pgs. 140–143.

It was proper for the License Division to investigate Plaintiff's arrest; the License Division does not have the discretion to forego an investigation under 38 RCNY § 5-30(e) based on its own determination as to whether an arrest was proper. *See* Deposition Transcript of Joseph Astarita ("Astarita Dep.), Lai Decl., Exhibit C, at pg. 73 ("Whenever somebody's arrested or whatever offense it may be, we do investigate."). In fact, Plaintiff was afforded, but failed to avail himself of, "an opportunity to challenge, in writing, the interim suspension or revocation the license during the investigation of an incident and vouchering of the handgun." 38 RCNY § 5-30(h). Plaintiff was also informed of this available administrative procedure by the Notice of Interim Suspension, *see* Astarita Dep., Lai Decl., Exhibit C, at pg. 153, but failed to avail himself of that administrative remedy. *See* Astarita Dep., Lai Decl., Exhibit C, at pg. 30. Finally, the safekeeping of Plaintiff's firearms was temporary—the License Division ultimately determined that Plaintiff's licenses

14

should be "continued," restored Plaintiff's concealed carry and Premise Residence licenses, and returned Plaintiff's firearms. *See* Suspension Notification, Lai Decl., Exhibit K; Plaintiff Dep., Lai Decl., Exhibit S at pgs. 168–169, 173; Astarita Dep., Lai Decl., Exhibit C, at pg. 82.

Therefore, because the initial seizure of Plaintiff's firearm was reasonable given the probable cause for his arrest, Plaintiff cannot establish that Defendants violated his Second Amendment rights by keeping the firearm for safekeeping and vouchering his other firearm as evidence, while the criminal proceeding ran its course, and then the License Division investigated the incident. *See Shaul v. Cherry Valley-Springfield Cent. Sch. Dist.*, 363 F.3d 177, 187 (2d Cir. 2004) ("Where . . . an initial seizure of property was reasonable, defendants' failure to return the items does not, by itself, state a separate Fourth Amendment claim of unreasonable seizure. . . . To the extent the Constitution affords [the plaintiff] any right with respect to a government agency's retention of lawfully seized property, it would appear to be procedural due process.")

**B. The License Division Did Not Refuse to Return Plaintiff's Firearm**

Plaintiff's allegations that the License Division refused to return his firearms in violation of his Second Amendment rights fails as a matter of law. As discussed above, Plaintiff failed to avail himself of the procedure to challenge the interim suspension of his licenses or vouchering of his firearms during the License Division's investigation. Therefore, the License Division could lawfully hold the firearms throughout the duration of its investigation. *See* 38 RCNY § 5-30(f). Further, it was not a violation of Plaintiff's constitutional rights to continue the investigation after a disposition was reached on Plaintiff's criminal case. It would not be expedient for the License Division to investigate an arrest before a disposition is reached on the related criminal case, because the outcome of the criminal case can impact the outcome of the investigation. *See* Astarita Dep., Lai Decl., Exhibit C, at pgs. 77, 79.

15

While the outcome of the criminal case is an important factor in a License Division's investigation, it is not controlling. In certain circumstances, a firearm license can be suspended or revoked despite criminal charges being dismissed. *See* Astarita Dep., Lai Decl., Exhibit C, at pg. 79. License Division investigators may observe behavior on police body camera footage, such as domestic abuse or an admission of guilt that would cause the License Division to revoke or suspend a firearm license, even if charges do not come to fruition or result in a conviction. *See* Astarita Dep., Lai Decl., Exhibit C, at pg. 80; *see also* 38 RCNY §§ 5-10 and 5-11. Therefore, Plaintiff was not entitled to automatic, immediate restoration of his firearm licenses and return of his firearms after the dismissal of criminal charges.

