UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
RAFFIQUE N. KHAN,                                     :
                                                      :
                                    Plaintiff,        :
                                                      :   **MEMORANDUM DECISION AND**
                    -against-                         :   **ORDER**
                                                      :
CITY OF NEW YORK, *et al.*,                           :   24-cv-2168 (BMC)
                                                      :
                                    Defendants.       :
-------------------------------------------------------- X

**COGAN**, District Judge.

Law enforcement is a profession where mistakes are bound to happen.  These mistakes can be costly and threaten to disrupt the lives of citizens in the police's path.  But not every mistake or disruption is a civil rights violation.

In this case, police arrested plaintiff for criminal possession of a firearm, triggering a law that suspended plaintiff's firearms licenses and forced him to surrender his firearms.  As it turned out, the arrest was a mistake, because plaintiff had a lawful concealed carry permit.  After his criminal charges were dismissed, plaintiff sued defendants, claiming that the arrest was unconstitutional and the subsequent application of the suspension-surrender law violated his Second Amendment rights.  Defendants have moved for summary judgment and, for the reasons below, defendants' motion is granted.

## BACKGROUND

The facts in this case are largely undisputed.  Plaintiff is an Army veteran and registered gun owner in New York, who holds both a "Premise Residence Handgun License" and a "Concealed Carry License."  Plaintiff properly registered all of his firearms and has no criminal history.

Shortly after receiving his Concealed Carry License, plaintiff's family came to New York to celebrate what would have been his late mother's 70th birthday.  At one point, the group left plaintiff's residence in plaintiff's car, a blue BMW, to attend a "surprise" planned by plaintiff's cousin.  Plaintiff took his firearm and his Concealed Carry License with him.  When plaintiff parked, plaintiff realized that the "surprise" was a meal at an eatery in his old neighborhood.

Plaintiff was cognizant that even licensed firearms are not permitted in eateries that serve alcohol.  So, when plaintiff first approached the eatery (still armed), he asked the employee at the entrance whether alcohol was served.  After learning that it was, plaintiff returned to his car and placed the gun inside, and went back to join his family.

At some point, the police "Intelligence Division" was tipped off that someone matching plaintiff's description was in possession of a firearm, tried to enter the eatery, and then put the firearm in the glove box of a blue BMW.  Shortly thereafter, Officer Hughes was briefed on the situation and left with Officers Bessen and Nicholson to investigate.  The officers located the blue BMW, ran the license plate, and determined that the car belonged to plaintiff.  The officers then searched plaintiff's name through various databases, and learned that plaintiff had a "business carry" firearm license.

Before N.Y. State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1 (2022), New York used the nomenclature "business carry" to describe a license permitting the holder to conceal a firearm because, at that time, anyone seeking a license to carry a concealed firearm had to show cause, such as a business reason, for doing so.  Post-Bruen, *i.e.*, at the time the officers identified plaintiff's firearm license in the database, New York changed the term to a "concealed carry" firearm license.  Nonetheless, licenses that were once listed as "business carry" in police databases, such as plaintiff's, were not automatically updated.

2

Apparently, none of the officers on the scene knew what a "business carry" firearm license was. After turning to the internet, the officers had even less clarity. Even so, the officers continued watching and eventually saw plaintiff and two others leave the eatery and sit in the blue BMW for about half an hour. After plaintiff began to drive away, the officers initiated a traffic stop.

As Officer Bessen approached him, plaintiff immediately notified Bessen of his firearms license and the existence of a firearm in the glove box. Bessen replied, "I did not ask you that, step out of the vehicle." Plaintiff, along with his family, complied. Bessen recovered plaintiff's firearm from the glove box, along with plaintiff's Concealed Carry License.

Officer Bessen, probably confused by what a "business carry" license was, and even more confused that plaintiff's physical license didn't match what he saw in the database, arrested plaintiff, purportedly for violating N.Y. Penal Law ("NYPL") § 400.00 ("Licensing and other provisions relating to firearms."). The next day, plaintiff was arraigned on various state and city firearms offenses. A day later, Officer Astarita, from the police "Licensing Division," began investigating plaintiff's arrest.