Finally, there is no question of fact that the length of the investigation was reasonable, and did not violate Plaintiff's Second Amendment rights. Plaintiff informed the License Division of the dismissal of his criminal case on February 27, 2024; was notified on April 2, 2024 that his licenses were restored; and he retrieved his firearms on April 3, 2024. *See* TAC, Dkt. No. 97, at ¶ 118, 128, 131. In fact, the restoration of Plaintiff's firearm licenses and return of his firearms was "exceptionally quick,", given the multiple channels of review and signoff from various NYPD personnel required before a license can be restored. *See* Astarita Dep., Lai Decl., Exhibit C, at pg. 82.

## C. The Engraving of Plaintiff's Firearm Does Not Violate the Second Amendment

Plaintiff takes issue with the presence of an engraving of a number on one of his firearms when it returned, but as a matter of law, such engraving does not constitute a violation of the Second Amendment. The engraving on Plaintiff's firearm occurred during examination by the NYPD Police Laboratory, Firearm Analysis Section. The Firearm Analysis Section's Procedure Manual provides that all evidence should be marked with a unique laboratory identifier. *See* NYPD

16

Police Laboratory, Firearms Analysis Section Procedure Manual ("Firearm Manual"), Lai Delc., Exhibit O at pg. 1. Specific to firearms, the Procedure Manual states that the examiner should make markings on any portion of the frame or receiver. *See* Firearm Manual, Lai Delc., Exhibit O at pg.. 2.  Further, the Procedural Manual clearly states that "[i]t is up to a firearms examiner's discretion to mark a firearm . . . with an engraving tool." Firearm Manual, Lai Delc., Exhibit O at pg. 1.

The engraving of the unique identification number, which consists of an item number, the year the weapon was examined, and the initials of the examiner, is important for chain of custody purposes, as the weapons analyzed at the Firearms Analysis Section are often evidence of a crime. *See* Lewis Dep., Lai Decl., Exhibit T at pg. 28.  The unique identifiers are especially important for identifying the person who conducted the examination of the firearm because examination can involve the discharging of live cartridges, which is considered destroying evidence. Lewis Dep., Lai Decl., Exhibit T at pg. 28. Detective Lewis, pursuant to the standard operating procedures, engraves every weapon that comes in for analysis as a result of an arrest. *See* Lewis Dep., Lai Decl., Exhibit T at pg. 27. Only in rare circumstances does an examiner not engrave a firearm. *See* Lewis Dep., Lai Decl., Exhibit T at pgs. 25–26.

Importantly, there is no question of fact as to whether firearm is still functional. Part of Detective Lewis's examination of the firearm, after engraving it, was to conduct a test to ensure that the firearm was operable. Lewis Dep., Lai Decl., Exhibit T at pg. 64. Plaintiff does not proffer any factual allegations to dispute  the firearm's operability. Plaintiff Dep., Lai Decl., Exhibit S at pg. 186 ("it looks functionable, but I have not used it").  Because the firearm is still functional, the engraving does not interfere with Plaintiff's ability to use the weapon for self-defense, and therefore does not implicate his Second Amendment rights. *See N.Y. State Rifle & Pistol Assoc. v.*

17

*Bruen*, 579 U.S. 1, 26 (2022) ("The Second amendment . . . 'surely elevates above all other interests the right of law-abiding, responsible citizens to *use* arms' for self-defense.") (quoting *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008)) (emphasis added). Even if Plaintiff could establish a legitimate reason why he cannot use this specific firearm as a result of the engraving, it would not rise to the level of a Second Amendment violation, as Plaintiff's firearm licenses have been fully restored. *See Dunkelberger v. Dunkelberger*, 14-CV-3877, 2015 U.S. Dist. LEXIS 133814, at *55 (S.D.N.Y. Sept. 30, 2015) ("when an individual's right to acquire firearms generally has not been infringed, the confiscation of a specific weapon does not constitute a Second Amendment violation."). In fact, it is undisputed that the firearm associated with Plaintiff's Premise Residence, which was taken solely for safekeeping, was not engraved. Thus, Plaintiff has at least one firearm to utilize for self-defense.