Astarita notified plaintiff that, by law, he was required to surrender his other firearms, and his licenses would be temporarily suspended, pending the resolution of the investigation. About three months after his arrest, all of the criminal charges were dismissed, and plaintiff notified Astarita about the dismissal. About two weeks thereafter, Astarita closed the Licensing Division investigation and plaintiff was notified that his licenses would be "continued" (*i.e.*, the licenses would remain valid).

Plaintiff filed the instant suit not long after.  According to plaintiff, Officer Bessen having arrested him constitutes a false arrest, and the suspension-surrender law as applied violated his Second Amendment rights.

**DISCUSSION**

Defendant seeks summary judgment on all of plaintiff's four causes of action: (1) discriminatory prosecution under 42 U.S.C. § 1981; (2) violation of plaintiff's Second Amendment rights under 42 U.S.C. § 1983; (3) false arrest and imprisonment under 42 U.S.C. § 1983; and (4) municipal liability under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978). Because plaintiff "does not oppose dismissal of his Section 1981 claim," Count 1 is dismissed, and the Court considers only the disputed claims.  Plaintiff's theory is that defendants falsely arrested him (Count 2), which triggered a suspension-surrender law that violated his Second Amendment rights (Count 3), all of which was executed pursuant to an unconstitutional municipal policy (Count 4).

Plaintiff does not challenge the suspension-surrender law as unconstitutional on its face. Rather, plaintiff claims that it was unconstitutional to apply the suspension-surrender law to him because he was a lawful gun owner who was falsely (as opposed to lawfully) arrested.  So, if plaintiff's false arrest claim fails, his Second Amendment claim necessarily fails.

If plaintiff's false arrest and Second Amendment claims fail, the Monell claim must also fail because a municipality "cannot be liable under Monell [without] a violation of [plaintiff's] constitutional rights."  Askins v. Doe, 727 F.3d 248, 253 (2d Cir. 2013);  Fappiano v. City of N.Y., 640 F. App'x 115, 121 (2d Cir. 2016) ("[I]n the absence of an underlying constitutional violation by a [municipal] employee there is no municipal liability under Monell").

4

## I.    Summary Judgment Standard

Rule 56 provides that summary judgment is warranted where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view all facts "in the light most favorable to the nonmoving party." Scott v. Harris, 550 U.S. 372, 380 (2007). There is no genuine issue of material fact "where the record taken as a whole could not lead a rational trier of fact to find for" plaintiff. See id. (plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts" (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986))); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) ("the mere existence of *some* alleged factual dispute between the parties will not defeat a properly supported motion for summary judgment"). To survive summary judgment, plaintiff must now marshal "concrete evidence from which a reasonable juror could return a verdict in his favor." See id. at 256.

## II.    False Arrest

"Claims for false arrest brought under Section 1983 are 'substantially the same' as claims for false arrest under state law." Ashley v. City of N.Y., 992 F.3d 128, 136 (2d Cir. 2021) (quoting Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003)). "Under New York law, to prevail on a claim for false arrest, a plaintiff must show that '(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.'" Jocks, 316 F.3d at 134-35 (quoting Broughton v. State, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 93 (1975)).

Only the fourth element – whether the confinement was privileged – is disputed. According to defendants, the confinement was privileged because Officer Bessen had probable

cause to believe that plaintiff stored his firearm in the glove box instead of "an appropriate safe storage depository," in violation of NYPL § 265.45(2). See Guan v. City of N.Y., 37 F.4th 797, 804 (2d Cir. 2022) ("An arrest is privileged if it is based on probable cause, for probable cause is a complete defense to a false arrest claim."). Plaintiff counters that NYPL § 265.45(2) is irrelevant because he was arrested on suspicion of violating NYPL § 400.00. In other words, plaintiff contends that defendants must establish that there existed probable cause to arrest plaintiff under NYPL § 400.00.