**POINT IV**

**PLAINTIFF FAILS TO ESTABLISH A CLAIM AGAINST DEFENDANTS ASTARITA, JARA, AND ELDIASTY**

Defendants Astarita, Jara, and Edliasty are entitled to summary judgment for lack of personal involvement in both their official and individual capacities.

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006). A "general allegation that all defendants were involved in the alleged constitutional violations" is insufficient to state a claim against a particular defendant. *Leneau v. Ponte,* 1:16-cv-776, 2018 U.S. Dist. LEXIS 112272, *41 (S.D.N.Y. Jan. 24, 2018). "Without more, . . . vague, conclusory allegations do not satisfy the personal involvement standard." *Collins v. City Univ. of New York*, 21-civ-9544, 2023 U.S. Dist. LEXIS 21587, *15

18

(S.D.N.Y. Feb. 8, 2023). "[A] plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

### A. Defendant Astarita

Plaintiff's claims against Defendant Astarita fails because he was not personally involved in Plaintiff's arrest or imprisonment. One of Plaintiff's firearms was seized during his arrest, and Plaintiff brought his other firearm to the 113th Precinct for safekeeping. Defendant Astarita's only role here was to conduct the mandatory investigation as part of NYPD's License Division. There is no evidence that Defendant Astarita was present at the arrest when the first firearm was seized, nor that he was involved in requiring Plaintiff to surrender the second firearm. As such, Plaintiff cannot state a claim against defendant Astarita for violation of Plaintiff's Second Amendment rights on the basis of the seizure of Plaintiff's firearms.

As discussed *supra*, Point III, Plaintiff cannot establish a Second Amendment violation based on a refusal to return his firearm. But even if he could, Plaintiff cannot establish that Astarita was personally involved in the any alleged refusal to return Plaintiff's firearms because his firearm licenses were temporarily suspended and Defendant Astarita had no discretion to decide not to investigate based on the facts surrounding Plaintiff's arrest. Astarita Dep., Lai Decl., Exhibit C, at pg. 73.

It has also been established that Astarita did not have final decision-making power in the outcome of the investigation. The Third Amended Complaint contains quotes from an email from Astarita stating: "When I finish my investigation, **it will then be sent to numerous supervisors who will then make a determination**." TAC, Dkt No. 97 at ¶ 112 (emphasis added); *see also*

19

Astarita Dep., Lai Decl., Exhibit C, at pg. 82.s.  (discussing the multiple channels of review and signoff from various supervisors required before a license can be restored). As such, Plaintiff cannot establish Defendant Astarita's personal involvement in the regulations that caused the vouchering and safekeeping of plaintiff's firearms during the License Division's investigation.

Moreover, Astarita assisted in the return of Plaintiff's firearms when, after the investigation, and the License Division determined that plaintiff's firearm licenses would be "continued."  In fact, Plaintiff alleges that on April 2, 2024, Astarita emailed plaintiff that his firearm licenses had been reinstated, and by the next day, April 3, 2024, plaintiff recovered his firearms. TAC, Dkt No. 97 at ¶¶ 125–26, 132.  Accordingly, all claims against Astarita should be dismissed.

## B.  Defendants Jeison Jara and Mohamed Eldiasty

Similarly, as depicted on the BWC footage, Defendants Jara and Eldiasty's involvement was limited to them transporting one of the non-party individuals to the police precinct. They were not one of the officers who observed and later stopped Plaintiff's vehicle, recovered the firearm, and placed him in custody.  As such, this limited involvement, not directly related to Plaintiff, is insufficient to amount to liability and would still be so even if they had transported Plaintiff himself. *Spears v. City of N.Y.*, No. 10-CV-03461, 2012 U.S. Dist. LEXIS 145517, at *29 (E.D.N.Y. Oct. 9, 2012) (granting summary judgment for officers when the officers had no personal involvement other than transporting the arrestee to the hospital at the instruction of an arresting officer).