Plaintiff is wrong. "Probable cause exists when 'the facts and circumstances within . . . the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested.'" Kass v. City of N.Y., 864 F.3d 200, 206 (2d Cir. 2017) (quoting Marcavage v. City of N.Y., 689 F.3d 98, 109 (2d Cir. 2012)). The Supreme Court has long "held that the probable cause inquiry is based on whether the arresting officer had objective probable cause to arrest for any offense, not whether the officer had probable cause to arrest for the specific offense invoked at the time of the arrest." Guan, 37 F.4th at 805 (citing Devenpeck v. Alford, 543 U.S. 146 (2004)). Thus, defendants may now invoke any statute, including NYPL § 265.45(2), to show that the officers had probable cause to arrest plaintiff.

Defendants maintain that Officer Bessen had probable cause to believe that plaintiff violated NYPL § 265.45(2) based on the tip they received from an informant, while plaintiff was in the eatery with his family. According to the informant, when plaintiff initially returned to his car, he placed the firearm in the glove box. A person violates NYPL § 265.45(2) by "leav[ing] a [firearm] out of [their] immediate possession or control inside a vehicle without . . . securely locking [it] in an appropriate safe storage depository out of sight from outside the vehicle." "For

6

the purposes of [NYPL § 265.45(2)], a glove compartment or glove box shall not be considered an appropriate safe storage depository." NYPL § 265.45(3). Thus, if the tip was accurate, plaintiff had violated the "appropriate safe storage depository" requirement of NYPL § 265.45(2).[1]

The only question that remains is whether "the informant's tip was reliable enough to establish probable cause[.]" United States v. McKenzie, 13 F.4th 223, 238 (2d Cir. 2021). "It is enough, for purposes of assessing probable cause, that [corroboration] through other sources of information reduced the chances of a reckless or prevaricating tale, thus providing a substantial basis for crediting the [informant's information]." Illinois v. Gates, 462 U.S. 213, 245 (1983) (quotations omitted). In other words, if enough of the "the informant's allegations [are] corroborated via the first-hand observations of law enforcement officers," McKenzie, 13 F.4th at 238, probable cause may exist to believe the information that the officers are unable to corroborate.

Here, the informant notified defendants that "a male Indian, whose approximate height was 5 feet 10 inches, wearing black pants, black shoes, a black and white shirt with a gold chain, and a pony tail hairstyle, was in possession of a firearm." The informant further stated that after the "male attempted to enter an 'establishment' with a firearm . . . he walked over to where his car was parked, placed the gun inside the glove box, and then closed the car and returned to the 'establishment' no longer armed with the gun." The informant described the car as "a blue BMW that was parked on a hydrant at the Northeast corner of Newport Street and Chester Street."

---

[1] Plaintiff says that he initially locked the gun in a statutorily compliant thumbprint safe under his rear seat. Even if true, that is irrelevant to the question at issue in this case, which is whether the officers had probable cause to believe that plaintiff placed the firearm in the glove box, *i.e.*, not in a statutorily compliant safe.

Upon the officers' arrival at that location, the officers observed a blue BMW parked near a fire hydrant. Eventually, the officers saw plaintiff – who is 5 feet 11 inches tall, and was wearing black pants, a black and white shirt, gold chain, and had hair long enough to pull into a pony tail – get into the blue BMW. In other words, the officers independently corroborated every piece of information that the informant gave except for the location of the firearm inside the vehicle. That is sufficient to establish probable cause to believe the uncorroborated information, *i.e.*, that plaintiff stored his firearm in his glove box, in violation of NYPL § 265.45(2).[2] The officers therefore had probable cause to arrest plaintiff.

Accordingly, the Court grants summary judgment on plaintiff's false arrest claim. And for the reasons above, because plaintiff's false arrest claim fails, his remaining claims necessarily fail, too.

## CONCLUSION

For the foregoing reasons, the Court grants defendants' motion for summary judgment.

**SO ORDERED.**

*Brian M. Cogan*

Dated:    Brooklyn, New York
              April 6, 2026

_____
                U.S.D.J.

---

[2] The fact that the firearm was actually located in the glove box during the search is likewise irrelevant. "The police may not rely on information gained after-the-fact to show that probable cause existed at the time of arrest." Toure v. Port Auth. of N.Y. & N.J., No. 21-cv-1645, 2025 WL 3674392, at *25 (E.D.N.Y. Dec. 18, 2025) (quotations omitted).

8