### POINT IV

### CITY DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

20

To the extent that the Court does not dismiss the claims asserted in the Third Amended Complaint for the reasons argued above, Defendants are still entitled to qualified immunity. The "doctrine of qualified immunity shields public officials performing discretionary functions from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights." *Bradway v. Gonzales*, 26 F.3d 313, 317-18 (2d Cir. 1994). Qualified immunity is applicable regardless of "whether a government actor's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citations mitted). The Supreme Court has firmly established that "[t]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (per curiam) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

As dictated by the Supreme Court of the United States, police officers are "entitled to qualified immunity" under 42 U.S.C. § 1983 "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at that time.'" *District of Columbia v. Wesby*, 199 L.Ed.2d 453, 467 (U.S. 2018), quoting *Reichle v. Howards*, 566 U. S. 658, 664 (2012). A law is not clearly established unless "at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing is unlawful." *Wesby*, 199 L.Ed.2d at 467 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "In other words, existing law must have placed the constitutionality of the officer's conduct 'beyond debate.'" *Wesb*y, 199 L.Ed.2d at 467 (quoting *al-Kidd*, 563 U.S. at 741).

**A. Defendants Bessen, Nicholson, Hughes, Jacobsen, Costigan, Jara, and Eldiasty are entitled to qualified immunity.**

21

Plaintiff cannot show that no competent officer would have believed that probable cause did not exist. Indeed, for qualified immunity for a false arrest claim, if probable cause were absent, the Court must determine whether there was "arguable probable cause." *Walczyk v. Rio*, 496 F.3d 139, 163 (2d Cir. 2007). "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Walczyk*, 496 F.3d at 163 (internal quotation marks omitted). As noted in Point I, *supra*, there was probable cause to arrest Plaintiff for violating N.Y. Penal Law § 265.45(2) and N.Y. Penal Law § 265.01-e because the Confidential Informant indicated that a person matching Plaintiff's physical and clothing description attempted to enter an event with a firearm and then stored that firearm in the glove box of a vehicle. As such, any confusion regarding Plaintiff's firearm carry permit and the charge listed in the Arrest Report is irrelevant as there was at least arguable probable cause to arrest on violation of these offenses.

Furthermore, as set forth above, there is no evidence in the record to support that Plaintiff was discriminated against based on race or that his firearms were seized in violation of the Second Amendment. Even assuming, *arguendo*, either racial discrimination or a Second Amendment violation is inferred from the record, the actions of the individual City Defendants was nonetheless objectively reasonable, and supported by at least probable cause and applicable law.

Moreover, Defendants Jara and Eldiasty are entitled to qualified immunity based on their limited involvement in this incident. They arrived on scene after the car was stopped, and drove someone other than Plaintiff to the precinct.

**B. Defendant Astarita is Entitled to Qualified Immunity**

Even if Plaintiff could establish that Astarita was involved in the seizure of, or purported refusal to return Plaintiff's firearms, Astarita is entitled to qualified immunity.

22

Here, Defendant Astarita's action in conducting an investigation into Plaintiff's arrest was required by law, specifically 38 RCNY § 5-30. The License Division's policy of temporarily suspending firearm licenses and vouchering firearms while they investigate incidents, including arrests, has never been held unconstitutional, and is not challenged here. The License Division investigations also furthers the protection of the public from the potential improper use of firearms. Accordingly, it was certainly not established that Astarita's investigation pursuant to such regulations would violate any constitutional right.  Moreover, given the "sea change" in Second Amendment jurisprudence following *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), Astarita cannot be found to have violated a "clearly established" right by merely investigating plaintiff's firearm licenses after his arrest. *Brewer v. Vanmarter*, 2024 U.S. Dist. LEXIS 86014, at *8 (W.D.V.A. May 13, 2024) ("it would be nonsensical" to hold a police officer liable for not returning a firearm to a defendant he knew had pending criminal charges).

## POINT IV

## PLAINTIFF'S MONELL CLAIM FAILS AS A MATTER OF LAW

Although municipal liability discovery remains stayed, *see* Minute Entry by Honorable Magistrate Judge Joseph A. Marutollo, dated October 17, 2024 , Plaintiff's *Monell* claim should nonetheless be dismissed.  As set forth *infra.*, Defendants did not violate Plaintiff's constitutional rights, and so Plaintiff cannot satisfy the threshold to assert this claim. *See Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013) ("[u]nless a plaintiff shows that he has been the victim of a federal law tort committed by persons for whose conduct the municipality can be responsible, there is no basis for holding the municipality liable.").

23

Second, Plaintiff will not be able to prove the two elements necessary to assert a municipal liability claim: "first prove the existence of a municipal policy or custom in order to show the municipality took some action that caused him injures" and then "[s]econd, the plaintiff must establish a causal connection — an affirmative link — between the policy and the deprivation of his constitutional rights." *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) (internal quotation marks and citation omitted). Here, Plaintiff is alleging that the violations of his civil rights was "the result of and/or caused by the negligent hiring, training, retention, and supervision, acts of negligence, failure to train, recklessness and intentional acts of [City] Defendants…" TAC at § 174. In support of this claim, Plaintiff merely reiterates conclusory allegations that he was discriminated against due to his race and that Plaintiff was falsely arrested. TAC at § 175. However, as more fully set forth above, this is not the case as Plaintiff cannot show discrimination by the individual Defendants' actions. Further, Plaintiff claims the City failed to train officers of changes in the law pertaining to firearm licenses and failure to inform officers that the terminology in the NYPD database was not "accurate and up-to date information regarding gun permits…" TAC at § 180. However, this is insufficient to sustain a *Monell* claim and amounts to, at most, mere negligence. *See Garcia v. Bloomberg*, 662 F. App'x 50, 54 (2d Cir. 2016); *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 128 (2d Cir. 2004) ("mere negligence is insufficient to establish a Monell claim.").

Third, Plaintiff only alleges the circumstances of his arrest, the confiscation of one firearm, and the retention of the second during an investigation. However, "custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [government]." *Hayes v. Perotta*, 751 F. Supp. 2d 597, 601 (S.D.N.Y. 2010); *Giaccio v. City of New York*, 308 F. App'x 470, 472 (2d Cir. 2009); *Brogdon v. City of New Rochelle*, 200 F. Supp.

24

2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation."); *Jones v. Town of East Haven*, 691 F. 3d 72, 85 (2d Cir. 2012) (finding that two or three instances of racially based abuse by NYPD over the past several years does not establish a municipal liability claim).

## CONCLUSION

For the foregoing reasons, City Defendants, City of New York, Bessen, Nicholson, Hughes, Jacobsen, Costigan, Jara, Eldiasty, and Astarita, respectfully request that the Court grant their motion for summary judgment, together with such costs, fees and other and further relief as the Court deems just and proper.[5]

Dated:  New York, New York
        January 16, 2025

**MURIEL GOODE-TRUFANT**
CORPORATION COUNSEL OF THE CITY OF
NEW YORK
*Attorney for City Defendants*
100 Church Street
New York, New York 10007
(212) 356-2336

By:

Thomas Lai
*Senior Counsel*
Special Federal Litigation Division

_____s/_____
Jessica Katzen
*Assistant Corporation Counsel*
Administrative Law Division

---

[5] **Word Count Certification.** In accordance with Local Civil Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, I hereby certify that the total number of words in the foregoing Memorandum of Law, inclusive of point headings and footnotes, is 7,857. I have relied on the word count function of Microsoft Word to prepare this certification.

cc:      All Counsels of Record Via ECF